| SUMMONS AND ORDER OF NOTICE | DOCKET NUMBER | Trial Court of Massachusetts |
| --- | --- | --- |
| A TRUE COPY ATTEST | 1980CV00040 | The Superior Court |

| CASE NAME: | |
| --- | --- |
| R. Susan Woods vs. Joseph Collins, in His Capacity as Chapter 7 Trustee, Case No. 18-30549 | Harry Jekanowski, Jr., Clerk of Courts |

| To: | COURT NAME & ADDRESS |
| --- | --- |
| Joseph Collins, in His Capacity as Chapter 7 Trustee, Case No. 18-30549 | Hampshire County Superior Court 15 Gothic Street P.O. Box 1119 Northampton, MA 01061 |

To the above named defendant(s):

   You are hereby summoned and required to serve upon:

        R. Susan Woods
        70 Russell St.
        P.O. Box 160
        Hadley, MA  01035

        an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Northampton either before service upon plaintiff's attorney or within a reasonable time thereafter.
        Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application for a Preliminary Injunction has been made in said action, as it appears in the complaint. A hearing on this matter has been scheduled for:

                    Date: **03/05/2019**

                    Time: **09:00 AM**

                    Event: **Hearing on Preliminary Injunction**

        Session Location: **Civil A /**

at which time you may appear and show cause why such application should not be granted.

| DATE ISSUED | CHIEF JUSTICE OF THE SUPERIOR COURT Witness: | ASSOCIATE JUSTICE | |
| --- | --- | --- | --- |
| 02/27/2019 | Hon. Judith Fabricant | Hon. Richard J Carey | X |

| RETURN OF SERVICE |
| --- |

I hereby certify and return that on _____, I served a copy of this summons, together with a copy of the Complaint.

                    PARTY NAME:
                    X

SCV027i 04/2017

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|

**PLAINTIFF(S):** R. SUSAN WOODS

**ADDRESS:** 20 RUSSELL ST. / P.O. BOX 160
HADLEY, MA 01035-0160

**COUNTY**

**DEFENDANT(S):** TRUSTEE JOSEPH COLLINS
Ch. 7

**ATTORNEY:**

**ADDRESS:**

**ADDRESS:**

**BBO:**

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| D99 | EVICTION | F | ☐ YES   ☒ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?
☐ YES   ☒ NO

Is this a class action under Mass. R. Civ. P. 23?
☐ YES   ☒ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ............................................................... $ _____
  2. Total doctor expenses ................................................................ $ _____
  3. Total chiropractic expenses ......................................................... $ _____
  4. Total physical therapy expenses .................................................... $ _____
  5. Total other expenses (describe below) ............................... Subtotal (A): $ _____

B. Documented lost wages and compensation to date ........................................ $ _____
C. Documented property damages to date .................................................. $ _____
D. Reasonably anticipated future medical and hospital expenses ........................... $ _____
E. Reasonably anticipated lost wages .................................................... $ _____
F. Other documented items of damages (describe below) ................................... $ _____

HAMPSHIRE SUPERIOR COURT

FEB 27 2019

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

HARRY JEKANUWSKI, JR
CLERK/MAGISTRATE

TOTAL (A-F): $ _____

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $ _____

Signature of Attorney/ Unrepresented Plaintiff: X                 Date: 2-27-19

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

#### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Date:

Signature of Attorney of Record: X

## COMMONWEALTH OF MASSACHUSETTS

**HAMPSHIRE, ss.**           **MASSACHUSETTS SUPERIOR COURT
DEPARTMENT OF THE TRIAL**

**COURT**

                        **DOCKET NO.**

| | |
|---|---|
| R. Susan Woods | ] |
|      **Plaintiff** | ] |
| | ] |
|      **v.** | ] |
| | ] |
| **Joseph Collins, in His Capacity as Chapter 7** | ] |
| **Trustee, Case No. 18-30549 (EDK) and Otherwise[1]** | ] |
|      **Defendant** | ] |

## Emergency Motion Seeking a Temporary Restraining Order
## To Prevent Constructive Eviction of Lawful Occupant Woods

     NOW COMES petitioner, R. Susan Woods, and requests this Court immediately impose a Temporary Restraining Order against three recent orders, the Order on Motion to Sell dated February 14, 2019, the Order to Compel/Surrender dated February 15, 2019, and the Order Finding R. Susan Woods in Contempt of Court and For Further Relief dated February 26, 2019.

     These orders have the effect of attempting to terminate Woods' possessory interest in the property at 70 Russell Street in Hadley, Massachusetts, and to evict without the benefits and rights under Massachusetts Uniform Summary Process Rules and controlling eviction statute Mass General Law ch. 239[2].

---

[1] as the Court determines.

[2] The actual section of the Eviction/Summary Process Chapter, Chapter 239 section 3, that addresses the levying of an execution is clear that it *only applies to Defendant(s) against whom the Summary Process judgment was made:* "At least forty-eight hours prior to serving or levying upon an execution issued on a judgment for the plaintiff for possession of land or tenements rented or leased for dwelling purposes, the officer serving or levying upon the execution shall give the **defendant** written notice that at a specified date and time he will serve or levy upon the execution and that at that time he will physically remove the defendant and his personal possessions from the premises if the defendant has not prior to that time vacated the premises voluntarily." [emphasis added] At no time has Woods been a defendant in a Summary Process case to evict her from the 70 Russell Street, Hadley, Massachusetts, property which resulted in an Exe-

Under Mass General Law ch. 184 §18 the only means of eviction of someone who lawfully enters a property and gains possession is through the chapter 239 summary process statute. This is further affirmed in the second paragraph of the criminal trespass statute, Mass General Law ch. 266 § 120:

> "This section shall not apply to tenants or occupants of residential premises who, having rightfully entered said premises at the commencement of the tenancy or occupancy, remain therein after such tenancy or occupancy has been or is alleged to have been terminated. The owner or landlord of said premises may recover possession thereof only through appropriate civil proceedings."

This is an area of settled law in Massachusetts. Woods attaches the controlling seminal and unequivocal decision of the Mass SJC in the Attorney General v. Dime Savings Bank of New York, 413 Mass. 284 (1992)[3] (exhibit 2). This case was brought, and settled, during the comparatively tiny foreclosure crisis of the early 1990's.

Woods further attaches for this court's review continuing consensus as to the controlling nature of the Dimes Savings decision, and the absolute requirement of eviction under MGL 239, recent case law from the state Housing Court[4] (exhibit 3), Land Court[5] (exhibit 4), Appeals Court[6] (exhibit 5), and the Appellate Division[7] (exhibit 6).

As part of the decisions is clarified, more than once, that Massachusetts does not recognize constructive eviction: that is, a presumption that the acquisition of ownership of a property allows a presumption of a right to possession where another is in actual possession of the property itself.

---

cution for the Plaintiff. Woods was a defendant in 18 SP 663 in the Housing Court, Western Division, dated 2/12/2018, in which Woods was dismissed from the case by Order dated 3/15/2018. On 4/2/2018 the case resulted in a Voluntary Dismissal at Plaintiff's request. Please see attachment, Docket Report (exhibit 1).

[3] Woods attaches for the Court's further reading the full text of the Commonwealth's brief in the Dime Savings Case as it does a lengthy and lovely exposition of why Summary Process must be used to evict in the Commonwealth of Massachusetts. (exhibit 7)

[4] U. S. Nat'l Ass'n, Tr. of J P Morgan Mort. Acq. Tr. v. Ayrton, No. 16H85SPCV000757, Housing Court, Worcester, ss., 8/23/2018, Horan, J.

[5] The Bank of New York Mellon v. Cairns, MISC 17-000037, Oct. 5, 2018, Land Court, ss. Piper, J.

[6] Fed. Nat. Mort. Ass'n. v. Gordon, 91 Mass. App. Ct. 527, March 8, 2016 Hanlon, J.

[7] Deutsche Bank Nat. Tr. Co. v. Gabriel (81 Mass. App. Ct. 564, 965 N.E. 2d 875)

Woods requests a stay by way of a restraining order of the orders by the Bankruptcy Court which amount to an attempt to terminate Woods' possession and evict her without authority to do so given that only four courts in Massachusetts have jurisdiction of Summary Process, and Bankruptcy Court is not one of them.

Further, Bankruptcy and Federal Courts recognize that areas of law that are the province of the state are determined by the state's interpretation and controlling decisions regarding those laws. Eviction is one of those areas that is a province of the states. For instance, Bankruptcy Courts across the country have different rules and decisions regarding evictions based upon the local rules of the state wherein the cases arise.

Given that Bankruptcy Court lacks jurisdiction over eviction process in Massachusetts, as explicit under statute and under Massachusetts Uniform Summary Process Rule One[8], Woods requests this Court recognize the lack of subject matter jurisdiction; therefore, that this Court recognize that any order attempting to exercise such jurisdiction must be stayed, and imposition of a restraining order against such an order is in accordance with this Courts jurisdiction.

Rebuttals to the Order for Contempt (exhibit 8), which incorporates the salient aspects of the previous Order to Sell and Order to Compel/Surrender are as follows:

1. Ms. Woods lawfully occupies her property located at 70 Russell Street in Hadley, MA 01035. Please see attached affidavit of R. Susan Woods (exhibit 9).

2. Mr. Collins, Trustee of her Chapter 7 Bankruptcy, has taken ownership of the property to liquidate it to pay Woods' minimal debts. Woods has surrendered the property against her will.

3. Trustee Collins negotiated and accepted a release deed see **Exhibit**; the release deed, was recorded at Hampshire Registry of Deeds, in Book 13081, on Page 46, on September 19, 2018.

4. Said acceptance may appear to be a gain ofan asset, the 70 Russell Street property, for the estate, when in actuality it releases claimant creditor Goldman Sachs Mortgage Company

---

[8] "Four Departments of the Massachusetts Trial Court have jurisdiction over summary process actions (Superior Court, District Court, Boston Municipal Court and Housing Court)."

(Goldman) from any liability[9]. This is in the face of extensive evidence provided the Bankruptcy Court that Goldman Sachs had no legal interest/no mortgage interest in the property when it "foreclosed"

5.  The Court states that, "at a hearing held on February 14, 2019, the Debtor represented that she had taken possession of the Russell Street Property", when in fact Woods has had lawful possession of the property since she purchased it on May 4, 2005 (please see Deed, exhibit 10). As such, Woods did not contradict the Court's Order. She has not taken steps to gain possession since the case began.

6.  Woods has not engaged in criminal trespass.

7.  Woods did surrender the keys to the property in accordance with the Court's "Order to Surrender" granted by the Motion to Compel. She complied with the Court's Order to the extent that she could do so without compromising her possession of the property. After turning over the keys to the locks, she then had the locks re keyed for her own safety. Please see exhibit 11, receipts for re keying of the locks dated 2/12/19 (after tenants moved out) and 2/15/19 ( after complying with the Order to Compel/Surrender).

8.  Woods has not acted to obtain possession as described in footnote numbered 1. Woods already had and continues to have possession, lawfully acquired years ago in May 2005.

9.  Also in footnote numbered 1 is Debtor's obligations under 11 U.S.C. § 521(a)(3) to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under the title" and under 11 U.S.C. § 521 (a)(4) to "surrender to the trustee all property of the estate." There are limits to what "cooperating with the trustee" requires, including protecting one's possessory interests, which are personal and not in rem. Also, please see rebuttal numbered 2, Woods has surrendered her property to the estate.

### Argument on Matters of Jurisdiction

---

[9] In Massachusetts, the general practice is to state the nature of the covenants associated with a deed on its face by using words such as "with quitclaim covenants" or "with warranty covenants" and the like. Unlike the warranty and quitclaim deeds, release deeds do not guarantee anything. They transfer the title or other right that the grantor holds in a particular parcel of property, but the grantor does not simultaneously assure a buyer that title is valid in connection with a release deed. While a release deed releases the real estate to the grantee, a recipient of a release deed does not have any cause of action against the grantor in the event that someone else is considered the paramount titleholder.

While Woods could quote from all of the attached cases, the recent analysis in FNMA v. Gordon is based on a fact pattern that so closely resembles that of Woods' situation that she quotes extensively from it here.

In the Gordon case, Gordon was the tenant who entered as a lessee after the foreclosure and Grant was the owner whose possession continued given no final decision to evict from a Massachusetts court of competent jurisdiction. Therefore:

> "Relying on Dime Savings, supra, Gordon argues that G.L. c. 184, § 18, bars Fannie Mae's common-law trespass claim, …
>
> **General Laws c. 184, §18, as amended by St. 1973, c. 778, § 1, provides that "[n]o person shall attempt to recover possession of land or tenements in any manner other than through an action brought pursuant to chapter two hundred and thirty-nine or such other proceedings authorized by law."…**
>
> Deutsche Bank Natl. Trust Co. v Gabriel, 81 Mass. App. Ct. 564, 565-566 (2012) ("Deutsche Bank, **having acquired the property after a foreclosure sale, was both required and entitled to use summary process, G.L. c.239, §1, to recover possession from the defendants, who continued to occupy the premises after the foreclosure**…Dime Sav[ings], 413. [at] 291")….
>
> In holding that the banks trespass actions should be enjoined pursuant to G.L. c 184, §18, the court specifically noted that, "[i]n each of the cases in question, the property was occupied at the time of the foreclosure either by the mortgagor or a tenant of the mortgagor." Dime Savings, 413 Mass. At 286. Moreover, '[a]ll such occupants initially entered the respective properties lawfully." Ibid.
>
> In Dime Savings, the court determined that "[t]here is….no basis, on this record, for distinguishing holdover tenants of mortgagors from holdover mortgagors." Id. At 285
>
> We decline to adopt a rule that would distinguish this case from Dime Savings based solely on the state of the purported landlord's title, or would deem a purported lessee's possession of premises to be "unlawful" in all circumstances where the purported landlord's title is later adjudicated to be lacking.
>
> Like the tenants in Dime Savings, Gordon was never a true stranger to the property. Instead, at a minimum, she entered at the invitation of a person with actual possession, who was defending an active eviction case that had yet to conclude with the entry of a judgment for possession for any other party. We note that this situation is easily distinguishable from a case in which a person makes a forced entry into a vacant property and, without permission from any purported owner, takes up residence therein.
>
> We conclude that the Supreme Judicial Court's declaration in **Dime Savings that a post-foreclosure owner may not bring a trespass action against a holdover tenant who is in actual possession of the premises applies with equal force here, where the purported tenants claim to have leasehold rights arising after a foreclosure, but before a final judgement for possession has entered against the landlord. …**
>
> Whether Fannie Mae obtained constructive possession. The motion judge reasoned that, because the foreclosure was effective, Fannie Mae and not Grant held title to the property on the date Grant moved out. As a result, the judge concluded that Fannie Mae obtained constructive possession at that moment Grant vacated the property, making Gordon a trespasser. We disagree. In our view, Fannie Mae did not establish its constructive

possession on the summary judgment record before us, and <u>Dime Saving</u> governs this
point as well.

In **<u>Dime Savings</u> 413 Mass. At 288**. The court considered (and ultimately adopted)
the view from several other jurisdictions that "for the purposes of a trespass action, **there
can be no constructive possession by an owner of property actually possessed by an-
other." <u>Id</u>. At 288-289.** Accordingly, here, Fannie Mae's claim required proof that there
was a period of time, however brief, when no other person was in actual possession.

Because we are satisfied that, **on the summary judgment record presented,
Grant's "actual" possession did not necessarily end at the moment she moved out,
we reverse.**

**Grant's execution of the lease and her surrender of the purportedly leased prem-
ises to Gordon pursuant to that lease do not indicate Grant's surrender of posses-
sion in relation to others who might claim title.** On the contrary, these facts suggest the
opposite. Cf. <u>Shoer v. Daffe</u>, 337 Mass. 420, 424 (1958) (letting of premises by adverse
possessor, and subsequent possession by succession of tenants under purported leases,
did not interrupt adverse possessor's claim as against the record title holder for purposes
of the twenty-year prescriptive period). **Nor does a gap in time between when Grant
vacated and Gordon entered the premises signify that Grant surrendered her actual
possession.** Cf. <u>ibid</u>., quoting from <u>Wishart v. McKnight</u>, 184 Mass. 283, 285-286 (1903)
("To warrant a finding that there was a continuity of possession, we do not deem it neces-
sary to show by express testimony that the new occupant was personally present upon the
premises before the former occupant departed, and that there was a formal manual trans-
fer of possession…There is a fair inference that…the possession [of the tenant and the
owner] is continuous, or **rather, that the possession of the owner is continuous, alt-
hough the two do not meet personally upon the premises at the end of the term**").

The question whether Grant surrendered possession of the property "is to be deter-
mined by the intent as expressed by words and acts of all the parties in the light of the cir-
cumstances." <u>Net Realty Holding Trust v Giannini</u>, 13 Mass. App. Ct. 273, 278 (1982),
quoting from <u>Tudor Press, Inc. v. University Distrib. Co.</u>, 292 Mass. 339, 341 (1935). In-
dicative of Grant's continuing possession is Gordon's uncontroverted affidavit, which
states that, although Grant moved out on December 16, 2012, Grant's name remained on
certain utilities for an unspecified period of time after that date, and Gordon paid rent to
Grant for several months after that date.

**It is undisputed, however, that the summary process case against Grant re-
mained pending with no adjudication of the title as of the date Grant left the prop-
erty and Gordon moved in.**

**Thus, under <u>Dime Savings</u>, the summary judgement in favor of Fannie Mae can-
not stand."**

For the same reasons as explored extensively in FNMA v. Gordon, Woods' possession of
the property has been continuous and she is firmly covered by the Dime Savings SJC legal inter-
pretation, MGL Chapter 260 section 120, MGL Chapter 184 section 18, and MGL Chapter 239
section 3.

Further, The Massachusetts state Constitution guarantees Woods her right of possession as distinctly separate from her right of ownership, as outlined in Article I (as revised for inclusive language):

> "All people are born free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness. Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin."

As this Court must be guided in issues of the states' legal province by the guidance of its highest Court, Woods can only be evicted by a Massachusetts court with subject matter jurisdiction; this is jurisdiction that the Federal Bankruptcy Court explicitly lacks.

Without subject matter jurisdiction, it appears to Woods that these orders must be stayed by restraining order by this Court without discretion.

Given that these orders included language of immediacy, staying them by way of restraining order is of the essence.

Lastly, Ms. Woods suffers from serious health diagnoses, please see notes from her doctor, attached (exhibits 12 and 13). Her health diagnoses are life threatening, especially in the dead of winter.

## BANKRUPTCY CASE LAW DOES NOT SUPPORT EVICTION WITHOUT SUMMARY PROCESS – REVIEW OF CASELAW PROVIDED BY BANKRUPTCY JUDGE

In her decision, the honorable Judge Katz of the Western District of the US Bankruptcy Court relies upon four decisions to claim the right to evict *Woods* outside of Massachusetts settled Summary Process requirements: *In re Hardy*[10], *Scarver v Ellis (In re McKeever)*[11], *Jensen-Carter v Hedback (In re Stephans)*[12], and *In re Searles*[13]. First case is out of DC, second case out of Georgia, third case out of Minnesota, and the fourth case out of Rhode Island.

In all four decisions, the judges distinguish material fact bases that under bankruptcy law would have made their decision to evict by US Marshall unavailable; they point out how those material facts do not exist in their particular case; however, each those material facts that would bar use of eviction by US Marshall *do exist in the Woods case* – rendering use of a US Marshall eviction barred in the *Woods* case.

---

[10] In re Hardy, 2017 WL 2491497, *6-7 (Bankr. D.C. June 8, 2017)
[11] Scarver v. Ellis (In re McKeever), 567 B.R. 652, 664-65 (Bankr. N.D. Ga. 2017)
[12] Jensen-Carter v. Hedback (In re Stephens), 2012 WL 1899716, *3-4 (D. Minn. May 24, 2012)
[13] In re Searles, 70 B.R. 266, 272-73 (D.R.I. 1987)

This first case out of DC has a fact base that is most akin to the R. Susan Woods case. However, unlike the Woods case it commences as a Chapter 11 and relates to property in which Hardy herself did not live and it is focused on the vacating of leases that Hardy entered into after the filing of the petition. Woods commenced a chapter 7, already was in possession of the home and is the target of the sudden eviction.

Further, the final eviction order based on a contempt order against Hardy, which will not evict Hardy from her own home, the turnover order on the property was on September 9th of 2016, the contempt entered on May 26th of 2017 and on May 27th, 2017 there's an order that the US Marshalls shall evict debtor or any and all other occupants by May 29th, 2017.

Quoted in these cases more than once is that the eviction is an action of "last resort". The Woods turnover order – the order to sell which is the focus of this contempt order – was on February 14th and the order to compel or surrender was on February 15th, the order of contempt was on February 26th; this is a far cry from an 8 month plus *In re Hardy* period that eventually leads to the order for a marshall to evict.

Further, this Washington, DC case says that the Bankruptcy Court does not need to address the debtor's "argument that any evictions must go through Landlord and Tenant Court of the District of Columbia" because in the district of DC, the Bankruptcy Court order argues, that "provisions of the bankruptcy Court's order regarding eviction did not address eviction pursuant to Landlord Tenant Law".

This distinguishes the case markedly from the R. Susan Woods case because the order from the Bankruptcy Court recognizes the following, "Although this court would normally abstain in the case of a typical landlord-tenant dispute this is not that type of case and abstention would be inappropriate."

In Massachusetts, landlord-tenant law is exactly what controls any eviction of someone who establishes occupancy legally; this is thanks to the Dime Savings Bank decision and others, including legal precedence going back long before the Dime decision. That is, tenant landlord law is the means and the only means for evicting even if the property is purported foreclosed or sold to another party.

In the *Woods* case, the Bankruptcy Trustee gained control of the property by purchasing it from a purported post foreclosure purchaser – that is, from the mortgagee that claimed to buy back at foreclosure. The Trustee is a new purchaser of property – no special status there.

Therefore, it is directly controlled by Massachusetts Summary Process Law, explicitly so in terms of our standard as long as occupant entered legally and had possession prior to the sale, which R. Susan Woods did given her continuous possession since 2005. Therefore, the caveat to the decision to the DC case *in re Hardy* explicitly leads to the opposite given the laws in Massachusetts applicable in this bankruptcy case: that, if tenant landlord controlled in the *in re Hardy* DC situation, eviction by Marshalls would not have applied; for that reason, it is not an action within the powers of the bankruptcy court here.

In the second case referenced, *Scarver v. Ellis* it is a case between the bankruptcy trustee Scarver, and Ellis who is one of the group who are tenants in what started out as a Chapter 11 bankruptcy; they are tenants of an industrial building owned by the debtor who filed the petition. Every one of the tenancy agreements that the court vacates were entered after the bankruptcy petition began so not one of them applies here. They explicitly state that the arrangements of the leases and liens that are being vacated are explicitly not in compliance with the relevant Georgia law.

Here, R. Susan Woods' occupancy of the property is explicitly and directly covered and exists pursuant to Massachusetts law and, again, is a factual legal configuration that commenced long before the petition was filed; therefore, *Scarver v. Ellis* is inapplicable because the material fact basis is different, the type of bankruptcy case that commenced case is different, and the requirements that would allow the vacating of the leases were entered after the bankruptcy petition and are not in compliance with the Georgia law, being the local state law. In contrast, the *R. Susan Woods* argument that you cannot be evicted except pursuant to Massachusetts Summary Process Law is in fact the exception that the Georgia case recognizes would bar the vacating of those leases and the eviction.

In the counts that are not dismissed in the Georgia decision, these include the claims where the tenancy even in this industrial building (by someone where it is not their personal residence that was being vacated) if the lease existed prior to this decision, the bankruptcy decision here cited postponed deciding to attempt to use bankruptcy powers to end and evict those tenancies.

The third case mentioned by the bankruptcy judge is *in re Stephans*. Here the eviction is a sanction on a contempt order related to non-compliance with a series of procedurally ordered discovery deadlines, motions to compel discovery in a case, where the litigation in the bankruptcy related case has gone on for ten years. Woods would be more than comfortable being not evicted

during ten years of litigation. Again, this Court is reminded that an eviction by the US Marshalls
is supposed to be a last resort. After ten years of litigation a few years of non-compliance with
bankruptcy discovery requests make this case complete inapposite. It underscores how far a
bankruptcy court will go before resorting to that eviction by marshalls that is supposed to be a
last resort. The *In re Stephans* order was after many, many years of attempting to resolve the
bankruptcy estate.

*In re Searles*, the Rhode Island case, has to do with the eviction of somebody who had
signed a consent settlement that the court determined the signatory understood and had not been
coerced into. It has to do with the wife in the couple (and their adult son) arguing that because of
the coercion in the settlement to sign over the deed (and few other things) they do n0t have the
right to be ordered to be evicted.

Again, this does not address Woods' contention which is the explicit laws related to evic-
tion process in Massachusetts. That was not even raised as a defense in the *In re Searles* case;
therefore, in re Searles cannot address the proper interpretation of bankruptcy powers in relation-
ship to eviction state law and its extensive due process protections. It is very clear in *In re
Searles* that the core proceeding which is where the court may exercise these extraordinary pow-
ers in bankruptcy did not have to do with the right to live in the property (in Massachusetts
known as "possession") but had to do with ownership of the property and the right of the bank-
ruptcy trustee to enforce ownership.

Woods has signed no consent order. The issue of due process in regard to possession is
what she is raising in accordance with Massachusetts legal protections which is in a province of
law – federal courts bow to state law in cases of state jurisdiction; eviction is traditionally state
law and, therefore, this case is also inapposite.

Therefore, the cases that the bankruptcy judge relies upon includes two in where in fact
the decisions themselves say they would carve out of the bankruptcy powers to evict by US Mar-
shal because of local state law requirements and the other two are completely inapposite to the
present situation.

As quoted in the *Scarver v. Ellis* case:

"Pursuant to 28 u.s.c. § 1334(e), the bankruptcy court has "exclusive jurisdiction of
all the property, wherever located, of the debtor as of the commencement of [its] case,
and of property of the estate." This broad jurisdictional grant is implemented in part
by 11 U.S.C. § 105, which gives the court the authority to enter any order necessary
to effectuate the provisions of the Bankruptcy Code. 2 Collier on Bankruptcy

105.02[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016 ). *Section 105 however does not negate the need to comply with due process.*" [emphasis added]

The requirement of due process in the use of the marshals to evict (as "a last resort") does not exist in the Woods case. She was not given an opportunity to provide a full brief in arguing against these acts. The orders she received were often in the mail after she was to comply with these orders and other means of sanctions have not been addressed if they validly could be applied before taking such an extreme act.

The fact that the bankruptcy judge could only find decisions that support the carve outs that Woods is asking for or are inapplicable because they do not address the only primary residence of a severely ill and disabled person to be evicted from their sole residency is instructive of the *lack of the reach of bankruptcy powers in this case.*

In these four citations, all of the agreements that the bankruptcy courts are trying to vacate or bankruptcy decisions they were trying to enforce were based on a configuration of an interest in property *that occurred after the petition was filed*; these decisions only provide a basis for the opposite conclusion – that in *In re Woods*, bankruptcy powers are explicitly limited from application of a US Marshall's eviction here.

The due process rights Massachusetts confers on all occupants who entered their possession legally (which Woods did in 2005), guarantee a significant list of due process protections. Due process protects section 105 requires the Baakruptcy Court provide.

They include at minimum that a constable give at least 48 hours-notice based upon a summary process case in which Woods was the Defendant as to her right to possession in the property. Such a case would provide additional protections under 239 §9 as somebody with severe (in fact, life-threatening illness) not being dumped out in the subfreezing weather instead of a potential 6 to 12 month stay. She is stripped her rights to appeal, to jury trial (Article 15 or the Massachusetts Constitution) as codified for an eviction case in Massachusetts, notice provisions, the right to discovery, the right to require the trustee to prove he has standing.

(The Honorable Court should be aware that the Bnakruptcy Trustee claimed to acquire and own this property based on a release deed from a party that Woods has evidence not only did not legally foreclose but never actually had interest in the mortgage. A release deed on confers upon the purchaser the ownership that the prior party had in interest in the property and provides no recourse in the release deed if what has been purchased is worth nothing.)

The due process right to challenge standing to challenge the claim to title after a foreclo-
sure is conferred upon Woods in an eviction case in Massachusetts (recently confirmed unmis-
takably in Rental Property Management Services v. Hatcher, 479 Mass. 542 (2018)) is denied
her in the Bankruptcy setting. That denial thereby denies her a slew of Constitutionally protected
due process rights under Massachusetts Summary Process Law. This law is controlling here as a
carve out from the bankruptcy law and is the law in compliance with and pursuant to which
Woods is occupying and in possession of the property in question.

## PRELIMINARY INJUNCTION STANDARD MET

Using the preliminary injunction standard: Pursuant to Mass. R. Civ. P. 65 (d):

"a preliminary injunction shall be issued for good cause, in specific terms and shall describe
in detail the acts to be restrained: the injunction is only binding upon the parties of the action.
The court relies on the following to determine issuance of a preliminary injunction: (1) is
there a substantial likelihood of success on the merits; (2) will a failure to issue the injunction
subject the movant to irreparable harm; (3) does the threatened injury to the movant outweigh
the damage the injunction may cause and; (4) will the injunction adversely affect the public
interest.  Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-618.  If the plain-
tiff fails to demonstrate sufficient risk of irreparable harm to warrant an injunction, the in-
junction, shall not be denied.  Id.  The court in Cheney stated "only where the balance be-
tween risks cut in favor of the moving party may a preliminary injunction properly issue."
Id. The determination of such risk is within the court's discretion."

**Success of Merits prong 1 of the Preliminary Injunction Standard is lowered from
"substantial likelihood" to "substantial possibility" where prongs 2 and 3 of the Prelimi-
nary Injunction Standard are sufficiently established.**

Footnote #5 from Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 n. 12,

405 N.E.2d 106, 112 n. 5 (1980) states as follows:

"Since the goal is to minimize the risk of irreparable harm, if the moving party can
demonstrate both that the requested relief is necessary to prevent irreparable harm to it and that
granting the injunction poses no substantial risk of such harm to the opposing party, a substantial
possibility of success on the merits warrants issuing the injunction. See Washington Metropoli-
tan Area Transit Comm'n. v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977) and cases
cited."

The harm to Plaintiff Woods is truly irreparable[14] and she further elaborates on this and

other points under the additional Standard of Review.

---

[14] Interference with the enjoyment or possession of land is considered 'irreparable' since land is
viewed as a unique commodity for which monetary compensation is an inadequate substitute.
*Pelfresne v. Williams Bay,* 85 F .2d 877, 883 (7th Cir. 1989); *Shammas v. Merchants Nat'l Bank,*

The purpose of the preliminary injunction is to preserve the *status quo* – that is, the "last uncontested status which preceded the pending controversy." Westinghouse electric Corp, v. Free Sewing Machine Co., 256 F. 2d 806, 808 (7th Circuit 1958). And a judge's responsibility is to preserve "a state of affairs such that after the full trial a meaningful decision may be rendered for either party."

Packaging Industries, 380 Mass. And "… the preliminary injunction standard should aim to minimize the probable irreparable loss of rights caused by errors incident to hasty decisions." Developments in the Law, Injunctions, 78 Harvard Law Review 994, 1058 (1965.)[15]

A party seeking "injunctive relief" must show that without that relief, "he will suffer irreparable harm, not capable of remediation by a final judgment in law or in equity." Commonwealth v. Mass. CRINC., 392 Mass. 79 (1984).

The balance of harms is in Woods' favor. Being made homeless *again* would cause her irreparable harm, especially given her complex health issues. The monetary issues for Mr. Collins are of his own making and are not life threatening.

## PUBLIC INTEREST TEST PRONG

The fourth prong of public interest could not be more strongly met, even the case law supposedly relied up on by the bankruptcy judge is explicitly inapposite. In fact, the case law points to exactly the protecting distinctions that apply in Woods' case.

Further, it cannot be in public interest to have the centuries development of extensive protections in Massachusetts Summary Process Code to be swept away in perhaps some act of frustration by a bankruptcy judge.

Here explicitly the bankruptcy laws do not allow such a sweeping brush off of due process and constitutional protections core to the safety and sanctity of every Massachusetts legal occupants reliance in the meaning of home under our constitution. Nor is it in the public interest that those who are seriously ill be placed in a situation that is even more life threatening.

Not only would this be an explicit violation of the American With Disabilities Act (codif

---

C.A. No. 90-12217, 1990 WL 354452, *6 (D. Mass. Nove. 9, 1990); See also *United Church of the Medical Center v. Medical Center Com.*, 689 F .2[nd] 693, 701 (7th Cir. 1982) ("It is settled beyond the need for citation… that a given piece of property is considered to be unique, and its loss is always an irreparable injury.")

[15] These cases are quoted in the Commonwealth v. Dime Savings memorandum for the Massachusetts Supreme Judicial Court.

ied in the Mass Constitution[16]), but it is against our moral code as a state that has recognized and enacted the first legislation across the country that attempted to ensure that everyone was covered with the medical necessities to protect their long-term health.

Further, it is a dangerous cross over from federal jurisdiction that generally recognizes and respects provinces of state law to allow a bankruptcy court to trample upon that distinction again based on case law that clearly points to the opposite conclusion. Further the court is reminded that it was in the pursuit that those who are unable to work and "feeble" to use the historical language that our nation instituted the social security act and late Medicaid to ensure a minimum level of civil decency to each other in our Commonwealth and Nation.

These are values codified in our Constitutions and worthy of respect and enforcement.

## CONCLUSION

Wherefore all of the above, Ms. Woods begs this Court to allow this emergency motion.

Respectfully submitted,

R. Susan Woods
*pro se*, until further notice
February 26, 2019
70 Russell Street
PO Box 160
Hadley, MA 01035-0160
tel. 413/883-1414
email: rsusanwoods@gmail.com

### Certificate of Service

I, R. Susan Woods, do hereby certify that I served a copy of this document to all parties to this action, or their counsel, by first class mail or hand delivery.

---

[16] Article CXIV. No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth.

R. Susan Woods
*pro se*, until further notice
February 26, 2019

Joseph B. Collins, Trustee
Hendel & Collins P.C.
101 State Street
Springfield, MA 01103

Richard King, US Trustee
446 Main Street, 14th Floor
Worcester, MA 01608

| 03/12/2018 | Motion to Compel the Plaintiff to Produce the NOTE and Motion to Compel Limited Discovery filed by Susan R Woods A/K/A Susan Woods a/k/a R. Susan Woods |
|---|---|
| 03/12/2018 | Copy of Lease |
| 03/14/2018 | Change of Address by Susan R Woods A/K/A Susan Woods a/k/a R. Susan Woods |
| 03/15/2018 | Findings and Order—Susan Woods dismissed from case |
| 03/15/2018 | Scheduled<br>Event: Case Management Conference<br>Date: 04/02/2018  Time: 09:00 AM<br>Result: Dismissed |
| 03/21/2018 | Plaintiffs Atty filed a the original dismissal notice |
| 04/02/2018 | Event Resulted       Fields<br>Judge: Fields, Hon. Robert G<br>The following event: Case Management Conference scheduled for 04/02/2018 09:00 AM has been resulted as follows:<br>Result: Dismissed<br>Reason: Plaintiff's request |
| 04/02/2018 | R 41(a)(1) Voluntary Dismissal |
| 04/03/2018 | After notice and opportunity to appear for the following event:<br>04/02/2018 09:00 AM Case Management Conference<br>the above entitled matter is dismissed for the following reason(s): *<br>Plaintiff's request. |
| 04/30/2018 | Answer and Counterclaim of Carlos Murphy-Martinez, Jose Murphy-Martinez filed. |

ATTORNEY GENERAL vs. THE DIME SAVINGS BANK OF NEW YORK, FSB, & others. 2/18/19, 10:47 PM

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:22:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 19 of 156
Document      Page 19 of 156

# ATTORNEY GENERAL vs. THE DIME SAVINGS BANK OF NEW YORK, FSB, & others. [Note 1]

## 413 Mass. 284

May 7, 1992 - July 27, 1992

Suffolk County

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

---

The Attorney General was empowered by G. L. c. 12, Section 10, to seek a declaratory judgment as to the legality under G. L. c. 184, Section 18, of a mortgagee bank's practice of commencing trespass actions to eject mortgagors of real property, and the tenants of mortgagors, who hold over after foreclosure. [287]

A mortgagee who forecloses on real property by power of sale may not bring a trespass action to eject a holdover tenant or mortgagor in actual possession of the premises. [287-291]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 7, 1992.

The case was reported by Greaney, J., on a statement of agreed facts.

Stuart T. Rossman, Assistant Attorney General, for the Attorney General.

R. K. Gad, III (Colin J. Zick with him) for the defendants.

Joel Feldman, Margaret F. Turner & Kathleen E. McGrath, for City Life/Vida Urbana & another, amici curiae, submitted a brief.

---

**ABRAMS, J.** The Attorney General brought this action for declaratory and

injunctive relief against The Dime Savings

Page 285

Bank of New York, FSB (Dime). [Note 2] The dispute arises out of mortgage loans made by Dime in Massachusetts which have resulted in foreclosure. After foreclosing, Dime has brought actions in trespass against foreclosed mortgagors and tenants holding over after notice to quit and has sought and obtained injunctions to eject holdover mortgagors and tenants from the mortgaged properties. The Attorney General seeks a declaration that Dime's practice violates G. L. c. 184, Section 18 (1990 ed.). The complaint also asks that we enjoin Dime from pursuing such a course in the future. [Note 3] For the reasons stated, we hold that the procedure employed by Dime in these cases violates G. L. c. 184, Section 18. We therefore remand the matter to the county court for entry of a declaration that a mortgagee who forecloses on property by sale may not bring a trespass action against a holdover tenant or mortgagor in actual possession of the foreclosed premises. [Note 4]

1. Background. On April 7, 1992, the Attorney General began this action by filing a complaint in the Supreme Judicial Court for Suffolk County. The complaint invokes the court's equitable and supervisory powers under G. L. c. 214, Section 1 (1990 ed.), and G. L. c. 211, Section 3 (1990 ed.), respectively, as well as G. L. c. 231A (1990 ed.) (declaratory judgment). The case came before a single justice of the county court on a statement of agreed facts. The stipulations of fact concern a number of individual foreclosures and resulting dispossessions.

Page 286

After oral argument, the single justice reserved and reported the matter to this court.

The following is a summary of the statement of agreed facts. In each of the

ATTORNEY GENERAL v. Dime Savings Bank Case 8:19-cv-30029-MGM Document 2 Filed 03/04/19 Page 21 of 156 Doc Main 2/18/19, 10:47 PM

Case 19-03010 Doc 2 Filed 03/08/19 Entered 03/08/19 13:32:40 Desc Main Document Page 21 of 156

cases on which this controversy is founded, Dime held a mortgage of real property as security for an obligation. In each instance, the mortgagor defaulted on the obligation. After default, Dime recorded memoranda of entry, conducted foreclosure sales, and acquired perfected title to the properties by purchasing them at the foreclosure sales. Dime has neither sought nor accepted payments of rent from the occupants, and the Commonwealth stipulates that Dime has done nothing to create new, postforeclosure tenancies between itself and the occupants.

In each of the cases in question, the property was occupied at the time of foreclosure either by the mortgagor or a tenant of the mortgagor. [Note 5] All such occupants initially entered the respective properties lawfully. In each of the cases in which the holdover occupants were tenants of the mortgagor, the creation of the tenancy postdated the grant of the mortgage.

After Dime foreclosed its mortgages, it sent notices to the occupants demanding immediate possession of the properties. In each case, the occupants refused to relinquish possession on receiving notice to do so. Dime responded by bringing actions for trespass against the occupants in Superior Court. [Note 6] In each of these actions, Dime sought preliminary and permanent injunctions ordering the occupants to vacate the mortgaged premises. In some cases, the prayer for preliminary relief was heard on a "short order[ ] of notice." In no case, however, have fewer than thirty days passed between

Page 287

the issuance of the demand and the commencement of legal proceedings.

2. The Attorney General's power under G. L. c. 12, Section 10, to bring this action. We first address Dime's contention that the Attorney General acted beyond his statutory authority in commencing this action. Dime correctly notes

that the Attorney General argues in his complaint that the summary process provisions of G. L. c. 239 (1990 ed.), constitute the exclusive remedy for a mortgagee who has foreclosed on mortgaged property by power of sale and who seeks to gain possession of the property. Dime concedes that this claim amounts to an assertion that the Superior Court lacks subject matter jurisdiction to hear Dime's trespass claims. Dime further concedes that such a claim falls within the Attorney General's power, under G. L. c. 12, Section 10 (1990 ed.), to "take cognizance of all violations of law or of orders of courts, tribunals or commissions affecting the general welfare of the people." See Commonwealth v. Mass. CRINC, 392 Mass. 79, 88 (1984) (Attorney General has "broad common law and statutory powers to represent the public interest"). This concession is fatal to Dime's claim.

Dime maintains that the Attorney General has conceded that it has avenues other than summary process available for recovering possession of mortgaged property. Dime contends that this concession subverts the Attorney General's contention that the Superior Court lacks subject matter jurisdiction to hear Dime's claims. The Attorney General, however, has made no such concession. The Attorney General continues to argue that, after foreclosure by sale, a foreclosing mortgagee must employ summary process to dispossess holdover tenants or mortgagors. According to the Attorney General, the commencement of trespass actions to eject holdover tenants and mortgagors violates G. L. c. 184, Section 18. See infra. Under G. L. c. 12, Section 10, the Attorney General is authorized to take note of such statutory violations. See Commonwealth v. Mass. CRINC, supra.

3. G. L. c. 184, Section 18. General Laws c. 184, Section 18, provides, in pertinent part, that "[n]o person shall attempt to recover

Page 288

possession of land or tenements in any manner other than through an action

brought pursuant to [G. L. c. 239] or such other proceedings authorized by law." Dime argues that a mortgagee's use of a trespass action to recover possession of mortgaged premises is "authorized by law." G. L. c. 184, Section 18. Dime further maintains that a court's common law power to enjoin a continuing trespass justifies an injunction ordering holdover mortgagors or their tenants to vacate the premises. Because an action for trespass will not lie in the cases as stated, however, we conclude that the "other proceedings authorized by law" include neither a common law action for trespass nor an injunction based thereon. [Note 7]

It is well settled that "[a]n action of trespass, being a possessory action, cannot be maintained, unless the plaintiff had the actual or constructive possession of the property trespassed upon at the time of the trespass." Emerson v. Thompson, 2 Pick. 473, 484 (1824). See New England Box Co. v. C & R Constr. Co., 313 Mass. 696, 707 (1943); Milton v. Puffer, 207 Mass. 416, 418 (1911); Hersey v. Chapin, 162 Mass. 176, 179 (1894); Abbott v. Abbott, 97 Mass. 136, 140 (1867). Neither party contends that Dime has actual possession of the properties in question. Indeed, the disputed issue in this case is the means by which Dime may gain such possession.

We have not addressed the question whether an owner out of possession has constructive possession sufficient to maintain an action of trespass where actual possession is in another. [Note 8] Courts that have considered the question, however, have concluded that, for the purposes of a trespass action,

Page 289

there can be no constructive possession by an owner of property actually possessed by another. See Frost v. Johnson, 256 Ala. 383 (1951); More v. Urbano, 151 Conn. 381 (1964); McCausland v. York, 133 Me. 115 (1934); Jaycox v. E.M. Harris Bldg. Co., 754 S.W.2d 931 (Mo. Ct. App. 1988); Green v. Pettingill, 47 N.H. 375 (1867); Daniels v. Coleman, 253 S.C. 218 (1969). The

"fiction of `constructive possession' has no application when another is in actual possession." W. Prosser & W. Keeton, Torts Section 13, at 77 n.99 (5th ed. 1984). [Note 9]

Dime argues that the label attached to its action is irrelevant. Dime suggests that it might have brought an action for writ of entry under G. L. c. 237, or a common law action in ejectment. The short answer to this argument is that Dime did not bring such actions. The propriety of such other actions therefore is not before us.

Moreover, Dime's argument is self-contradictory. Although it maintains that the trespass label is insignificant, Dime also contends that a court's traditional power to enjoin a continuing trespass justifies the injunctions it has obtained. However, each case cited by Dime for the proposition that a court will enjoin a continuing trespass involves an owner or owners of real property in actual or constructive possession. See, e.g., Fenton v. Quaboag Country Club, Inc., 353 Mass. 534 (1968) (homeowners suffered injuries to person and

Page 290

property from golf balls which were hit from adjacent course); Anntco Corp. v. Shrewsbury Bank & Trust Co., 353 Mass. 250 (1967) (store owner and commercial landlord aggrieved by overburdening of easement for drainage); Chesarone v. Pinewood Builders, Inc., 345 Mass. 236 (1962) (owner of unoccupied land complained of flooding caused by drainage system constructed on neighboring land); Doody v. Spurr, 315 Mass. 129 (1943) (homeowner sought decree enjoining defendant from parking automobile on and driving over homeowner's property); Suburban Land Co. v. Billerica, 314 Mass. 184 (1943) (land owner and water company complain of town's construction of water pipes across plaintiffs' property without taking by eminent domain); Ferrone v. Rossi, 311 Mass. 591 (1942) (owner of vacant land aggrieved by defendant's construction of wall that encroached on

landowner's property); Franchi v. Boulger, 12 Mass. App. Ct. 376 (1981) (trustees of condominium trust object to improperly constructed retaining wall built partially on plaintiffs' property). In all but two of these cases, Chesarone and Ferrone, the plaintiff was in actual possession of the property in question. In both Chesarone v. Pinewood Builders, Inc., supra, and Ferrone v. Rossi, supra, the land in question was unoccupied. Thus, none of the cases cited by Dime supports its argument that, in these circumstances, it is entitled to an injunction for continuing trespass.

Dime argues that, even if it could not properly invoke the doctrine of continuing trespass, it could have brought actions in ejectment. Dime contends that it could then invoke the court's general equitable jurisdiction to obtain an injunction. Dime, however, could not get equitable relief at common law. [Note 10] Dime next asks the courts to "fashion a remedy to fit

Page 291

[Dime's] right" to immediate possession of the properties on which it has foreclosed. There is no need. The Legislature already has fashioned a remedy; it is the summary process statute. [Note 11] See Serezze v. YWCA of W. Mass., Inc., 30 Mass. App. Ct. 639, 644 (1991) ("[I]t is not a characteristic feature of summary process law that the landlord who seeks possession is without a speedy remedy"). [Note 12] See also Weiss v. Levy, 166 Mass. 290 (1896).

We remand this matter to the Supreme Judicial Court for the county of Suffolk for entry of a declaration that a mortgagee who forecloses on real property by power of sale may not bring a trespass action against a holdover tenant or mortgagor in actual possession of the foreclosed premises.

So ordered.

FOOTNOTES

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Document      Page 26 of 156

ATTORNEY GENERAL vs. DIME SAVINGS BANK OF NEW YORK, FSB & others.                    3/18/19, 10:47 PM

[Note 1] The other two defendants, Garden Management Co., Inc., and Dime Real Estate Services-Massachusetts, Inc., "are wholly-owned subsidiaries of Dime Savings Bank which have, on occasion, held title to mortgages and properties for [Dime Savings Bank] and on its behalf."

[Note 2] As used in this opinion, "Dime" refers to all three defendants.

[Note 3] At oral argument, the assistant attorney general conceded that a declaratory judgment would resolve the matter as effectively as an injunction. We therefore limit ourselves to the question of a declaratory judgment.

[Note 4] Dime maintains, and the Attorney General does not dispute, that a tenant has no more right to possession of property than his landlord. Allen v. Chapman, 168 Mass. 442, 443 (1897). There is therefore no basis, on this record, for distinguishing holdover tenants of mortgagors from holdover mortgagors. The Attorney General notes that, unlike the situation of the holdover mortgagors, there is nothing in the stipulation of facts to suggest that the holdover tenants were responsible for the defaults. As we hold that Dime must, on the stipulated facts, employ summary process to eject both holdover tenants of mortgagors and holdover mortgagors, we have no occasion to consider any distinction.

[Note 5] Dime suggests that the Attorney General goes beyond the scope of the statement of agreed facts when he characterizes the properties at issue as residential properties. The Superior Court memoranda of decision supplied by Dime, however, suggest that most, if not all, of the properties in question are indeed residential properties. We therefore assume that some of the foreclosures are of residences.

[Note 6] A small number of these actions were brought in other courts, but this fact is of no importance in our analysis.

[Note 7] General Laws c. 266, Section 120 (1990 ed.), which governs criminal trespass actions, expressly provides that the statute "shall not apply to tenants or occupants of residential premises who, having rightfully entered said premises at the commencement of the tenancy or occupancy, remain therein after such tenancy or occupancy has been or is alleged to have been terminated." Although this limitation does not govern the present cases as stated, it is nonetheless entirely consistent with the common law of trespass. See infra.

[Note 8] This court has held that, where tenants are in actual possession of an owner's property, the owner does not have sufficient possession "through his

tenants" to maintain an action in trespass against a third party. Bascom v. Dempsey, 143 Mass. 409, 410 (1887).

[Note 9] Dime's reliance on Duff v. United States Trust Co., 327 Mass. 17 (1951), Northampton Paper Mills v. Ames, 8 Met. 1 (1844), and Burke v. Willard, 249 Mass. 313 (1924), to the contrary is misplaced. The plaintiffs in Duff did not contend that the defendant, which had purchased the properties in question at a foreclosure sale but was not in actual possession, lacked the requisite possession to bring an action in trespass. The issue was therefore not before this court. In Northampton Paper Mills, the plaintiffs sought to take actual possession, were physically rebuffed, and subsequently succeeded in gaining possession. Northampton Paper Mills v. Ames, supra at 7. Moreover, Northampton Paper Mills was an action for mesne profits, not for possession. Id. at 7-8. The case therefore provides no authority for the proposition that an owner out of possession may bring an action in trespass to eject holdover tenants or mortgagors. Dime's reliance on Burke v. Willard, supra, is misplaced for the same reasons.

[Note 10] At common law, a bill in equity brought by an owner out of possession to recover possession of his estate would have been dismissed because summary process offers "a plain, adequate, and complete remedy at law." Weiss v. Levy, 166 Mass. 290, 293 (1896). See Glickman v. Kastel, 323 Mass. 148, 150 (1948) ("There is not, and has never been, any equity in the bill" requesting an injunction to recover possession of land), and cases cited. Accord Root v. Woolworth, 150 U.S. 401, 410 (1893) ("It is undoubtedly true that a court of equity will not ordinarily entertain a bill solely for the purpose of establishing the title of a party to real estate, or for the recovery of possession thereof, as these objects can generally be accomplished by an action of ejectment at law," citing Hipp v. Babin, 60 U.S. (19 How.) 271 [1856]); Rocky Mountain Fuel Co. v. New Standard Coal Mining Co., 89 F.2d 147 (10th Cir. 1937); Perry v. Warnock, 246 Ala. 470 (1945); Welbrot v. Levenberg, 98 Conn. 217 (1922); Slaughter v. Land, 190 Ga. 491 (1940); Kertesz v. Falgiano, 140 W. Va. 469 (1954). "[P]laintiffs in such cases [were required to] resort to the ordinary remedies for the recovery of the possession of land." Glickman v. Kastel, supra at 150.

[Note 11] Dime argues that our holding eviscerates the rule that a court will order specific performance of a purchase and sale agreement for real property. Summary process affords Dime a complete and adequate remedy. There is no analogous remedy for the parties to a purchase and sale agreement. Therefore, Dime's argument fails.

ATTORNEY GENERAL vs. DIME Case 3:18-cv-30029-MGM Document 2 Filed 03/04/19 Page 28 of 156  2/18/19, 10:47 PM

Case 19-03010  Doc 2  Filed 03/08/19  Entered 03/08/19 13:32:40  Desc Main
Document  Page 28 of 156

[Note 12] At oral argument, counsel for Dime stated: "It certainly is true that in 98 percent of the summary process cases that are heard in the District Courts in the Commonwealth of Massachusetts . . . , the demandant wins; there's a judgment for possession; there is no appeal; and [the cases] are over within 27.82 days, or whatever it said in that study [submitted by the amici] . . . ."

Home/Search  Table of Cases by Citation  Table of Cases by Name

Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.

EXHIBIT 3

## THE TRIAL COURT
## COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.
No.16–CV-757

Worcester Division
Housing Court Department

---

**U.S. National Association, Trustee of JP
Morgan Mortgage Acquisition Trust,**
Plaintiff

v.

**Ann Ayrton**

Defendant

**RULING ON PLAINTIFF'S REQUEST
FOR A PRELIMINARY INJUNCTION**

---

This matter arises out of a post-foreclosure eviction involving the defendant's
aunt and uncle.[1] A Temporary Restraining Order issued on August 10, 2016, after a hearing at
which the defendant failed to appear despite in hand service of notice of the hearing. The
Temporary Restraining order stated:

**Defendant having been served in hand and failing to appear, the Court orders that
Ann Ayrton vacate the property at 25 Oliver Street, Worcester, MA forthwith. Execution
for possession to issue for Ann Ayrton and all other occupants forthwith.**

The matter was further scheduled for a preliminary injunction hearing on August 23,
2016.[2] At the conclusion of the hearing the Temporary Restraining Order was vacated.

---

[1]Donna Berrios and Rafael Mejias are the former owners of the property at 25 Oliver
Street, Worcester, MA, having lost their ownership interest after a default and foreclosure on
their mortgage. Pursuant to c. 239 sec. 1,  possession was awarded to the plaintiff in this case.
See 14-SP-710. On August 10, 2016, during the levy of the execution, the plaintiff was made
aware that there was an additional occupant (Ms. Ayrton) residing at the property and that Donna
Berrios had transferred all of her physical property to that occupant. This case was filed that same
date.

[2]In the interim, the defendant filed an appeal of this Court's August 10, 2016  order. The
Single Justice stayed any move out until at least after the hearing on August 22, 2016.

## Applicable Law

Pursuant to Mass. R. Civ. P. 65 (d) a preliminary injunction shall be issued for good cause, in specific terms and shall describe in detail the acts sought to be restrained; the injunction is only binding upon the parties of the action. The court relies on the following to determine issuance of a preliminary injunction: (1) is there a substantial likelihood of success on the merits; (2) will a failure to issue the injunction subject the movant to irreparable harm, (3) does the threatened injury to the movant outweigh the damage the injunction may cause; and (4) will the injunction adversely affect the public interest. *Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-618.* If the plaintiff fails to demonstrate sufficient risk of irreparable harm to warrant an injunction, the injunction shall be denied. *Id.* at 618. The court in *Cheney* stated "only where the balance between these risks cut in favor of the moving party may a preliminary injunction properly issue." *Id.* The determination of such risk is within the court's discretion.

## Ruling

Based upon the arguments presented at hearing and the affidavit filed by the defendant the Court finds in this particular case and based upon the particular facts of this case only that:

1. The defendant has lived at 25 Oliver Street, Worcester, MA, since 2001 when her aunt and uncle purchased the property. She lived there for 15 years. She lived there at all times relevant to the foreclosure, the foreclosure sale, the summary process case involving her aunt and uncle and she now lives there alone, after levy of an execution for possession as to her aunt and uncle.[3]

2. During the time she lived with her aunt and uncle she became employed at CVS and contributed $40-$60 a week to the household expenses.

3. She was not afforded any rights pursuant to c. 239.

4. The plaintiff could have investigated and determined that there was an additional occupant, where as here, that occupant lived in the home pre- foreclosure and all relevant time thereafter.

5. The plaintiff has failed to meet its burden to show that it is entitled to the issuance of the preliminary injunction where there is an alternative remedy available (summary process), there is not a likelihood of success on the merits on these particular facts and the irreparable harm and

---

[3] Plaintiff argues that these facts support the request for the injunction based upon the simple principle of fairness. The defendant knew of the eviction as to her aunt and uncle, the argument goes, therefore she should have volunteered the fact that she was living there. Her aunt and uncle were not forthcoming about additional occupants, equally unfair. The lack of fairness though has no bearing on the defendant's right to due process before she is dispossessed of her home of 15 years.

threatened injury of being homeless far out weighs the further economic impact suffered by the plaintiff.[4]

    For the above reasons, the plaintiff's request for a preliminary injunction is denied. This matter is to be set down for a trial on the merits in accordance with the Court schedule.

August 23, 2016

Diana H. Horan, First Justice

---

[4]Such economic injury could have been mitigated by doing due diligence to identify all occupants and can be mitigated through a motion for use and occupancy during the pendency of this action.

EXHIBIT 4



**COMMONWEALTH OF MASSACHUSETTS**

**LAND COURT**

**DEPARTMENT OF THE TRIAL COURT**

WORCESTER, ss.

MISCELLANEOUS CASE
No. 17 MISC 000037 (GHP)

|  |  |
|---|---|
| THE BANK OF NEW YORK MELLON, Formerly Known As The Bank of New York, Trustee for The Certificate Holders of the CWABS, Inc. Asset-Backed Certificates, Series 2004-11, Plaintiff,<br><br>v.<br><br>LORI G. CAIRNS, Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**ORDER
ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

In this case, the court must decide whether an action, brought in this court following an effort to foreclose a mortgage (and subsequent to summary process and related proceedings in the Housing Court), seeking from this court a writ of entry under G.L. c. 237, is an available remedy in the Land Court given the holdings in both Attorney General v. Dime Savings Bank of New York, FSB, 413 Mass. 284 (1992) and Federal National Mortgage Ass'n v. Gordon, 91 Mass. App. Ct. 527 (2017). Plaintiff, The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificate Holders of the CWABS, Inc. Asset-Backed Certificates, Series 2004-

11 ("Plaintiff") seeks a writ of entry under G.L. c. 237 to recover residential property

("Property") known as 16 Chalmers Road, Worcester, Massachusetts.

On August 26, 2004,  Mason Astley and Christine B. Astley ("Astleys") granted a

mortgage ("Astley Mortgage"), recorded with the Worcester County Registry of Deeds

("Registry") on August 30, 2004 at Book 34483, Page 342, to Mortgage Electronic Registration

Systems, Inc. ("MERS"), acting as nominee for Full Spectrum Lending, Inc. ("Full Spectrum").

The Astley Mortgage was given by the Astleys to secure a loan in the original principal amount

of $274,564.08.  The Astley Mortgage encumbers the Property as described in a deed dated

December 1, 1975, and recorded in the Registry at Book 5847, Page 329. On August 26, 2004,

the Astleys also executed a promissory note in favor of Full Spectrum ("Astley Note").

In June of 2008, the Astleys defaulted on their mortgage loan by failing to make the June

1, 2008 payment. On July 3, 2008, Countrywide Home Loans, then the servicer of the Astley

Mortgage, mailed a notice of default and right to cure letter to the Astleys. On October 4, 2011,

MERS assigned the Astley Mortgage to the Plaintiff.  On November 8, 2011 the assignment was

recorded in the Registry at Book 48090, Page 1.

On June 8, 2015, Plaintiff made entry on the Property for purposes of foreclosure and

conducted a foreclosure sale under the power of sale. Plaintiff was the highest bidder at the sale

and is now the purported title holder. On September 14, 2015, Plaintiff executed a foreclosure

deed for the Property, which was recorded at the Registry at Book 54566, Page 271 on November

13, 2015.[1] Plaintiff also recorded the certificate of entry on November 13, 2015 at the Registry in

---

[1]The Foreclosure Deed describes the Property as follows:
   A certain lot or parcel of land with all the buildings and improvements thereon, situated on Chalmers Road, City
   of Worcester, in the Commonwealth of Massachusetts, and being shown as Lot 1 on a plan of land entitled,
   "Plan of Land in Worcester, MA owned by Mason Royden Astley & Christin B. Astley, 16 Chalmers Road,
   Worcester, MA," Scale 1 inch = 30 feet, July 29, 2002, By B&R Surveyors, P.O. Box 102 Worcester, MA
   01613, recorded with the Worcester District Registry of Deeds Plan Book 784, Plan 20 on August 1, 2002.

Book 54566, Page 270.

Using a form dated September 28, 2015, Lori G. Cairns ("Defendant") entered into a

residential lease with the Astleys, where the "rent" she was to pay was utilities payments and

maintenance of the Property.

After the mortgage foreclosure papers went to record, Plaintiff on January 27, 2016 filed

with the Worcester Division of the Housing Court Department a summary process action to

recover possession of the Property, and service was made on the Astleys. A notice to vacate was

served at the last and usual place of residence, the Property, and on all current occupants. The

form of the notice to vacate also was transmitted to Worcester Housing Court with the summary

process complaint and is in the file in that action, see The Bank of New York Mellon f/k/a the

Bank of New York as Trustee for the Certificateholders of CWABS, Inc., Asset-Backed

Certificates, Series 2004-11 v. R. Mason Astley, et als., 16H85SP000340. The Astleys had

counsel represent them at various points in the proceedings in the Housing Court. The Astleys

filed an answer with discovery requests on February 2, 2016 and asserted that they lived both at

the Property and in Vero Beach, Florida. Trial initially was set for February 11, 2016. The

Plaintiff and the Astleys agreed to continuances of that and successive dates on February 11,

2016, February 25, 2016, and March 10, 2016, but the Astleys never actually appeared on the

dates for which the continuances were agreed. After the Housing Court denied the motion for

another continuance on March 11, 2016, the Astleys were defaulted for failure to appear on that

same day.[2]  The Housing Court denied a motion filed by Christine Astley on March 23, 2016

seeking to lift the default, and the same action was taken on subsequent requests by the Astleys.

[2]The Defendant contends the continuances were agreed upon in order to allow the Plaintiff additional time to
respond properly to Astleys' discovery requests.

3

On May 4, 2016, the court entered judgment for the Plaintiff against the Astleys,

awarding possession and damages, and directed that the judgment be entered nunc pro tunc back

to April 8, 2016. Plaintiff applied for execution and it issued May 17, 2016. Motions filed on

behalf of the Astleys seeking to vacate the judgment were heard and denied by the Housing

Court. Although a notice of appeal was filed on July 5, 2016, the court directed that the claimed

appeal was untimely, and that the Astleys could not file further motions without judicial

approval. Additional motions were filed on behalf of the Astleys over that summer, including

motions directed to their efforts to proceed with appellate review. On August 2, 2016, Plaintiff

requested a new execution be issued, a request the court denied on August 3, 2016 after hearing.

The docket in the Housing Court reflects a return of execution on August 10, 2016, and an

application the following day for a new execution.

At all times relevant until April 6, 2016, the Astleys represented to the Worcester

Housing Court and the Plaintiff that they resided at the Property, but were in Florida for health

reasons. At some point (the time is not clear), Cairns submitted a copy of a

"MASSACHUSETTS LIMITED POWER OF ATTORNEY FORM," dated April 6, 2016,

purporting to be the Power of Attorney under which Cairns was acting in her dealings with the

Property and the Housing Court proceedings ("Power of Attorney form"). On the Power of

Attorney form, Cairns indicated that the Astleys resided at "1110 8th Place, City of Vero, Florida"

and that Cairns resided at "16 Chalmers Rd., City of Worcester, State of Massachusetts."

Before this time, the Astleys never had disclosed that any other person was living at the

Property. When on August 3, 2016, the Worcester Housing Court heard argument on the

Plaintiff's request for new execution to issue, Cairns disclosed that she was the only person

4

residing at the Property. According to Cairns, the Astleys placed her in possession of the Property in September, 2015—after the Astleys' default in June 2008, after the foreclosure sale, and after the execution of the foreclosure deed, but before the recording of the foreclosure deed and related papers in November, 2015 and before the summary process action began on January 27, 2016.

On August 4, 2016, Plaintiff brought an action against Cairns in the Worcester Housing Court to recover possession of the Property. Bank of New York Mellon v. Cairns, 16H85-CV-00735. In that case, Cairns acknowledged her occupancy at the Property and provided her lease agreement with the Astleys.[3] The Worcester Housing Court, after holding a hearing, entered judgment and granted an injunction on August 16, 2016, which Defendant Cairns brought before a single justice of the Appeals Court for relief. On September 21, 2016, the single justice stayed the execution, but left the injunction in place. On April 24, 2017, the Worcester Housing Court allowed Plaintiff's motion, filed April 7, 2017, to vacate the judgment against the Defendant, as well as Plaintiff's notice of voluntary dismissal of the action there; this was after Plaintiff had filed its action in this court.

Plaintiff filed its complaint in this court on January 25, 2017, seeking a writ of entry under G.L. c. 237 to recover the Property. The summons was returned to the court on February 6, 2017 showing service on the sole Defendant, Lori G. Cairns. On March 13, 2017, Plaintiff filed a request for default pursuant to Mass. R. Civ. P. 55(a), and, on March 15, 2017, Plaintiff followed with a request for default judgment under Mass. R. Civ. P 55(b)(1). An initial Case Management Conference was held on March 27, 2017. Defendant appeared at the hearing, and the court

---

[3] Defendant maintains that at the time her lease was executed in September, 2015, the right of possession of Astleys was superior to Plaintiff's, as the foreclosure deed was not recorded with the Worcester Registry of Deeds until November 13, 2015 and Plaintiff did not file a complaint for summary process until January 27, 2016.

allowed her to avoid default at the time. Defendant's motion for postponement of the conference

to seek counsel was denied (Piper, J.) and Defendant indicated her intent to obtain counsel

promptly.

On June 15, 2017, counsel for Defendant did appear, and the Defendant filed a motion to

answer late and a proposed answer. Plaintiff on July 10, 2017 filed an opposition to Defendant's

motion to file answer late. The court (Piper, J.) held a hearing on July 12, 2017 on the motion to

file late answer and allowed the motion.[4] The court did not schedule a hearing on Plaintiff's

motion for summary judgment, filed June 30, 2017, because Defendant's counsel recently had

appeared in the case. At the hearing, the court also directed the parties to meet and submit to the

court a joint, written schedule for discovery, to close on September 29, 2017.[5]

On November 20, 2017, a stipulation to extend the dispositive motion deadline was filed

and the court (Piper, J.) allowed the request on December 1, 2017. The Plaintiff and Defendant

both filed summary judgment motions on December 4, 2017. Both Plaintiff and Defendant

---

[4] The court's July 12, 2017 rulings on motion to file late answer were reflected on the docket as follows:
Hearing held on Defendant's Motion to File Late Answer. Attorneys Weinrich, Russell, and Creed appeared.
Following hearing, acknowledging the policy favoring courts reaching the merits of a case, and in light of counsel
for defendant's recent arrival in the case, the court ALLOWED defendant's motion to file a late answer over the
objection of plaintiff. Defendant's answer accepted for filing this day as previously submitted. Plaintiff's counsel
accepts service as of this day. No hearing will be scheduled for the summary judgment motion filed by plaintiff.
While counsel for plaintiff reported willingness to recast this summary judgment motion as one which rests only
on defendant's standing and would not require resolution by the court of the state of the title coming out of
foreclosure, the court concludes that, should such a motion fail, the case would then require the court to
adjudicate the state of the post-foreclosure title, a matter about which defendant seeks discovery. Parties to
caucus and submit to the court a joint, written schedule for discovery, specifying carefully limited discovery truly
needed to take place, and with discovery to close on or before Sept. 29, 2017. By close of discovery, parties to
submit joint report stating that discovery is complete, detailing what discovery has been taken, and which either
(1) reports intent to file dispositive motion(s), indicates who first will file, and as to what issue(s); the first such
motion to be filed thirty (30) days after the close of discovery and no later than Oct. 30, 2017, Land Court Rule 4
to govern content of that filing and timing and content of subsequent filings; or (2) if no party intends to file
dispositive motion, parties in their joint report to request pretrial conference. (Piper, J.)

[5]

proceeded to file oppositions to the other's motion for summary judgment, as well as reply briefs

to the oppositions they received. On February 20, 2018, Plaintiff filed a notice of intent to

proceed in light of the Defendant's cross-motion for summary judgment. On February 27, 2018,

the Defendant filed an affidavit of Jean Mitchell ("Mitchell affidavit"), purportedly a handwriting

expert, regarding the Astley Note Plaintiff produced during discovery. Plaintiff filed a motion to

strike the Mitchell affidavit, and, in the alternative, a motion for leave to present rebutting

affidavits.

The court (Piper, J.) held a hearing on February 27, 2018 on the cross-motions for

summary judgment and the motion to strike the Mitchell affidavit. After argument, the court

deferred ruling on the motions for summary judgment and invited the parties to submit

supplemental memoranda to address issues which arose during the hearing but were not

adequately addressed in the parties previous filings: (1) whether in this action, brought post-

foreclosure and subsequent to summary process and related proceedings in the Housing Court an

action, such as this one, for writ of entry under G.L. c. 237, is an available remedy in the Land

Court; (2) whether the holding of Attorney General v. Dime Savings Bank of New York, FSB,

413 Mass. 284 (1992) and Federal National Mortgage Ass'n v. Gordon, 91 Mass. App. Ct. 527

(2017) precludes or limits the court from hearing or granting the requested relief in this case; (3)

whether the line of cases detailing certain exceptions to the holding in Treglia v. MacDonald, 430

Mass. 237 (1999) (that a default judgment does not have preclusive effect in subsequent

litigation between the same parties or those with whom they are in privity) apply to the earlier

Housing Court summary process default judgment. The court (Piper, J.) did not rule on the

motion to strike, but instead allowed Plaintiff, when filing its supplemental memorandum, to

7

include an affidavit to respond to the Mitchell affidavit.[6]

On April 2, 2018, Plaintiff filed an emergency motion to enlarge time to file opposing

affidavit and the court (Piper, J.) granted the motion. On the same day, the Plaintiff also filed its

supplemental brief in response to the questions from the court, with a supplemental appendix. On

April 5, 2018, Plaintiff filed a rebuttal affidavit of attorney Michael R. Maloney, who was asked

to review the promissory note at issue and give his opinion as to whether it was the original note

or not. Defendant filed a reply to Plaintiff's supplemental brief, with a supplemental appendix,

on May 8, 2018.

* * *

Summary judgment is appropriate under Mass R. Civ. P. 56 (c), as amended, 436 Mass.

1404 (2002), when there are no genuine issues of material fact and the party bringing the motion

is entitled to judgment as a matter of law. LeBlanc v. Logan Hilton Joint Venture, 463 Mass.

316, 325-326 (2012). Each party moving for summary judgment must show that there are no

genuine issues of material fact in dispute, and that the moving party is as a legal matter entitled to

have judgment enter in its favor. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002).

---

[6]The court's February 27, 2018 rulings on summary judgment were reflected on the docket as follows:
 Hearing held on Motions for Summary Judgment and Motion to Strike Defendant's Affidavit. Attorneys
Creed, Weinrich, and Russell appeared. After argument, the court deferred ruling on the motions for summary
judgment and invited parties to submit supplemental memoranda which counsel undertook to do. The supplemental
briefs are to address: (1) whether in this action, brought post-foreclosure and subsequent to summary process and
related proceedings in the Housing Court Department an action, such as this one, for writ of entry under G.L. c. 237,
is an available remedy in the Land Court; (2) whether the holding of Attorney General v. Dime Sav. Bank of New
York, FSB, 413 Mass. 284 (1992) and Federal Nat'l Mortgage Ass'n v. Gordon, 91 Mass. App. Ct. 527 (2017)
precludes or limits the court for hearing of granting relief in this case; and (2) whether the line of cases detailing
certain exceptions to the holding in Treglia v. MacDonald, 430 Mass. 237 (1999) (that a default judgment does not
have preclusive effect in subsequent litigation between the same parties or their privities) apply to the earlier
Housing Court summary process default judgment entered on May 17, 2016. Plaintiff to serve and file by April 2,
2018; defendant to serve and file a response by May 8, 2018. Upon receipt, court to determine if further hearing
required prior to ruling on the pending summary judgment motions. No ruling made on the motion to strike; rather,
plaintiff may, in the supplemental memorandum, include a rebuttal affidavit to Ms. Mitchell's affidavit. (Piper, J.)

The pivotal issue in this case requires the court to determine the proper cause or causes of action which must or may be brought to recover possession from a holdover tenant occupying premises following a mortgage foreclosure, in a case in which there has been brought already a summary process action in the Housing Court Department of the Trial Court. It is helpful to review the competing possible causes of action concerning recovery of possession of property, and their statutory underpinnings.

A writ of entry action, brought pursuant to G.L. c. 237, is an action to recover estates of freehold in fee simple, fee tail or for life. Writ of entry actions involve not just proving superior possession, but superior title. Buttrick v. Tilton, 141 Mass. 93, 96 (1886). To do so, the plaintiff must show that he or she is entitled to the land and has a right of entry onto that land. Olson v. Carpenter, 296 Mass. 120, 124 (1936). The plaintiff need not prove actual entry, but the plaintiff can only maintain the action if he or she possessed a right of entry at the time the action began. G.L. c. 237, § 4; see e.g., Austin v. Cambridgeport Parish, 38 Mass. 215, 224 (1838) (finding that even though plaintiff did not prove actual entry, plaintiff was still able to maintain writ of entry action because plaintiff established legal title to the premises in her writ). The plaintiff must allege disseisin by the defendant, and prove that he is entitled to the property and that he or she had a right of entry on the day when the action was commenced. G.L. c. 237, § 4. If the plaintiff is successful, he or she will prevail in the writ of entry action, unless the defendant is able to prove a superior title. Olson, 296 Mass. at 124. If the plaintiff does prevail, he or she receives an execution for possession, which then is recorded in the registry of deeds for the county or district where the property lies, followed by the return on the execution to the Recorder's office. G.L. c. 237, § 42.

Massachusetts General Laws Chapter 184, §18 forbids forcible entry and sets out the
proper method for a person attempting to recover possession of land or tenements. The statute
states that the only appropriate procedures for recovering possession are summary process
actions, brought pursuant to G.L. c. 239, and "such other proceedings authorized by law." G.L. c.
184, § 18. The statute does not elaborate on the type of actions that fall into the category of "such
other proceedings authorized by law."

A summary process action, brought pursuant to G.L. c. 239, is an action to recover
possession of real estate. Summary process actions usually are brought to recover possession in
the context of a landlord-tenant relationship, but under the statute there are other scenarios where
summary process is appropriate; the purchaser of premises following a mortgage foreclosure
under the power of sale also is entitled to bring an action for summary process. G.L. c. 239, § 1.

Summary process actions are intended to operate on an accelerated track, because the
legislature realized the importance of expediting questions of possessory rights. See generally
Commentary to Rule 1 of the Uniform Summary Process Rules (2018) (dating to 1980); Qureshi
v. Fiske Capital Mgt., Inc., 59 Mass. App. Ct. 463, 469 (2003). The plaintiff in a summary
process action is not required to prove superior title to the property, but only that he or she has a
superior right to possess the premises. King v. Dickerman, 77 Mass. 480, 480-481 (1858); see
also Bank of New York v. Bailey, 460 Mass. 327, 333 (2011) (explaining that demandants in
summary process cases must establish right of possession). Before eviction can occur, the
defendants must have an opportunity to appear in court, where they are able to assert defenses
and counterclaims. Kargman v. Dustin, 5 Mass. App. Ct. 101, 105 (1977). If the plaintiff prevails
in a summary process case, he or she obtains an execution for possession. G.L. c. 239, § 3. The

10

Supreme Judicial Court in <u>Bank of New York</u> v. <u>Bailey,</u> 460 Mass. at 328, held that the Housing Court could hear title challenges as a defense in summary process actions.

Massachusetts General Laws chapter 185, § 1 lists most, but not all, of the actions over which the Land Court has jurisdiction. Because the Land Court is a court of limited jurisdiction, it only may hear cases over which it either has exclusive or concurrent jurisdiction. Those include within the Land Court's exclusive original jurisdiction writ of entry actions: "Actions to recover freehold estates under chapter two hundred and thirty-seven." G.L. c. 185, § 1(c). The Land Court, however, does not possess jurisdiction over summary process actions. Those cases only may be heard in the Superior Court, District Court, Boston Municipal Court, and Housing Court Departments of the Trial Court. Rule 1 of the Uniform Summary Process Rules (2018).

The issue for the court to decide is whether Plaintiff properly may bring a writ of entry action pursuant to G.L. c. 237 in this court, post-foreclosure and subsequent to summary process proceedings in the Housing Court. Plaintiff argues that writ of entry actions are included among the "such other proceedings authorized by law" referenced in G.L. c. 184, § 18, which reads "[n]o person shall attempt to recover possession of land or tenements in any manner other than through an action brought pursuant to chapter two hundred and thirty-nine or such other proceedings authorized by law." Defendant urges the court the court to conclude that a writ of entry does not lie on the facts of this case, that summary process is the route Plaintiff must follow, and so to dismiss this case for lack of subject matter jurisdiction, relying on the holdings of both <u>Attorney General</u> v. <u>Dime Savings Bank of New York, FSB,</u> 413 Mass. 284 (1992) and <u>Federal National Mortgage Ass'n</u> v. <u>Gordon,</u> 91 Mass. App. Ct. 527 (2017).

In <u>Attorney General</u> v. <u>Dime Savings Bank of New York, FSB,</u> 413 Mass. 284 (1992), the

11

Attorney General of Massachusetts brought an action for declaratory and injunctive relief against

The Dime Savings Bank of New York, FSB ("Dime Savings"). Dime Savings had brought

trespass actions against foreclosed mortgagors and tenants in an attempt to eject them from the

mortgaged properties. Dime Savings, 413 Mass. at 284. Dime Savings was the mortgagee for

each of the premises and after default, Dime Savings recorded memoranda of entry, conducted

foreclosure sales, and purchased the properties at the foreclosure sales, thereby gaining title free

of the mortgagors' rights of redemption. Id. at 286. In every case, either the mortgagor or a tenant

of the mortgagor was in actual possession and occupied the premises prior to and at the time of

foreclosure. Id. Post-foreclosure, Dime Savings sent notices to the occupants of the premises to

demand possession. Id. When the occupants refused to vacate the premises, Dime Savings

brought actions for trespass in the Superior Court Department against the occupants. Id. The

Attorney General sought a declaration from the court that Dime Savings' method of ejectment

violated G.L. c. 184, § 18, as what Dime Savings had commenced was not a summary process

action under G.L. c. 239 nor "such other proceedings authorized by law." Id. at 284-285. The

Attorney General additionally requested that the court enjoin Dime Savings from engaging in

such actions in the future. Id.

Holding that trespass actions did not fall into the category of other proceedings authorized

by law and therefore were not an appropriate method to obtain possession of the foreclosed

premises from a holdover tenant or a mortgagor, the SJC ruled that Dime Savings' practice

violated G.L. c. 184, § 18. Id. at 287-288 ("[A] mortgagee who forecloses on real property by

sale may not bring a trespass action against a holdover tenant or mortgagor in actual possession

of the foreclosed premises"). The Dime Savings court opined that summary process was the

appropriate action for immediate possession of foreclosed property. Id. at 290-291 ("Dime

[Savings] . . . asks the courts to 'fashion a remedy' to fit [Dime Saving's] right to immediate

possession of the properties on which it has foreclosed. There is no need. The Legislature already

has fashioned a remedy; it is the summary process statute.").

    The Appeals Court significantly extended the holding of Dime Savings in Federal

National Mortgage Ass'n v. Gordon, 91 Mass. App. Ct. 527 (2017). In Gordon, Wells Fargo

Bank, N.A. ("Wells Fargo") was the original mortgagee, and after the mortgagors defaulted,

Wells Fargo conducted a foreclosure auction. 91 Mass. App. Ct. at 528. Wells Fargo submitted

the highest bid at the auction, and then proceeded to execute an assignment of the bid to the

Federal National Mortgage Association ("FNMA").  Wells Fargo delivered as well to FNMA a

foreclosure deed of the property, which then was recorded. Id. Not long after, FNMA brought a

summary process action against the mortgagors in the Boston Housing Court to obtain possession

of the foreclosed property. Id. at 528-529. About two years later, one of the foreclosed

mortgagors entered into a lease agreement with two tenants for a three year period. Id. at 529.

This situation was distinct from that in Dime Savings because the tenants in Gordon did not enter

into a lease agreement with the mortgagor until after both the date of foreclosure and the date on

which FMNA began a summary process action against the mortgagors. Dime Savings. 413 Mass.

at 286; Gordon, 91 Mass. App. Ct. at 528-529. FNMA eventually learned of the lease

relationship and that the tenants had moved into the property. Gordon, 91 Mass. App. Ct. at 530.

FMNA proceeded to file a complaint against the tenants which included both a trespass action

and a request for injunctive relief. Id. This action was separate from the summary process case

that still was pending in the Boston Housing Court. Id.

13

In Gordon, the Appeals Court ruled that the holding of Dime Savings applied. Id. at 534. The court reasoned that it was illogical to expect that lessees would check the status of their landlord's title before entering into a lease relationship, and therefore the tenants here should be treated like the holdover tenants in Dime Savings. Id. at 534-535 ("To treat a purported tenant such as Gordon differently from the bona fide tenants in Dime Savings could only be justified by applying some expectation that residential renters will take steps to determine the validity of their landlord's title prior to entering a lease. We know of no basis for any such expectation.") The Appeals Court also noted that at the time the landlord-tenant relationship began, the mortgagor in this case was defending actively against FNMA's summary process action and lawfully occupying the premises. Id. at 535.

Here, the Plaintiff would have this court read narrowly the holdings of both Dime Savings and Gordon, to have them stand for the proposition that the SJC in Dime Savings only barred trespass actions against post-foreclosure mortgagors. Plaintiff contends that those decisions read together mean that trespass actions are improper only against holdover tenants, and nothing more. Plaintiff provides no case law that would require or in any principled way support such a strict reading of these two cases. (It is noteworthy that the court in Gordon expanded upon, rather than read narrowly, Dime Savings.)

The court sees no compelling reason to understand the holdings of Dime Savings and Gordon to be as narrow as Plaintiff urges. For the writ of entry cause of action to lie in this case, Plaintiff would need to show that the writ of entry action is different in some material way from the trespass actions barred in Dime Savings and Gordon. Plaintiff is unable, however, to direct the court to any case law that distinguishes a writ of entry from a trespass action in a meaningful

14

Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 46 of 156

way when the two causes of action are compared, based on the proof required or the remedies to be secured.

Plaintiff also argues that because title purportedly is at issue in this case, a writ of entry is the proper action. Plaintiff cites to several writ of entry cases where title was at issue, but again, none make a meaningful distinction between a writ of entry and a trespass. See, e.g., Woodside v. Ridgeway, 126 Mass. 292 (1879) (holding that a mortgagee or purchaser that has never had possession of the premises may not maintain a summary process action); Boyle v. Boyle, 121 Mass. 85 (1876) (holding that summary process may only be used when plaintiff has had actual possession, as opposed to a right of possession).

In fact, Bailey, which Plaintiff cites in a footnote, directly addresses Plaintiff's concern about trying title in a summary process case. Bank of New York v. Bailey, 460 Mass. 327 (2011). In Bank of New York v. Bailey, the plaintiff Bank of New York ("BNY") gained title to the defendant's home through a mortgage foreclosure sale. Id. at 328. BNY filed a summary process action against the defendant to recover possession after the defendant refused to vacate the property subsequent to receiving a notice of BNY's intention to terminate the defendant's occupancy. Id. at 329. The defendant wished to raise a title challenge in the summary process action, arguing that BNY's title was defective because there was not adequate notice of the mortgage foreclosure sale. Id. at 328. The judge in the Housing Court held that the Housing Court did not have jurisdiction over title challenges, and the defendant appealed. Id. The SJC held that the Housing Court did have jurisdiction over title challenges brought as defenses during summary process eviction actions post-foreclosure. Id. at 333. The SJC stated that requiring title challenges to be tried in a separate court would run counter to the goal of resolving summary

15

process cases in an expedited fashion. Id. at 334 ("Our conclusion that the Housing Court may

consider the defense promotes the legislative goal of "just, speedy, and inexpensive" resolution

of summary process cases . . . [avoiding] the type of unnecessary delay and inefficiency that the

Legislature intended to eliminate when it reorganized the trial courts in the Commonwealth").

Bailey is instructive here. Plaintiff argues that because it foresaw title challenges

occurring in the litigation to eject the Defendant from the foreclosed property, a writ of entry was

and is the proper cause of action. Yet in Bailey, BNY, the plaintiff seeking to recover possession,

also obtained title through a foreclosure sale. Id. at 328. The defendant in Bailey was the party

seeking to raise title as an issue during the litigation, whereas Plaintiff is the one doing so in our

case, but such a distinction is immaterial. What is not immaterial though, is that the court was

clear when it held that the Housing Court had subject matter jurisdiction over title challenges,

particularly within the post-foreclosure summary process context. Id. at 333.

Plaintiff also is unable to cite to any case law post-Dime Savings and Gordon which

holds that a case for writ of entry is an appropriate action to use to obtain possession post-

foreclosure. Plaintiff is unsuccessful in distinguishing Deutsche Bank National Trust Co. v.

Gabriel, 81 Mass. App. Ct. 564 (2012), a case Defendant relies upon in her supplemental

briefing. In Gabriel, the Appeals Court stated that summary process was the appropriate and

required action to recover possession from defendants occupying the premises post-foreclosure

sale. Id. at 565-566 ("Deutsche Bank, having acquired the property after a foreclosure sale, was

both required and entitled to use summary process, G.L. c. 239, § 1, to recover possession from

the defendants, who continued to occupy the premises after the foreclosure").

The court views the facts in this matter as substantially close to those in the Dime Savings

16

and Gordon cases. Like the homeowners in Dime Savings and Gordon, the Astleys defaulted on

their mortgage by failing to make required loan payments, leading to a foreclosure sale. See

Dime Savings, 413 Mass. at 286; Gordon, 91 Mass. App. Ct. at 528. Here, Plaintiff purportedly

obtained title through foreclosure sale, as the defendants in Dime Savings and Gordon did. Id.

Plaintiff is seeking to obtain possession through the ejectment of a tenant, as was the case in

Dime Savings and Gordon. Dime Savings, 413 Mass. at 286; Gordon, 91 Mass. App. Ct. at 528-

529. Additionally, the Defendant here is in actual possession of the premises, just as the

defendants in Dime Savings and Gordon were. See Dime Savings, 413 Mass. at 286; Gordon, 91

Mass. App. Ct. at 535. Defendant entered into the lease with the Astleys soon after Plaintiff

executed a foreclosure deed for the premises, just as the tenant in Gordon entered into a lease

subsequent to the date of foreclosure on the property. Gordon, 91 Mass. App. Ct. at 529.

Defendant's possessory claim is presumably stronger than that of the defendants in Gordon, as

Defendant's lease with the Astleys predates the summary process action in the Worcester

Housing Court and the defendants in Gordon entered into the lease post-foreclosure and with the

summary process case underway. Id.

The court concludes that, on the undisputed facts of this case, and given the procedural

posture of the parties' prior litigation, this writ of entry action is not a proper cause of action by

which Plaintiff may recover possession. What is required is summary process, a cause of action

lying outside the Land Court's jurisdiction. This conclusion hardly leaves Plaintiff without an

effective way to obtain possession judicially. There is no basis to say that Plaintiff can not

rejuvenate its efforts to secure possession in a summary process action against Defendant,

presumably in the Worcester Housing Court. Plaintiff, if entitled in the summary process court to

17

prevail on the merits, can secure a meaningful judgment vindicating Plaintiff's right to

possession of the disputed property. A summary process judgment provides Plaintiff the full

measure of relief it would secure in the writ of entry case which Plaintiff cannot move forward

with in the Land Court.[7]

Defendant's motion for summary judgment is ALLOWED and Plaintiff's motion for

summary judgment is DENIED. A judgment will enter dismissing the complaint.

By the Court. (Piper, J.)

Attest:

Deborah J. Patterson
Recorder

Dated: October 5, 2018

---

[7] Plaintiff may be heard to argue that proceeding further in the summary process court will put Plaintiff at a disadvantage because, by statute, there are time limits within which an execution for possession in summary process cases may issue, and within which such an execution must be made returnable. See G.L. c. 235, s. 23: "Executions for possession of premises rented or leased for dwelling purposes in actions pursuant to chapter two hundred and thirty-nine shall not be issued later than three months following the date of judgment ... . Such executions shall be made returnable within three months after the date of issuance and shall state the date of issuance and the return date. No sheriff, constable, officer, or other person shall serve or levy upon any such execution for possession later than three months following the date of the issuance of the execution." This contention is unpersuasive. These statutory time limits do restrict the opportunity of parties such as Plaintiff to recover possession in summary process cases where those parties have prevailed. But these time limits are reflective of the carefully-balanced procedure the legislature has enacted when plaintiffs in summary process cases move to recover possession, including when those plaintiffs hold their superior right of possession as a result of a mortgage foreclosure sale. The controls and limits the statute imposes may in cases such as this one require a return trip to the summary process court, and even the reinitiation of a summary process case under certain circumstances, if the right to execute on a judgment has expired under G.L. c. 235, s. 23. But that is a reality flowing from the legislative choice to sunset certain executions in summary process cases. Plaintiff ought not have the chance to evade these statutory provisions by abandoning its summary process action, and then going ahead in this court to obtain a writ of entry and related orders giving the Plaintiff possession free of the Defendant's occupancy. Use of the writ of entry in such a case would frustrate the choice the legislature has made on the longevity of summary process executions.

18

NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-441                                          Appeals Court

    FEDERAL NATIONAL MORTGAGE ASSOCIATION  vs.  HEATHER GORDON
                          & another.[1]


                        No. 15-P-441.

        Suffolk.     March 8, 2016. - May 17, 2017.

        Present:  Hanlon, Sullivan, & Massing, JJ.


Trespass.  Real Property, Trespass, Mortgage, Lease.  Mortgage,
    Foreclosure.  Landlord and Tenant, Control of premises.
    Housing Court, Jurisdiction.  Jurisdiction, Housing Court.
    Summary Process.  Practice, Civil, Summary judgment,
    Summary process.


    Civil action commenced in the City of Boston Division of
the Housing Court Department on June 24, 2013.

    The case was heard by MaryLou Muirhead, J., on a motion for
summary judgment.


    Thomas B. Vawter for the defendants.
    Danielle C. Gaudreau (Thomas J. Santolucito also present)
for the plaintiff.


    HANLON, J.  The defendants in this trespass action, Heather

Gordon and her granddaughter, Kaire Holman, challenge the

_____

    [1] Kaire Holman.

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 51 of 156
Document      Page 51 of 156

2

validity of a judgment for possession entered by the Housing
Court in favor of the plaintiff, the Federal National Mortgage
Association (Fannie Mae), on its motion for summary judgment.
Fannie Mae claims ownership, through foreclosure, of the
residential condominium at issue, known as Unit 2 at 7 Valentine
Street, in the Roxbury section of Boston (the property).  Gordon
claims that she and Holman occupy the property pursuant to a
lease from Carolyn Grant, who held record title to the
condominium as a joint tenant with Gilbert R. Emery prior to the
foreclosure.  The lease on which Gordon and Holman rely,
however, is dated after both (i) the date of the foreclosure,
and (ii) the date on which Fannie Mae began a summary process
action against Emery, Grant, and another occupant[2] to obtain
possession of the property.

   When Fannie Mae learned that Gordon and others had moved
into the property as ostensible lessees, Fannie Mae brought a
new action (separate from the summary process case) for common
law trespass, which is the case now before us.[3]

   After review, we reverse the final judgment, holding as
follows:  (i) the Housing Court has jurisdiction pursuant to

_____

   [2] Jeffrey Grant.  Hereinafter, we refer to Caroline Grant as
"Grant," and Caroline and Jeffrey Grant collectively as "the
Grants."

   [3] Hereinafter, we refer to the purported tenants,
individually and collectively, as "Gordon."

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Document      Page 52 of 156
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 52 of 156

3

G. L. c. 185C, § 3, to hear trespass claims; (ii) the teaching

of Attorney Gen. v. Dime Sav. Bank of N.Y., FSB, 413 Mass. 284,

288 (1992) (Dime Savings), with respect to whether G. L. c. 184,

§ 18, bars trespass actions by postforeclosure owners against

tenants with actual possession, applies with equal force in the

circumstances of this case; and (iii) the summary judgment

record does not establish Fannie Mae's actual or constructive

possession of the subject property, a prerequisite for a

trespass claim.

Background.  The following facts are taken from the record

and, essentially, are undisputed.  In 2007, Emery granted a

mortgage on the property to Wells Fargo Bank, N.A. (Wells Fargo)

to secure a loan.  On or about August 15, 2007, Emery deeded his

interest in the property to himself and Grant as joint tenants

with the right of survivorship.

By July, 2010, Emery was in arrears on his loan payments.

Acting pursuant to the statutory power of sale contained in its

mortgage, Wells Fargo[4] conducted a foreclosure auction on August

27, 2010, at which it submitted the high bid.  Thereafter, Wells

Fargo executed an assignment of its bid to Fannie Mae, and

executed and recorded a foreclosure deed of the property to

Fannie Mae.  Shortly thereafter, Fannie Mae filed a summary

---

[4] Wells Fargo is not a party to this case.

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 53 of 156
Document        Page 53 of 156

4

process action in Boston Housing Court against Emery and the
Grants.

Almost two years later, on July 27, 2012, Grant and Gordon
executed a document entitled "Residential Lease." The purported
lease names Gordon as "Tenant" and Grant as "Landlord" and
provides for a three-year rental term beginning on August 1,
2012, and concluding on August 1, 2015, at a rental rate of
$1,300 per month.[5] It appears from the record that Gordon began
paying rent to Grant in July, 2012.[6] Gordon's affidavit states
that the March and April, 2013, rent payments were discounted
because Grant was "behind thousands of dollars in her utility
bills," which had to be paid before the utilities could be
placed in Gordon's name.[7] Gordon's affidavit further states that
she was to move into the unit in August of 2012, but that there
was a delay in Grant's moving out, and Gordon did not actually

---

[5] The lease also lists three children, including Holman, as
having Grant's express permission to occupy the unit as part of
the tenancy.

[6] Specifically, Gordon's uncontroverted affidavit states
that she paid a total of $3,900 to Grant from July through
September, 2012, for first and last month's rent and a security
deposit; $1,300 on October 5, 2012, for rent for an unspecified
month; $1,300 in rent for January and February, 2013; and $600
"in rent in March and April 2013."

[7] The record is silent as to whether Grant accepted rent
after April, 2013; however, it is undisputed that she accepted
rent from Gordon for several months after Grant moved out of the
property in December, 2012 (see note 6, supra).

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 54 of 156
Document      Page 54 of 156

5

move in until December 16, 2012, the same day Grant moved to
Florida.

The Housing Court docket indicates that, on or about
October 1, 2012 -- after execution of the lease on which Gordon
relies, but before Grant left the property -- one or more
parties to Fannie Mae's summary process action reported that
matter settled, and the Housing Court issued a sixty-day nisi
order.  The record includes an unsigned "Agreement for Judgment"
for possession stating that Emery and the Grants would move out
of the property by December 15, 2012, and that no other
occupants would reside therein.  However, after the report of a
settlement to the Housing Court, a disagreement apparently arose
between Fannie Mae and the defendants in the summary process
action about whether they had actually perfected a deal.
Consequently, a stipulation of dismissal was never filed in that
matter, and the summary process action retained "active" status
on the Housing Court's docket throughout the course of the
proceedings in the present case.[8]

---

[8] Although the nisi order in the summary process action
stated that all the claims and counterclaims in the action would
be dismissed sixty days from the date of the order "in the event
the parties fail to file a stipulation of dismissal," the docket
of that case, reproduced in the record appendix, does not show
that judgment for possession for Fannie Mae was ever entered.
Rather, the docket shows active litigation in the matter at
least into May of 2013.

Meanwhile, on December 16, 2012, Grant moved out of the property and, on that same date, Gordon moved in.[9] At some time thereafter, Fannie Mae learned that Gordon had moved in to the property, and, on or about June 24, 2013, Fannie Mae began the instant action in the Boston Housing Court, filing a complaint against Gordon in two counts, for trespass and injunctive relief, respectively. After amending the complaint to name other occupants as defendants, Fannie Mae then brought a motion for summary judgment on June 27, 2014.

The motion judge allowed the motion on or about October 21, 2014. In so doing, the judge focused on the question whether Fannie Mae had obtained possession of the property, a prerequisite for maintaining a common-law trespass action. See Dime Savings, 413 Mass. at 288 ("An action of trespass, being a possessory action, cannot be maintained, unless the plaintiff had the actual or constructive possession of the property trespassed upon at the time of the trespass"). The judge determined that Fannie Mae's constructive possession of the property was established during the period of time, however short, between when Grant moved out of the property and Gordon moved in.

---

[9] There appears to be some dispute about this timing reflected in the record, but, for purposes of this appeal, we view the facts in the light most favorable to the nonmoving party, Gordon.

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 56 of 156
                    Document      Page 56 of 156

7

The judge ordered that "judgment . . . enter for the Plaintiff as prayed for in the complaint." In a further order dated December 31, 2014, she dismissed Fannie Mae's claim for money damages and ordered that "final judgment for possession shall enter and the execution shall issue in the usual course."[10]

Gordon appeals, arguing that the Housing Court's judgment should be vacated on the following grounds: (i) the Housing Court lacks subject matter jurisdiction pursuant to G. L. c. 185C, § 3, over a common-law trespass claim; (ii) a trespass claim is unavailable to Fannie Mae here because it is barred by G. L. c. 184, § 18; and (iii) Fannie Mae failed substantively to demonstrate its entitlement to judgment because it did not show that it ever obtained the requisite actual or constructive possession of the property necessary to prevail on a trespass claim.

Discussion. 1. Jurisdiction of the Housing Court over trespass actions. We first consider the defendants' claim that the Housing Court is without subject matter jurisdiction to hear Fannie Mae's trespass claim. Although, as Fannie Mae correctly observes, the subject matter jurisdiction of the Housing Court

---

[10] The Housing Court's final judgment entered on January 7, 2015. Notwithstanding that this case was not commenced or treated as a summary process action, the judgment issued by the court is entitled "Judgment of Summary Process for Plaintiff." The docket reflects that execution issued as of January 20, 2015, but no copy of the execution appears in the record.

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 57 of 156
Document      Page 57 of 156

8

to hear its trespass claim was not raised by the defendants in
the proceedings below, a lack of subject matter jurisdiction
cannot be waived and must be considered by the court at any time
-- even on appeal, and even sua sponte.[11]  See Cohen v. Cohen,
470 Mass. 708, 713 (2015); Abate v. Fremont Inv. & Loan, 470
Mass. 821, 828 (2015).  See also Chestnut-Adams Ltd. Partnership
v. Bricklayers & Masons Trust Funds of Boston, 415 Mass. 87, 90
(1993); Worcester Heritage Soc., Inc. v. Trussell, 31 Mass. App.
Ct. 343, 347 n.3 (1991) ("Although neither party raises any
question concerning the jurisdiction of the Housing Court, we
have considered the question, as we must").

The Housing Court's general subject matter jurisdiction is
described in G. L. c. 185C, § 3, which has been called
"imprecise and more than a little ungainly."  Murphy v. Miller,
75 Mass. App. Ct. 210, 214 (2009).  The statute was inserted
into the General Laws by St. 1978, c. 478, § 92, and the Housing
Court's jurisdictional reach was greatly expanded through a
series of amendments, beginning with St. 1979, c. 72, § 3.  See
Tedford v. Massachusetts Hous. Fin. Agency, 390 Mass. 688, 693
n.7 (1984); Patry v. Liberty Mobilhome Sales, Inc., 15 Mass.
App. Ct. 701, 704-705 (1983).  Nonetheless, the Housing Court

---

[11] Fannie Mae acknowledges that the claim of a lack of
subject matter jurisdiction may be raised for the first time on
appeal.

"remains a court of limited jurisdiction with its [primary]
expertise in the area of housing." LeBlanc v. Sherwin Williams
Co., 406 Mass. 888, 897 (1990).

In its current form, the Housing Court's jurisdiction
includes matters brought "under the provisions of common law and
of equity and any other general or special law, ordinance, by-
law, rule or regulation as is concerned directly or indirectly
with the health, safety, or welfare, of any occupant of any
place used, or intended for use, as a place of human habitation
and the possession, condition, or use of any particular housing
accommodations or household goods or services situated therein
or furnished in connection there with." G. L. c. 185C, § 3, as
appearing in St. 1987, c. 755, § 3.

The Housing Court also has jurisdiction over "all housing
problems, including all contract and tort actions which affect
the health, safety and welfare of the occupants or owners
thereof, arising within and affecting residents in the city of
Boston, in the case of that division, . . . and shall also have
jurisdiction in equity, concurrent with the divisions of the
district court department, the divisions of the probate and
family court department, the superior court department, the
appeals court, and the supreme judicial court, of all cases and
matters so arising." Ibid.

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 59 of 156
Document     Page 59 of 156

10

The defendants argue that Fannie Mae's case is not
concerned with housing, but rather with the question whether
they are trespassers on the property, and, thus, the case falls
outside the jurisdiction of the Housing Court.  We disagree.
The Housing Court's jurisdiction broadly encompasses "all
contract and tort actions which affect the health, safety and
welfare of the occupants or owners thereof."  G. L. c. 185C,
§ 3.  Although there appears to be no appellate authority for
the specific proposition that this language includes trespass
claims concerning residential real estate (and the parties have
cited none), we have no doubt that a trespass on residential
land would typically affect the "health, safety and welfare of
the occupants or owners thereof."  G. L. c. 185C, § 3.  The fact
that the Housing Court is particularly concerned with claims
regarding the physical condition of housing, see Ryan v. Kehoe,
408 Mass. 636, 640 (1990); Murphy, 75 Mass. App. Ct. at 215,
does not limit the scope of matters that could affect the
health, safety, and welfare of owners and occupants to only
those concerning the habitability or safety of the physical
premises.  The presence of trespassers in residential housing
will, in many cases, affect the health, safety, and welfare of
an owner or occupant.  As we are satisfied that the Housing
Court has jurisdiction, we turn to the question whether an

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 60 of 156
                Document       Page 60 of 156

11

action for trespass is available in the circumstances of this

case.

   2.   Whether an action against Gordon for trespass was
available to Fannie Mae.   Relying on Dime Savings, supra, Gordon

argues that G. L. c. 184, § 18, bars Fannie Mae's common-law

trespass claim, and requires that the Housing Court's judgment

for possession be vacated.   In her view, Fannie Mae's only

remedy to evict her is through summary process.[12]

   In Dime Savings, the Attorney General brought an action for

declaratory and injunctive relief against the Dime Savings Bank

of New York, asking the court to enjoin the bank from bringing

"actions in trespass against foreclosed mortgagors and tenants

holding over after notice to quit" and from seeking "to eject

holdover mortgagors and tenants from the mortgaged properties."

413 Mass. at 284-285.   The court concluded that "the procedure

employed by Dime in [those] cases violate[d] G. L. c. 184, § 18,

---

[12] The defendants did not raise in the Housing Court their
argument that Fannie Mae's trespass action is foreclosed
pursuant to G. L. c. 184, § 18.   In Dime Savings, the parties
both treated this question as one of "subject matter
jurisdiction," and the Supreme Judicial Court had no reason to
second-guess that assumption.   See Dime Savings, 413 Mass. at
287.   See also Commonwealth v. DeJesus, 440 Mass. 147, 151
(2003) (questions of subject matter jurisdiction can be raised
at any time and are not waived even when not argued below).   In
the exercise of our discretion, we shall reach Gordon's
argument, as a question of important public interest, even
though it may have otherwise been waived.   See Pryor v. Holiday
Inns, Inc., 401 Mass. 506, 509-510 (1988); Slawsby v. Slawsby,
33 Mass. App. Ct. 465, 469-470 (1992).

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 61 of 156
Document      Page 61 of 156

12

[and] therefore remand[ed] the matter to the county court for
entry of a declaration that a mortgagee who forecloses on real
property by sale may not bring a trespass action against a
holdover tenant or mortgagor in actual possession of the
foreclosed premises."  Id. at 285.

General Laws c. 184, § 18, as amended by St. 1973, c. 778,
§ 1, provides that "[n]o person shall attempt to recover
possession of land or tenements in any manner other than through
an action brought pursuant to chapter two hundred and thirty-
nine or such other proceedings authorized by law."  In Dime
Savings the Supreme Judicial Court determined that a trespass
action is not available under the statute's provision for "such
other proceedings authorized by law," to a purchaser at a
foreclosure sale seeking to gain possession from a mortgagor or
its tenants in actual possession of the premises and holding
over from before the foreclosure.  See Dime Savings, 413 Mass.
at 285.  See also Deutsche Bank Natl. Trust Co. v. Gabriel, 81
Mass. App. Ct. 564, 565-566 (2012) ("Deutsche Bank, having
acquired the property after a foreclosure sale, was both
required and entitled to use summary process, G. L. c. 239, § 1,
to recover possession from the defendants, who continued to
occupy the premises after the foreclosure. . . .  Dime
Sav[ings], 413 Mass. [at] 291").

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 62 of 156
Document       Page 62 of 156

13

Fannie Mae argues, however, that neither G. L. c. 184,
§ 18, nor the summary process statute, G. L. c. 239, bars its
trespass claim.  The Supreme Judicial Court addressed this issue
in Dime Savings.  In holding that the bank's trespass actions
should be enjoined pursuant to G. L. c. 184, § 18, the court
specifically noted that, "[i]n each of the cases in question,
the property was occupied at the time of the foreclosure either
by the mortgagor or a tenant of the mortgagor." Dime Savings,
413 Mass. at 286.  Moreover, "[a]ll such occupants initially
entered the respective properties lawfully." Ibid.

There is no dispute here that Grant, as a joint tenant with
Emery, the mortgagor, occupied the property at the time of the
foreclosure.  Thus, the initial question presented here is
whether Dime Savings can be distinguished from the instant case
on the ground that Gordon (unlike the tenants in Dime Savings)
did not initially enter the subject property "lawfully."  See
Dilbert v. Hanover Ins. Co., 63 Mass. App. Ct. 327, 333 (2005)
("trespass equates to wrongful entry").  We are persuaded that
the holding of Dime Savings also applies on the facts of this
case.

In Dime Savings, the court determined that "[t]here is
. . . no basis, on this record, for distinguishing holdover
tenants of mortgagors from holdover mortgagors." Id. at 285

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 63 of 156
Document        Page 63 of 156

14

n.4.[13]  That reasoning is equally applicable here.  We see no
principled basis for distinguishing Gordon from the tenants in
Dime Savings.  Moreover, to treat Gordon's status in relation to
the property as somehow lesser than or different from that held
by the holdover tenants in Dime Savings could only be justified
by ascribing to Gordon some actual or constructive knowledge
about the legal status of Grant's title.  In other words, to
treat a purported tenant such as Gordon differently from the
bona fide tenants in Dime Savings[14] could only be justified by
applying some expectation that residential renters will take
steps to determine the validity of their landlord's title prior
to entering a lease.  We know of no basis for any such
expectation.

Accordingly, we decline to adopt a rule that would
distinguish this case from Dime Savings based solely on the

_____

[13] In addition, in Dime Savings, the Supreme Judicial Court
cited approvingly the Attorney General's argument that "unlike
the situation of the holdover mortgagors, there is nothing in
the stipulation of facts to suggest that the holdover tenants
were responsible for the defaults."  413 Mass. at 285 n.4.  This
point is also applicable here.  Like the defendants in Dime
Savings, Gordon was not responsible for the defaults on loan
obligations that led to the foreclosure.

[14] We use the term "purported" because the question whether
Fannie Mae obtained good title as a result of the foreclosure
sale and assignment has never been reduced to a judgment against
Grant.  See note 8, supra.  In contrast, in Dime Savings there
was no question presented as to the validity of the occupants'
tenancies.  413 Mass. at 286.

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 64 of 156
Document        Page 64 of 156

15

state of the purported landlord's title, or would deem a

purported lessee's possession of premises to be "unlawful" in

all circumstances where the purported landlord's title is later

adjudicated to be lacking.  Here, Grant was lawfully occupying

the subject property while defending against Fannie Mae's

summary process action at the time she entered the purported

lease with Gordon.  Like the tenants in Dime Savings, Gordon was

never a true stranger to the property.  Instead, at a minimum,

she entered at the invitation of a person with actual

possession, who was defending an active eviction case that had

yet to conclude with the entry of a judgment for possession for

any other party.  We note that this situation is easily

distinguishable from a case in which a person makes a forced

entry into a vacant property and, without permission from any

purported owner, takes up residence therein.

      We conclude that the Supreme Judicial Court's declaration

in Dime Savings that a postforeclosure owner may not bring a

trespass action against a holdover tenant who is in actual

possession of the premises applies with equal force here, where

the purported tenants claim to have leasehold rights arising

after a foreclosure, but before a final judgment for possession

has entered against the landlord.  That, however, does not end

our inquiry, as, under Dime Savings, supra, and its construction

of G. L. c. 184, § 18, it was open to Fannie Mae to maintain the

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 65 of 156
Document        Page 65 of 156

16

trespass action if it could demonstrate that it had obtained at least constructive possession of the premises before Gordon entered.

    3.  <u>Whether Fannie Mae obtained constructive possession</u>. The motion judge reasoned that, because the foreclosure was effective, Fannie Mae and not Grant held title to the property on the date Grant moved out. As a result, the judge concluded that Fannie Mae obtained constructive possession at the moment Grant vacated the property, making Gordon a trespasser. We disagree.[15] In our view, Fannie Mae did not establish its constructive possession on the summary judgment record before us, and <u>Dime Savings</u> governs this point as well.

    Some older cases concerning the tort of trespass assert that a plaintiff's "actual" possession of the subject land prior to the trespass is an elemental requirement. See <u>New England Box Co</u>. v. <u>C & R Constr. Co</u>., 313 Mass. 696, 707 (1943), quoting from <u>Perry</u> v. <u>Weeks</u>, 137 Mass. 584, 587 (1884) ("To support an action of trespass . . . , it is necessary to prove the actual possession of the plaintiff, and an illegal entry by the

---

    [15] Assuming a lawful foreclosure (a question we do not decide, see note 14, <u>supra</u>), Grant's ownership interest in the property was terminated and she became a tenant at sufferance, with no legal interest in the property. See <u>Margosian</u> v. <u>Markarian</u>, 288 Mass. 197, 199 (1934). If she held no legal interest in the property, she could not validly convey an interest, by lease or otherwise, to anyone else. However, that alone does not extinguish Grant's possessory interest, a necessary element in Fannie Mae's trespass claim.

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 66 of 156
Document        Page 66 of 156

17

defendant").  It is now established, however, that, for the
purposes of a trespass claim, "possession does not require that
the plaintiff physically occupy the property at the time of the
alleged trespass," and a plaintiff with "constructive
possession" may maintain a trespass claim "against other parties
without [actual] possession at the time of [their] entry."
Dilbert v. Hanover Ins. Co., 63 Mass. App. Ct. at 334.  See Dime
Savings, 413 Mass. at 288, quoting from Emerson v. Thompson, 2
Pick. 473, 484 (1824).

    In Dime Savings, as here, neither party contended that the
bank had actual possession of the subject property.  413 Mass.
at 288.  The court considered (and ultimately adopted) the view
from several other jurisdictions that "for the purposes of a
trespass action, there can be no constructive possession by an
owner of property actually possessed by another."  Id. at 288-
289.  Accordingly, here, Fannie Mae's claim required proof that
there was a period of time, however brief, when no other person
was in actual possession.

    For summary judgment purposes in this case, viewing the
facts in the light most favorable to the nonmoving party, Grant
moved out and Gordon moved into the premises on the same day.
See note 9, supra.  The motion judge held, as a matter of law,
that this constituted a brief period of vacancy, which was
sufficient to establish Fannie Mae's constructive possession.

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 67 of 156
Document     Page 67 of 156

18

We disagree.  Because we are satisfied that, on the summary judgment record presented, Grant's "actual" possession did not necessarily end at the moment she moved out, we reverse.  It is undisputed that Grant executed a lease on or about July 27, 2012, which, on its face, entitled Gordon to occupy the premises for a term of three years, beginning on August 1, 2012.  Grant's execution of the lease and her surrender of the purportedly leased premises to Gordon pursuant to that lease do not indicate Grant's surrender of possession in relation to others who might claim title.  On the contrary, these facts suggest the opposite.  Cf. Shoer v. Daffe, 337 Mass. 420, 424 (1958) (letting of premises by adverse possessor, and subsequent possession by succession of tenants under purported leases, did not interrupt adverse possessor's claim as against the record title holder for purposes of the twenty-year prescriptive period).  Nor does a gap in time between when Grant vacated and Gordon entered the premises signify that Grant surrendered her actual possession.  Cf. ibid., quoting from Wishart v. McKnight, 184 Mass. 283, 285-286 (1903) ("To warrant a finding that there was a continuity of possession, we do not deem it necessary to show by express testimony that the new occupant was personally present upon the premises before the former occupant departed, and that there was a formal manual transfer of possession. . . .  There is a fair inference that . . . the[] possession [of the tenant and the

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 68 of 156
Document      Page 68 of 156

19

owner] is continuous, or rather, that the possession of the
owner is continuous, although the two do not meet personally
upon the premises at the end of the term").

The question whether Grant surrendered possession of the
property "is to be determined by the intent as expressed by
words and acts of all the parties in the light of the
circumstances." Net Realty Holding Trust v. Giannini, 13 Mass.
App. Ct. 273, 278 (1982), quoting from Tudor Press, Inc. v.
University Distrib. Co., 292 Mass. 339, 341 (1935).  Indicative
of Grant's continuing possession is Gordon's uncontroverted
affidavit, which states that, although Grant moved out on
December 16, 2012, Grant's name remained on certain utilities
for an unspecified period of time after that date, and Gordon
paid rent to Grant for several months after that date.  Contrast
Caruso v. Shelit, 282 Mass. 196, 199 (1933) (surrender by
operation of law).  The record is silent as to whether Grant
acted in any other way that would suggest that she intended to
maintain possession of the property (as against anyone but her
tenant) after she moved out, such as by making repairs, paying
taxes, or paying utility bills.  It is undisputed, however, that
the summary process case against Grant remained pending with no
adjudication of the title as of the date Grant left the property
and Gordon moved in.  Furthermore, as we have noted, the docket

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/04/19   Page 69 of 156
Document      Page 69 of 156

20

in that case continues to reflect active litigation as late as May, 2013.

We are satisfied that, on this record, and taking the facts in the light most favorable to the nonmoving party, Fannie Mae has not demonstrated a gap in Grant's possession such that Fannie Mae gained constructive possession of the premises. Thus, under Dime Savings, the summary judgment in favor of Fannie Mae cannot stand.

Judgment reversed.

# DEUTSCHE BANK NATIONAL TRUST COMPANY, trustee, [Note 1] VS. FAUSTIN GABRIEL & others. [Note 2]

## 81 Mass. App. Ct. 564

December 2, 2011 - April 10, 2012

Court Below: Housing Court Department, Boston Division

Present: KAFKER, FECTEAU, & WOLOHOJIAN, JJ.

Summary Process, Appeal. Practice, Civil, Summary process, Summary judgment, Affirmative defense. Deed. Statute, Construction.

For purposes of summary judgment in a summary process action, the plaintiff bank was entitled to rely on a certified copy of the foreclosure deed, rather than the original [565-568]; further, the affidavit of sale submitted by the plaintiff bank, which largely tracked the language of the statutory form affidavit in G. L. c. 183 was, as a matter of law, sufficient to satisfy the requirements of G. L. c. 244, § 15. [568-570]

The defendants in a summary process action were not entitled to assert a conditions defense (i.e., to assert that they were not obligated to pay rent because of the conditions and disrepair of the property) pursuant to G. L. c. 239, § 8A, where they failed to allege that they were ever tenants, or that they had leased or rented the premises at any time. [570-573]

SUMMARY PROCESS. Complaint filed in the Boston Division of the Housing Court Department on November 30, 2009.

The case was heard by MaryLou Muirhead, J., on a motion for summary judgment.

Robert J. Shapiro for the defendants.

Thomas J. Santolucito for the plaintiff.

Esme Caramello, David Grossman, & Betny Townsend, for City Life/Vida Urbana & another, amici curiae, submitted a brief.

**WOLOHOJIAN, J.** The defendants (members of a single family)

have occupied [Note 3] a dwelling at 195-197 Callender Street in the Dorchester section of Boston for over twenty-eight years. In 2006, defendant Quinton Gabriel was the property's owner, [Note 4] and he granted a mortgage to Wells Fargo Bank, N.A. (Wells Fargo), which was secured by the premises. Wells Fargo foreclosed on that mortgage at a foreclosure sale held in April, 2009, and shortly thereafter, the plaintiff, Deutsche Bank National Trust Company (Deutsche Bank or bank), acquired title by foreclosure deed. [Note 5]

Deutsche Bank subsequently brought a summary process action in the Housing Court seeking to evict the defendants, and summary judgment was entered in its favor. [Note 6] On appeal, the defendants raise two issues. First, they argue that Deutsche Bank was not entitled to summary judgment primarily because the record contained only a certified copy of the deed (rather than the original). Second, they argue that they should have been allowed to assert a conditions defense, pursuant to G. L. c. 239, § 8A, even though they were occupants of the property, rather than tenants under a lease. We affirm. [Note 7], [Note 8]

Discussion. 1. Sufficiency of summary judgment record. Deutsche Bank, having acquired the property after a foreclosure sale, was both required and entitled to use summary process,

G. L. c. 239, § 1, to recover possession from the defendants, who continued to occupy the premises after the foreclosure. Attorney Gen. v. Dime Sav. Bank of N.Y., FSB, 413 Mass. 284, 291 (1992). "The purpose of summary process is to enable the holder of the legal title to gain possession of premises wrongfully withheld. Right to possession must be shown and legal title may be put in issue. . . . Legal title is established in summary process by proof that the title

was acquired strictly according to the power of sale provided in the mortgage; and that alone is subject to challenge." Bank of N.Y. v. Bailey, <u>460 Mass. 327</u>, 333 (2011), quoting from Wayne Inv. Corp. v. Abbott, <u>350 Mass. 775</u>, 775 (1966). "To prevail on its motion for summary judgment, [Deutsche Bank] 'had the burden of showing that there [we]re no material facts in dispute regarding its legal title to the property.' " Bank of N.Y., supra at 334, quoting from Metropolitan Credit Union v. Matthes, <u>46 Mass. App. Ct. 326</u>, 330 (1999).

a. Certified copy of deed in lieu of original. Relying on Samuels v. Borrowscale, 104 Mass. 207 (1870) (Samuels), the defendants argue that the bank was not entitled to summary judgment where it submitted only a certified copy of the foreclosure deed, rather than the original. Samuels, decided well before the era of reliable mechanical reproduction of documents, held that

"a party relying on a deed made immediately to himself or the other party, or which is presumed to be in the custody of either, must produce the original deed, or lay a foundation in the usual manner for secondary evidence; but that of other deeds, acknowledged and recorded in accordance with the statutes, a certified copy from the registry is original evidence, instead of the deed itself, and of course dispenses with calling an attesting witness or other proof of execution."

Id. at 209. The Samuels rule, as we shall call it for the sake of convenience, was actively invoked until 1897, [Note 9] after which none

Page 567

of our appellate cases appears to have referred to, or relied on, it. [Note 10], [Note 11]

In 1941, apparently reflecting a recognition of both the development and reliability of mechanical forms of document reproduction, the Legislature enacted G. L. c. 233, § 79A, which provides in relevant part:

"Copies of public records, . . . and of records of banks, trust companies,

insurance companies and hospitals, whether or not such records or copies are made by the photographic or microphotographic process, shall, when duly certified by the person in charge thereof, be admitted in evidence equally with the originals."

Id., as appearing in St. 1948, c. 154. Under § 79A, the admissibility of a certified copy in lieu of an original deed does not turn on whether the person seeking to introduce it is a party to the deed. The statute, by its straightforward and clear terms, applies to all public records regardless of their proponent at trial; it does not codify or incorporate the Samuels rule.

When a subsequent statute is in conflict with an earlier common-law evidentiary rule, the court has held that "[a]s a legislative enactment making certain evidence admissible, [the statute] superseded any prior common-law evidentiary rule excluding such evidence." Commonwealth v. Harris, 443 Mass. 714, 724 n.8 (2005) (construing a different section of c. 233). [Note 12] See Thomes v. Meyer Store, Inc., 268 Mass. 587, 589 (1929). That is precisely the situation here: unlike the Samuels rule, G. L. c. 233, § 79A, does not condition the admissibility of certified copies of deeds on whether their proponent was a party to them. The common-law Samuels rule has accordingly been

Page 568

superseded by the subsequent statute, [Note 13] and Deutsche Bank was entitled to rely on a certified copy of the deed to support its motion for summary judgment.

b. Adequacy of affidavit of sale. The defendants also challenge the adequacy of the affidavit of sale submitted by the bank in support of its motion for summary judgment. They contend that the affidavit did not satisfy G. L. c. 244, § 15, as appearing in St. 1994, c. 341, § 1, which provides:

"The person selling, or the attorney duly authorized by a writing or the legal guardian or conservator of such person, shall, after the sale, cause a copy of the notice and his affidavit, fully and particularly stating his acts, or the acts of

his principal or ward, to be recorded in the registry of deeds for the county or district where the land lies, with a note or reference thereto on the margin of the record of the mortgage deed, if it is recorded in the same registry. If the affidavit shows that the requirements of the power of sale and of the statute have in all respects been complied with, the affidavit or a certified copy of the record thereof, shall be admitted as evidence that the power of sale was duly executed."

A model statutory form of an affidavit of sale under a power of sale in a mortgage is found at Form 12 of the Appendix to G. L. c. 183. [Note 14] The statutory form "shall be sufficient," even if it is altered to suit the particular circumstances (in other words, if the blanks in the form are filled in as appropriate). G. L.

Page 569

c. 183, § 8. Although the statutory form affidavit appears in c. 183, rather than in c. 244, we see no reason to conclude that an affidavit of sale that conforms to the model form contained in c. 183 would not also satisfy the requirements of G. L. c. 244, § 15. Indeed, a logical and harmonious construction of the statutory scheme would lead one naturally to conclude that an affidavit of sale that satisfies one chapter would satisfy the other. See Canton v. Commissioner of the Mass. Hy. Dept., 455 Mass. 783, 791-792 (2010), and cases cited (applicable rules of statutory construction require courts to "construe statutes that relate to the same subject matter as a harmonious whole and avoid absurd results").

Here, the summary judgment record included an affidavit by attorney Francis J. Nolan that largely tracked the language of the statutory form affidavit. [Note 15] It omitted no material information from the statutory form, and its only additions were those pertinent

Page 570

to the specific facts of the foreclosure sale of the property at issue in this case.

A comparison of the text of the model form (note 14, supra) with that of Attorney Nolan's affidavit (note 15, supra) shows the limited differences between the two. Indeed, the defendants point to no specific or significant difference between Attorney Nolan's affidavit and the statutory form. Attorney Nolan's affidavit was, therefore, as a matter of law "sufficient" under G. L. c. 183, § 8, and accordingly also satisfied the requirements of G. L. c. 244, § 15.

The defendants argue that even if Attorney Nolan's affidavit conformed to the statutory model, it did not satisfy G. L. c. 244, § 15, because it did not reference the specific mortgage at issue but merely identified "the mortgage above referred to." (See note 15, supra). We are unpersuaded. First, as noted above, this language tracks precisely that of the model statutory form. Second, Attorney Nolan's affidavit was filed in the registry of deeds as a packet together with the foreclosure deed. The foreclosure deed was filed in the Suffolk County registry of deeds at book 44863, page 230-231. Attorney Nolan's affidavit (together with its exhibits) began consecutively and immediately thereafter at page 232. The foreclosure deed identified the mortgage "from Quinton Gabriel to Wells Fargo Bank, N.A. dated September 27, 2006 and recorded with the Suffolk County Registry of Deeds at Book 40487, Page 203." Attorney Nolan's reference in his affidavit (consistent with the language of the statutory model language) to the "mortgage above referred to" identified the mortgage as the one in the foreclosure deed with which his affidavit was filed and was sufficient to satisfy the requirements of G. L. c. 244, § 15. [Note 16]

2. Conditions defense. The answer contained an affirmative

Page 571

defense under G. L. c. 239, § 8A, asserting that the defendants were not obligated to pay rent because of the conditions and disrepair of the property; such a claim is colloquially known as a "conditions defense." Deutsche Bank's motion to strike was allowed on the ground that the defense is available only in actions "to recover possession of any premises rented or leased for dwelling

purposes." G. L. c. 239, § 8A, as appearing in St. 1977, c. 263. The
defendants argue that because they became tenants at sufferance after the
foreclosure (a contention we accept arguendo), they were "occupants" within
the meaning of G. L. c. 239, § 8A, and therefore, the motion to strike should
have been denied.

Massachusetts Rule of Civil Procedure 12(f) permits a plaintiff to move to
strike "any insufficient defense." [Note 17] "A motion to strike a defense as
insufficient is the counterpart of a motion under Rule 12(b)(6). . . . Under Rule
12(f), as under existing federal practice, a motion to strike an insufficient
defense searches the pleadings." 1973 Reporter's Notes to Mass.R.Civ.P. 12(f),
46 Mass. Gen. Laws Ann. at 146 (West 2006). "Because a motion of this sort
challenges the legal sufficiency of the pleading, it is governed by the same
standards as a motion to dismiss filed pursuant to [Mass.] R. Civ. P. 12(b)(6)."
In re Gabapentin Patent Litigation, 648 F. Supp. 2d 641, 647 (D.N.J. 2009)
(construing the analogous Federal rule). See generally Wright & Miller, 5C
Federal Practice & Procedure § 1381 (3d ed. 2004). Accordingly, we take as
true the allegations of the answer, as well as such inferences as may be drawn
therefrom

Page 572

in the defendants' favor. [Note 18] See Golchin v. Liberty Mut. Ins. Co., 460
Mass. 222, 223 (2011).

General Laws c. 239, § 8A, as inserted by St. 1977, c. 963, provides:

"In any action under this chapter to recover possession of *any premises rented
or leased for dwelling purposes*, brought pursuant to a notice to quit for
nonpayment of rent, or where the tenancy has been terminated without fault
of the tenant or occupant, the tenant or occupant shall be entitled to raise, by
defense or counterclaim, any claim against the plaintiff relating to or arising
out of such property, rental, tenancy, or occupancy for breach of warranty, for
a breach of any material provision of the rental agreement, or for a violation of

any other law" (emphasis added).

The answer does not allege that the premises were ever rented or leased, whether by Deutsche Bank (or anyone else) or to the defendants (or anyone else). The answer alleges only that the defendants occupied the premises. There is no allegation that the defendants were ever tenants, or that they had leased or rented the premises at any time. On the face of the answer, therefore, the defendants were not entitled to assert a conditions defense under G. L. c. 239, § 8A, and the motion to strike was properly allowed.

Relying on Hodge v. Klug, 33 Mass. App. Ct. 746 (1992) (Hodge), the defendants argue that tenants at sufferance, as "occupants," may assert a conditions defense under G. L. c. 239, § 8A. Their argument, however, ignores the critical distinction that, in Hodge, the premises had previously been rented to the defendant in a tenancy at will, rent payable monthly in advance. After a number of years, the owners decided to sell the property and served notice to quit on the tenant, who thereafter refused to leave. A summary process action ensued, and on appeal we held that § 8A defenses are not limited to tenants under a lease or tenants at will, i.e., acknowledged tenants, but can be available to "occupants," including tenants at sufferance. Id. at 754.

Page 573

Hodge does not stand for the proposition that § 8A defenses are available where the premises have never been leased or rented, as is the case here. [Note 19] Instead, it stands for the proposition that a person who is entitled to assert defenses under G. L. c. 239, § 8A, does not lose that entitlement by later becoming a tenant at sufferance. [Note 20] Here, as we noted above, there was no allegation that the defendants ever rented or leased the premises.

Conclusion. For the reasons set forth above, the Housing Court judgment of summary process for the plaintiff is affirmed.

So ordered.

FOOTNOTES

[Note 1] Of the HSI Asset Securitization Corporation Trust 2007-HE1.

[Note 2] Kathy Gabriel, Faustina K. Gabriel, Raul Gabriel, Marian Gabriel, Quinton Gabriel, Venita Gabriel, and Ignatious Gabriel. Because the defendants share the same last name, we refer to them by their first names.

[Note 3] They have never rented or leased the premises, and they have never occupied the premises as tenants.

[Note 4] Defendants Faustin and Venita owned the property from 1981 to 2006. They transferred it to Quinton in 2006.

[Note 5] The defendants do not challenge the Housing Court's determination that Deutsche Bank served notices to vacate approximately six months later on all the defendants except for Ignatious. And they do not contest the Housing Court's determination that the failure to serve Ignatious was irrelevant vis-a-vis the codefendants, and not material with respect to Ignatious because he derives his right to occupy the premises through Quinton and is therefore not entitled to a separate notice to vacate.

[Note 6] Although nothing turns on it, we note that this is the second summary process action brought by Deutsche Bank relating to this property and also the second summary judgment motion.

[Note 7] We review a decision to grant summary judgment de novo. "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).

[Note 8] We acknowledge the amicus brief of City Life/Vida Urbana and Oliver Hendricks.

[Note 9] The Samuels rule was cited, commented on, or relied on in Stockwell v. Silloway, 105 Mass. 517, 519 (1870); Brown v. Brown, 108 Mass. 386, 391-392 (1871); Gragg v. Learned, 109 Mass. 167, 168 (1872); Chamberlin v. Huguenot Mfg. Co., 118 Mass. 532, 536 (1875); Draper v. Hatfield, 124 Mass. 53, 57 (1878); Commonwealth v. Richardson, 142 Mass. 71, 74 (1886); O'Neil v. Webster, 150 Mass. 572, 573 (1890); New York, N.H. & H.R.R. v. Benedict, 169 Mass. 262, 266 (1897).

[Note 10] Samuels was cited by the Supreme Judicial Court for a different, and unrelated, proposition as recently as 2003. See Lawrence v. Concord, <u>439 Mass. 416</u>, 421 (2003).

[Note 11] The Samuels rule was relied upon by the Appellate Division in Federal Natl. Mort. Assoc. v. Saric, <u>2010 Mass. App. Div. 177</u> (2010).

[Note 12] If a subsequent statute does not conflict with prior common law, then the common law continues to control. Trombley v. Stevens-Duryea Co., <u>206 Mass. 516</u>, 519 (1910).

[Note 13] Although no issue has been raised regarding the authenticity of the certified copy of the deed, we note that the authenticity of certified copies of public records is governed by Mass.R.Civ.P. 44, 365 Mass. 807 (1974).

[Note 14] Form 12 provides as follows:

"[To be filled in] named in the foregoing deed, make oath and say that the principal [to be filled in] interest [to be filled in] obligation [to be filled in] mentioned in the mortgage above referred to was not paid or tendered or performed when due or prior to the sale, and that I published on the [to be filled in] day of [to be filled in] 19[to be filled in], in the [to be filled in], a newspaper published or by its title page purporting to be published in [to be filled in] aforesaid and having a circulation therein, a notice of which the following is a true copy:

"(Insert advertisement.)

"Pursuant to said notice at the time and place therein appointed, I sold the mortgaged premises at [to be filled in] public action by [to be filled in], an auctioneer, to [to be filled in], above named, for [to be filled in] dollars, bid by him, being the highest bid made therefor at said auction.

"Sworn to by the said [to be filled in] 19 [to be filled in], before me."

[Note 15] "I, Francis J. Nolan, of Harmon Law Offices, PC, as Attorney in Fact* for Wells Fargo Bank, N.A. make oath and say that the principal and interest obligation mentioned in the mortgage above referred to were not paid or tendered or performed when due or prior to the sale, and that Wells Fargo Bank, N.A. caused to be published on February 13, 2009, February 20, 2009 and February 27, 2009 in the Boston Herald, a newspaper having a general circulation in Dorchester (Boston), a notice of which the following is a true copy. (See attached Exhibit A [copy of the newspaper notice]).

"I also complied with Chapter 244, Section 14 of the Massachusetts General Laws,

as amended, by mailing the required notices be certified mail, return receipt requested.

"Pursuant to said notice at the time and place therein appointed the auction was postponed by public proclamation to April 7, 2009 at 12:00 p.m. upon the mortgaged premises, at which time and place Wells Fargo Bank, N.A. sold the mortgaged premises at public auction by Charles F. Cawley, a duly licensed auctioneer, to Wells Fargo Bank, N.A. for TWO HUNDRED THIRTY-FIVE THOUSAND AND 00/100 ($235,000.00) DOLLARS bid by Wells Fargo Bank, N.A., being the highest bid made therefore at said auction. Said bid was then assigned by Wells Fargo Bank, N.A. to Deutsche Bank National Trust Company, as Trustee for HSI Asset Securitization Corporation Trust 2007-HE1, as evidenced by assignment of bid to be recorded herewith as Exhibit 'B'.

[signature by Attorney Nolan]

"*For signatory authority, please see the Limited Power of Attorney recorded with the Suffolk County Registry of Deeds at Book 43361, Page 106."

The notary's attestation, signature, and seal followed.

[Note 16] Deciding as we do, we need not (and do not) reach the defendants' claim that the affidavit of Tyler N. Smith, an "REO Supervisor" of Premiere Asset Services, "a servicer" authorized to act for Deutsche Bank with regard to the property, was defective in that it does not state that it was made on personal knowledge or disclose the basis of Smith's knowledge. See Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974) (affidavits supporting summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). Smith's affidavit contained nothing of import that was not contained in the certified records and the Nolan affidavit. No aspect of our decision rests on the contents of the Smith affidavit.

[Note 17] Although the Uniform Summary Process Rules govern summary process actions such as this one, the rules of civil procedure also govern to the extent they are not inconsistent. Uniform Summary Process Rule 1 (2010). "[T]he Uniform Summary Process Rules have incorporated by reference the Massachusetts Rules of Civil Procedure to be used in a residuary capacity when they are not 'inconsistent' with the Uniform Summary Process Rules . . . Uniform Summary Process Rule 1 should be applied as written. It is not unusual in law for one set of rules (in this instance, the Massachusetts Rules of Civil Procedure) that do not by their own provisions apply in a situation to be incorporated by reference by another set of rules (in this instance, the Uniform Summary Process Rules)." 1988 Reporter's

Notes to Mass.R.Civ.P. 81(a)(7) Documents. Page 81 of 156 at 1190 (West 2006). The
Uniform Summary Process Rules do not set out a procedure for moving to strike
portions of pleadings and, accordingly, we look to the Massachusetts Rules of Civil
Procedure.

[Note 18] We note that neither party briefed the appropriate standard of review, nor
did their briefs below address the issue.

[Note 19] We here reach the same conclusion reached by the Housing Court judge
in his extremely thoughtful and comprehensive memorandum and decision.

[Note 20] This understanding of Hodge is consistent with the recent construction of
G. L. c. 186A, § 1. See Federal Natl. Mort. Assn. v. Nunez, 460 Mass. 511, 518 n.8
(2011).

Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact
Reference Librarians.

COMMONWEALTH OF MASSACHUSETTS

**Supreme Judicial Court**

FOR THE COMMONWEALTH.

No. 05928.

SUFFOLK COUNTY.

———

COMMONWEALTH OF MASSACHUSETTS,

Plaintiff,

v.

DIME SAVINGS BANK OF NEW YORK, FSB, *et al.,*

Defendant.

———

ON RESERVATION AND REPORT FROM THE SINGLE
JUSTICE OF THE SUPREME JUDICIAL COURT.

———

Brief for the Plaintiff.

———

SCOTT HARSHBARGER
Attorney General

STUART T. ROSSMAN
Assistant Attorney General
BBO #430640
Stephen Dick
131 Tremont Street
Boston, MA 02111
(617) 727-2200
*Counsel for Plaintiff*

COMMONWEALTH OF MASSACHUSETTS
SUPREME JUDICIAL COURT

SUFFOLK COUNTY

No. 05928

_____

COMMONWEALTH OF MASSACHUSETTS,
Plaintiff,

v.

DIME SAVINGS BANK OF NEW YORK FSB, et al.,
Defendants.

_____

ON RESERVATION AND REPORT FROM THE SINGLE
JUSTICE OF THE SUPREME JUDICIAL COURT

_____

BRIEF FOR THE PLAINTIFF

_____

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| STATEMENT OF THE CASE | | 1 |
| STATEMENT OF THE FACTS | | 1 |
| SUMMARY OF ARGUMENT | | 3 |
| ISSUES PRESENTED | | 5 |
| INTRODUCTION | | 5 |
| ARGUMENT | | 7 |

I.   UNDER THE CIRCUMSTANCES PRESENTED, THE BANK CANNOT STATE A CLAIM FOR TRESPASS UPON WHICH RELIEF CAN BE GRANTED.   7

     A.   Trespass is Available Only to a Plaintiff in Actual Possession of the Land and Only When That Possession is Invaded by an Act of the Defendant.   7

     B.   The Bank Does Not Have Possession to Give it Standing in Trespass.   16

         1.   <u>Possession is actual possession</u>.   16

         2.   <u>There is no "constructive" possession in Massachusetts, nor is there constructive possession of another's possession.</u>   17

         3.   <u>The Bank obtains no possession by its claimed "entry" because entry is not effective when it is opposed.</u>   18

     C.   Those Against Whom the Bank Seeks Relief Have Committed No Wrongful, Intentional Act, Nor Have They Failed to Perform a Duty and Are Therefore Not Liable in Trespass.   21

II.   THE PRELIMINARY INJUNCTIONS WHICH THE BANK HAS OBTAINED TO EVICTS OCCUPANTS FROM THEIR HOMES AS TRESPASSERS ARE IMPROPER.   25

     A.   The Bank Has No Probability of Success on the Merits of its Claims at Trial.   25

B.  The Bank Has Adequate Remedies At Law
    Which Prevent its Use of Equitable Relief.    25

C.  Equity Cannot Deprive A Party of a Jury
    Trial Where Such an Entitlement Has Been
    Granted By the General Court.                 31

D.  Injunctions Will Not Transfer Possession     33

E.  A Preliminary Injunction Must Protect the     35
    *Status Quo Ante Litem,* Particularly of a
    Possessor.

F.  A Preliminary Injunction Cannot Grant         37
    Final Relief.

G.  Because the Balance of Harms Overwhelming-    38
    ly Favors the Occupant in Peril of His
    Home, He May not Be Preliminarily Enjoined
    Out of That Home and the Bank is Not
    Entitled to Such Equitable Relief.

III. THE BANK'S PRACTICE OF EVICTING OCCUPANTS FROM    40
     THEIR HOMES BY PRELIMINARY INJUNCTIONS OBTAINED
     IN TRESPASS ACTIONS SHOULD BE DECLARED UNLAWFUL
     AND ENJOINED.

IV.  CONCLUSION                                   47

## TABLE OF AUTHORITIES

CASES

Abbott v. Abbott,                                           11
    97 Mass. 136, 139 (1867)

Anthony v. New York, Providence and
Boston Railroad, 162 Mass. 60 (1894)              11
    162 Mass. 60 (1894)

Araserv v. Bay State Harness,
    437 F.Supp. 1083, 10, 21, 26               19, 23

Baseball Publishing Co. v. Bruton,
    302 Mass. 54 (1938)                                  14

Bech v. Cuevas,
    404 Mass. 249 (1989)                                 18

Bennett v. Conant,
    64 Mass. 163, 166 (1852)                             23

Bigelow v. Jones,
    10 Pick. (27 Mass.) 161 (1830)                       10

Bloom v. City of Worcester,
    363 Mass. 136 (1972)                                 30

Boston Rent Equity Board v. Dime Savings Bank,
    Housing Court 92-CV 00185 (April 7, 1992)            18

Burke v. Willard,
    243 Mass. 547 (1923)                             12, 13

Chalmers v. Smith,
    152 Mass. 561 (1891)                                 17

Chamberlain v. James,
    294 Mass. 1 (1936)                                   16

Commonwealth v. Belino,
    320 Mass. 635 (1947)                                 30

Commonwealth v. Bosquet,
    407 Mass. 854 (1990)                                 30

Commonwealth v. Bigelow,
    3 Pick. (20 Mass.)                                   11

Commonwealth v. Mass. CRINC.,
    392 Mass. 79 (1984)                                  38

-iii-

Cook v. Rider
    16 Pick. (133 Mass.) 186 (1834)                        11

Cunningham v. Davis,
    175 Mass. 213 (1900)                                   23

Daniels v. Pond,
    21 Pick. 367 (1838)                                    17

Duquenoy v. Dorgan,
    341 Masss. 28 (1960)                                   17

Edwards v. Columbia Amusement Company,
    215 Mass. 125 (1913)                               34, 42

Ellis v. Drake,
    90 Mass. 161 (1864)                                    23

Emerson v. Thompson,
    2 Pick. (19 Mass.) 473 (1824)                          10

Erskine v. Townsend,
    2 Mass. 493, 496 (1807)                                21

Everett v. Canton,
    303 Mass. 166 (1939)                                   23

Farnham v. Lenox Motor Car Co.,
    229 Mass. 478 (1918)                                   32

French v. Fuller,
    23 Pick. (40 Mass.)                                11, 17

Gibbs v. Chase,
    10 Mass. 125 (1813)                                    10

Glickman v. Kastel
    323 Mass. 148 (1948)                               33, 34

Grace v. Brookline,
    379 Mass. 43 (1979)                                30, 38

Harlow Realty Co. v. Cotter,
    284 Mass. 68 (1933)                                    19

Holman v. Bailey,
    44 Mass. 55, 57 (1841)                                 35

In the Matter of McKnight,
    406 Mass. 787 (1990)                                   37

Inhabitants of Barnstable v. Thatcher,
  3 Met. (44 Mass.) 239 (1841)                        10, 22

Insurance Rating Board v.
Commissioner of Insurance,
  356 Mass. 184) (1969)                                   30

Jersey City Medical Center v. Halstead,
  404 A.2d 44 (N.J. Super. 1979)                          15

Jinwala v. Bizzaro,
  24 Mass. App. Ct. 1 (1987)                             38

Kargman v. Dustin,
  5 Mass. App. Ct. 101 (1977)                            38

King v. G&M Realty,
  373 Mass. 658 (1977)                                   23

Krikorian v. Grafton Co-Operative Bank
  294 Mass. 1 (1936)                                     16

Lash v. Ames,
  171 Mass. 487 (1898)                                   23

Lawless-Mawhinney v. Mawhinney,
  21 Mass. App. Ct. 738 (1986)                           31

Lucy Webb Hayes National Training
School v. Geoghegan,
  281 F.Supp. 116 (D.D.C. 1967)                          15

Matsushita Electric Corp. of
America v. Sonus Corp,                                32, 33
  362 Mass. 246 (1972)

Milton v. Puffer,
  207 Mass. 416 (1911)                                   11

Nalbandian v. Patrizzi
  369 Mass. 477, 478 (1976)                              31

Nautican Realty v. Nantucket Shipyard, Inc.
  28 Mass. App. Ct. 902 (1989)                           15

Nei v. Burley
  388 Mass. 307, 312 (1983)                              35

New England Box Co. v. C&R Construction Co.
  313 Mass. 696 (1943)                                   11

Northampton Paper Mills v. Ames,
 8 Met. (49 Mass.) 1 (1844)                    14, 20-21

O'Bannon v.Town Court Nursing Center,
 447 U.S. 773 n.2 (1980)                            28

Opinon of the Justices,
 321 Mass. 772 (1947)                              30

Packaging Industries Group v. Cheney,
 380 Mass. 609 (1980)                              25

Palmer v. Fowley
 71 Mass. 545, 548-549 (1856),                     23

Perry v. Weeks,
 137 Mass. 584                                      11

Powers v. Raymond,
 137 Mass. 483) 1884                                32

Serreze v. YWCA of Western Mass, Inc.,
 30 Mass. App. Ct. 639 (1991)                      26

Shea v. Neponset Marine & Sportfishing Inc.,
 14 Mass. App. Ct. 121 1982)                       28

Starr v. Jackson
 11 Mass. 518, 519 (1814)                          10

Stockbridge v. Mixer,
 215 Mass. 415 (1913)                              31

Taylor v. Townsend,
 8 Mass. 410, 414 (1812)                           10

Titan Holdings v. Keene,
 898 F.2d 265, 272 (1st Cir. 1990),               22

Tucker v. Fenno,
 110 Mass. 311, 313 (1872),                        19

United Electric Light Co. v.
Deliso Construction Co.,
 315 Mass. 313 (1943)                              23

Weiss v. Levy,
 166 Mass. 290 (1886)                          26, 34

Westinghouse Electric Corp. v.
Free Sewing Machine Co.,
 256 F.2d 808 (7th Cir. 1958)                      40

<u>CONSTITUTIONS, STATUTES, RULES</u>

Article XV Massachusetts Declaration of Rights   32, 33

G.L. c. 12 §§ 3, 10                                       1
G.L. c. 184 § 18                                    27, 45
G.L. c. 186 § 13                                        42
G.L. c. 186 § 14                                        26
G.L. c. 211 § 3                                      1, 43
G.L. c. 214 § 1                                      1, 43
G.L. c. 231A                                         1, 43
G.L. c. 239                                         28, 33
G.L. c. 239 §§ 8A, 9                                    41
G.L. c. 244 § 1                                         18
G.L. c. 244 §§ 4, 5                                     27
G.L. c. 266 § 20                                        24

Mass. R. Civ. P. 38                                     32
Uniform Summary Process Rules                       28, 29,
                                                        32

<u>OTHER AUTHORITIY</u>

Annotation, <u>Remedy of Tenant Against
Stranger Wrongfully Interefering With
His Possession</u>, 12 A.L.R. 2d 1192 (1949)           34

2 W. Blackstone, Commentaries *150                 24, 35,

Dobbs, Remedies, § 5.6, at 352 (1973)                  26

Leubsdorf, <u>The Standard for Preliminary
Injunctions</u>, 91 Harv. L. Rev. 525 (1978)       34, 36

Nolan, Tort Law, 37 Mass. Practice Series (1979) passim

Note, <u>Developments in the Law, Injunctions</u>,
78 Harv. L. Rev. 994 (1965)                            35

Park, Real Estate Law,
28A Mass Practice Series (1991)                        24

W. Prosser, Prosser and Keeton on the Law
of Torts (5th ed. 1984)                            passim

Restatement (Second) of Torts (1964)               passim

Simpson, Summary of Basic Law,
14A Mass. Prac. Series (1974)                          12

Stavisky, Landlord and Tenant Law,
33 Mass. Practice Series  (1977)                    14

2 Walsh, Commentaries on the Laws
of Real Property, (1947)                            24

## STATEMENT OF THE CASE

On April 9, 1992, the Plaintiff, COMMONWEALTH OF
MASSACHUSETTS, ("Commonwealth") by and through its
Attorney General, filed a complaint for declaratory and
injunctive relief against the Defendants, DIME SAVINGS
BANK OF NEW YORK FSB, GARDEN MANAGEMENT COMPANY and
DIME REAL ESTATE-MASSACHUSETTS (collectively, the
"Bank"), in the Single Justice session of the Supreme
Judicial Court.  The Attorney General, taking cogni-
zance of alleged violations of law under G.L. c. 12 §
10, appeared in the public interest pursuant to the
provisions of G.L. c. 12 § 3 and invoked the Court's
equitable and supervisory powers under G.L. cc. 214 § 1
and 211 § 3, respectively, as well as the Declaratory
Judgment Act, G.L. c. 231A.

The case came before the Single Justice on a
Stipulation of Agreed Facts ("Stip.") which is a part
of the assembled record and attached hereto as APPENDIX
A.  Oral argument was heard on April 15, 1992, on which
date the Single Justice reserved and reported this
matter to the Full Bench.

## STATEMENT OF THE FACTS

The Stipulation sets forth the complete factual
basis of this case.  The Commonwealth neither admits
nor denies any of the facts asserted, but merely agrees
to them in this case only in order to create a record

-1-

for the determination of the important legal issues
presented.

In brief, the Bank regularly forecloses by sale on
lawfully-occupied, single-family residences, condomini-
ums, apartments and other residential properties in
Massachusetts. (Stip. Pars. 4, 5). The Bank also
records a memorandum of entry under G.L. c. 244 § 1.
(Id.) After the Bank obtains title to the property
through a foreclosure sale, it sends notices to the
former mortgagors and post-mortgage tenants, demanding
possession of the property. (Stip. Par. 8).

The Bank asserts that the foreclosure by sale and
the recording of a memorandum of entry, followed by a
notice to vacate, automatically terminate the occu-
pants' rights of possession in the premises, and, when
they refuse to vacate, reduce such occupants, whether
mortgagors or their tenants, to the status of trespass-
ers in their own homes. (Stip. Par. 12). The Bank
asserts no wrongdoing on the part of the occupants as
grounds for recovery of possession. (Id.) Nonethe-
less, the Bank then initiates a trespass action against
these occupants in the Superior Court. (Stip. Par.
10). It seeks, and in many cases to date has obtained,
preliminary injunctive relief, sometimes on short
notice, enjoining the purported trespassers from fur-
ther possession of their homes. (Stip. Par. 13).

-2-

## SUMMARY OF ARGUMENT

Trespass is an invasion of possession -- not of
title or possessory rights.  An action in trespass re-
quires (i) actual possession of the land by the plain-
tiff and (ii) an unlawful invasion of that possession
by the defendant.  See Argument, p. 7.  Neither element
is present in the "trespass" cases which the Bank
brings against holdover occupants.  The Bank is without
actual possession of the premises.  See Argument, p.
16.  There is no "constructive" possession under Massa-
chusetts law, or "constructive" possession of property
actually possessed by another, See, Argument, p. 17,
nor is the Bank's claimed "entry" to recover possession
valid.  See Argument, p 18.  Because the Bank does not
possess the premises, its possession has not been
invaded and it is without standing in a trespass ac-
tion.

Possession is invaded by an intentional, unlawful
entry upon the land.  One whose possession arises
lawfully, under mortgage or a lease under a mortgage,
has made no unlawful entry and does not become an
invader by holding over.  See Argument, p. 21.  He is,
at the very least, a tenant at sufferance, not a tres-
passer, because the law presumes his possession to be
rightful.

The proper remedy to recover possession in such

-3-

circumstances is summary process.

The preliminary injunctions which the Bank obtains
in trespass against holdover occupiers are inappropri-
ate because:  (i) the Bank cannot succeed on the mer-
its, since it has no claim in trespass, see Argument,
p. 25; (ii) the Bank has several adequate remedies at
law, one of which, the summary process procedure as set
forth in G.L. c. 239, was intended by the Legislature
specifically for the adjudication of the Bank's claims,
see Argument, p 25; (iii) equity does not lie where it
will foreclose the defendant's Constitutionally-
protected right to trial by jury, in this case con-
ferred by the General Court in the summary process
procedure, G.L. c. 239, see Argument p. 31 (iv) it is a
general rule of equity that injunctions may not be used
to transfer possession of land, see Argument at p. 33;
(v) a preliminary injunction must protect the *status
quo*, particularly of a possessor;  see Argument at
p.35; and (vi) eviction of an occupant is permanent,
not "preliminary," relief, preserves nothing for trial
on the merits and is therefore a wholly improper invo-
cation of equity, see Argument at pp. 37; and (vii) as
between the Bank, which seeks empty space, and the
occupier, who attempts to hold onto a home, the balance
of harms cuts in favor of the occupier, and a prelimi-
nary injunction should not issue, see Argument at p.

-4-

38.

The Commonwealth is therefore entitled to a declaration that the Bank's actions are invalid.  The Commonwealth is further entitled to permanent injunctive relief, enjoining the Bank from proceeding at equity to recover possession of residential property through improper trespass actions.  See Argument, p. 40.

## ISSUES PRESENTED

I.   May a mortgagee recover possession of dwellings from foreclosed mortgagors -- and tenants holding under them -- by circumventing statutory and common law proceedings designed specifically for that purpose and obtaining extraordinary, preliminary equitable relief in trespass to dispossess such occupants as trespassers in their own homes?

II.   Are summary process and other statutory remedies for recovery of possession of residential property mere alternatives to equitable relief, electable at the mortgagee's "option"?

## INTRODUCTION

In its haste to empty residential properties for resale by recovering possession from mortgagors and tenants through trespass actions designed to circumvent summary process, the Bank has overlooked one of the most black-letter, fundamental and immutable tenets of the common law:  the intentional tort of trespass to

-5-

land is premised on an <u>invasion of possession</u>. It
requires a plaintiff in <u>actual</u> possession -- not seek-
ing to recover possession, or merely asserting its
right to possession -- and a defendant who has <u>invaded</u>
that possession by making, or causing, an <u>unlawful entry</u>.

The Bank states no facts sufficient to state a
claim under the tort of trespass. It does not have
actual possession of the property -- indeed it is that
possession which the Bank seeks -- nor has it obtained
possession by "entry." Furthermore, those whom it seeks
to evict have made neither an unlawful entry nor an
entry at all onto land in the Bank's possession, other
than their original, lawful entry. They have merely
retained, or vainly <u>attempted</u> to retain, possession
of their homes at the time of foreclosure.

Because the Bank fails to state a claim in tres-
pass, preliminary injunctive relief under that cause of
action does not lie. Nor is equity in any manner
available to do what the Bank seeks to accomplish. The
Bank's purported injuries are wholly compensable in
damages at law and equitable relief is neither neces-
sary nor permissible under the circumstances.

This controversy places at stake nothing less than
the means by which the possessory rights of a Common-
wealth resident to his or her home are determined.
What those rights are ultimately adjudged to be is not

-6-

at issue at this time and are reserved for later con-
sideration.  Rather, the Commonwealth's concern is
solely to ensure that such grave determinations be made
pursuant to the procedural and substantive mandates of
the Legislature, in accord with the guarantees of the
Declaration of Rights, and consistent with the common
law of torts and equity.

<u>ARGUMENT</u>

I.    UNDER THE CIRCUMSTANCES PRESENTED, THE BANK
      CANNOT STATE A CLAIM FOR TRESPASS UPON WHICH
      RELIEF CAN BE GRANTED.

      A.   Trespass is Available Only to a Plain-
           tiff in Actual Possession of the Land
           and Only When That Possession is Invad-
           ed by an Act of the Defendant.

In Massachusetts:  "The action of trespass to
real property is founded on two elements:  (1)
actual possession by the plaintiff; and (2) inten-
tional and illegal entry by the defendant."  Nolan,
Tort Law, 37 Mass. Practice Series c. 3 § 31 (1979).
(Hereafter, "Nolan.")  "In the landlord-tenant
context, an action of trespass lies by the <u>tenant</u>
against the <u>owner</u> who wrongfully evicts the tenant
because after the creation of the tenancy <u>it is the</u>
<u>tenant who has the right to exclusive possession,</u>
<u>not the landlord (owner)</u>."  Nolan § 31 at 36.
(Emphases added).  All authority accords.

In defining the tort of trespass to property,
The Restatement (Second) of Torts is emphatic in its

-7-

requirement of actual possession of the land:

> § 158.  Liability for Intentional Intrusions
> on Land.
>
> One is subject to liability to another for
> trespass, irrespective of whether he thereby
> causes harm to any legally protected interest
> of the other, if he intentionally
> > (a) enters land in the possession of the
> > other, or causes a thing or a third person
> > to do so, or
> > (b) remains on the land, or
> > (c) fails to remove from the land a thing
> > which he is under a duty to remove.

Restatement (Second) of Torts § 158 (1965).  Nolan § 32

at 40.

Besides _unmistakably_ requiring actual possession

and unlawful entry, the Restatement (Second) of Torts

affirmatively and specifically _excludes_ from the _scope_

of the tort those asserting the very rights which the

Bank seeks to assert in its trespass actions, i.e., its

_right_ to possession, as opposed to possession itself:

> Chapters 7 and 8 deal with invasions of the
> interest in the exclusive possession and
> physical condition of land.  They are con-
> cerned only with the interest of one who is in
> the possession of land at the time of the
> actor's intrusion.  They are not concerned
> with invasion of certain interests of persons
> not in possession of land at the time of the
> intrusion.

_Id._ ch. 7 Scope Note (1965).

This right may be asserted _only_ by the actual

possessor of the property or chattels.  _Id._ and at §

163 comment d; Nolan § 31 at 36.

Title is inconsequential.  To the contrary, one in

-8-

possession may "maintain the action, although the person has no legal title, and is in wrongful occupation, as for example <u>under a void lease</u>, or in mere adverse possession."  W. Prosser, Prosser and Keeton on the Law of Torts, § 13 at 77 (5th ed. 1984). (Hereafter, "Prosser").  (Emphasis added.)

Massachusetts case law has consistently applied the standards set forth in the treatises and Restatement.  "To support an action of trespass *quare clausum fregit*[1] it is necessary to prove the actual possession of the plaintiff and an illegal entry by the defendant.  The action is founded merely on the possession and it is not necessary for the plaintiff to show a right of property.  He must prove such a lawful possession as the defendant had no right to disturb;

---

1.  "Wherefore he broke the close," the original, distinct common law action for what is today trespass to land.  "Trespass was the remedy for all forcible, direct and immediate injuries, whether to person or property." Prosser § 6.  Initially, "trespass" identified any tortious conduct that would subject the actor to such an action.  Prosser § 3.  Later, "trespass on the case" or the "action on the case" remedied wrongful conduct which only indirectly caused injury.  <u>Id.</u>  Thus, one who was injured by a log thrown onto a highway had an action against the thrower in trespass.  One who later tripped over the log had an action "on the case."  <u>Id.</u>  Both were trespass actions. Prosser § 13.  Trespass "came to describe the kind of caption of or intrusion onto tangible property, the common law action of trespass."  <u>Id.</u>  Nevertheless, this has left modern jurisprudence with a body of older cases which consistently refer to the generic wrongdoer as a "trespasser."  <u>See</u>, the "twin <u>Burke</u>" cases, p.12.

-9-

but any possession is a legal possession against a
wrongdoer." <u>Inhabitants of Barnstable v. Thatcher</u>, 3
Metc. (44 Mass.) 239, 242 (1841), (Citations to English
cases omitted). <u>See also</u> Nolan § 31 at 36.

An owner out of possession cannot bring a trespass
action.  "[T]he action of trespass for breaking and
entering upon lands and tenements . . . cannot be
maintained unless the plaintiff have actual possession,
although he may have the freehold in law." <u>Gibbs v.
Chase</u>, 10 Mass. 125, 128 n. (1)(a) (1813) (and citing
<u>Starr v. Jackson</u>, 11 Mass. 518, 519 (1814) for this
proposition.)  "It is well settled that none can main-
tain an action of trespass <i>quare clausum fregit</i> but he
who has possession in fact of the land." <u>Taylor v.
Townsend</u>, 8 Mass. 410, 414 (1812).

"An action of trespass, being a possessory action,
cannot be maintained, unless the plaintiff had the
actual or constructive[2] possession of the property
trespassed upon at the time of the trespass." <u>Emerson
v. Thompson</u>, 2 Pick. (19 Mass.) 473, 484 (1824). <u>See
also</u>, <u>Bigelow v. Jones</u>, 10 Pick. (27 Mass.) 161, 163,
164-165 (1830) (Nonsuiting the plaintiff because he was
divested of the legal possession and so could not

---

2.  There is no longer constructive possession in
Massachusetts, nor is there constructive possession
of that which another possesses.  See below, p. 17.

maintain an action against the party in possession for
use and occupation."), <u>Cook v. Rider</u>, 16 Pick. (133
Mass.) 186, 187 (1834), <u>Commonwealth v. Bigelow</u>, 3
Pick. (20 Mass.) 31, 32 (1825), <u>French v. Fuller</u>, 23
Pick. (40 Mass.) 104, 106 (1839), <u>Abbott v. Abbott</u>, 97
Mass. 136, 139 (1867), <u>Anthony v. New York, Providence
and Boston Railroad Co.</u>, 162 Mass. 60, 62 (1894)
(Citing, <u>inter alia</u>, <u>Perry v. Weeks</u>, 137 Mass. 584
(1884) for the proposition that "an unrecorded deed of
wild land is not of itself sufficient evidence of
possession by the grantee to entitle him to maintain
<em>trespass quare clausum fregit</em> against a third person.)
<u>Milton v. Puffer</u>, 207 Mass. 416, 418 (1911) ("The
plaintiff cannot maintain an action against the defend-
ant for the original trespass since she was not in
possession at the time that it was committed.") <u>New
England Box Co. v. C&R Construction Co.</u>, 313 Mass. 696,
707 (1943) ("'To support an action of trespass . . . .
it is necessary to prove the actual possession of the
plaintiff, and an illegal entry by the defendant.'"
(Citing <u>Perry</u>, <u>supra</u>, 137 Mass. at 587)).

Jurisdictions across the United States are in
accord. (Copies of these cases are attached at APPEN-
DIX B.)

Actual possession is an absolute requirement
because the essence of the tort is interference with

-11-

that possession.  87 C.J.S. Trespass § 4 (1954), 75 Am.
Jur. 2d Trespass § 36 (1991), Simpson, Summary of Basic
Law, 14A Mass. Prac. Series § 1971 at 356 (1974).
Nolan § 31 at 36.  It is solely the actual possession
which is vindicated in trespass.  Thus, one asserting a
"right" to possession is without standing, unless he
has possession:  "An owner who is out of possession
cannot maintain trespass.  Thus a landlord cannot sue
for a mere trespass to the land in occupation of his
tenant . . . the landlord's remedy is by way of an
action for ejectment and for mesne profits."  Prosser §
13 at 78.  Hence, a non-possessor complaining in tres-
pass has suffered no invasion of right.  He seeks to
remedy a wrong which cannot have befallen him.

It is true that, in certain older Massachusetts
cases, a holdover mortgagor or his tenants are some-
times referred to as trespassers.  It is paramount that
in all of these cases the mortgagee plaintiff had
already obtained possession of the subject premises and
was merely seeking to recover mesne profits for the
past interference with possession.

The confusion which arises from the two different
torts and the two different tortfeasors is glowingly
illustrated in the twin Burke cases in Massachusetts.
Burke v. Willard was tried and appealed twice in two
separate cases, brought a year apart, with identical

-12-

parties arising from identical transactions and facts,
but brought on two different causes of action, contract
and trespass for mesne profits.

In Burke v. Willard, 243 Mass. 547 (1923) ("Burke
I"), the mortgagor sued in contract to recover use and
occupancy from a holdover tenant of a mortgagor.  The
holdover had already voluntarily vacated the premises
after the mortgagor's default, but before the filing of
the suit.  The mortgagee, apparently, entered upon
default to take possession and his entry was unopposed.
The Court held that after the plaintiff entered and
took possession for the purpose of foreclosing his
mortgage, the defendant became a tenant at sufferance.
But because there was no privity, the tenant was nei-
ther expressly nor impliedly required by contract to
pay rent to the plaintiff.  Id. at 549-551.

Subsequently, the plaintiff refiled the case as an
action in trespass.  Burke v. Willard, 249 Mass. 313
(1924), ("Burke II").  The Court recognized that the
plaintiff had made an unopposed entry against the
mortgagor on property which the tenant had already
vacated.  Therefore, the Court ruled that this time the
plaintiff could bring a trespass action to recover lost
profit from the date of his unopposed entry to the date
of the tenant's departure.  Id. at 37.  Possession was
never an issue in Burke.  The question was the tenant's

-13-

duty to pay use and occupancy to the mortgagee. No

eviction or actual dispossession was ever required.

Id. See also Northampton Paper Mills v. Ames, 8 Metc.

(49 Mass.) 1 (1844), discussed infra at p. 20.

Significantly, in not a single reported Massachu-

setts case which we have found has a non-possessing

plaintiff recovered possession from a possessing

defendant through a trespass action.

Nor is the Bank's claim of a "continuing" trespass

valid. "A trespass on land may be by a failure of the

actor to leave the land of which the other is in pos-

session, or a part of such land. If the possessor of

the land has consented to the actor's presence on the

land, his failure to leave after the expiration of the

license is a trespass . . . "(Emphasis added). Restate-

ment (Second) of Torts § 158 comment 1 (1965) "A

license excuses acts done by one on land in possession

of another that without the license would constitute a

trespass." Nolan § 31 at 39. Simpson § 1972 at 357. A

lease of land conveys an interest in land. "This is

the distinction between a lease and a license." Base-

ball Publishing Co. v. Bruton, 302 Mass. 54, 55 (1938).

(Cited in Nolan § 31 at 39 and Simpson § 1972 at 357).

There are no licenses involved in the case at bar.

The occupants are possessors, not licensees. They have

the "right of exclusive possession." Stavisky, Land-

-14-

lord and Tenant Law, 33 Mass. Practice Series § 41
(1977).[3][4]

Thus the Bank attempts to assert an interest
excluded from the tort of trespass:  a right of posses-
sion -- which it claims to have obtained through fore-
closure and a memorandum of entry -- as opposed to
possession itself.  This mere alleged right is indeed
all it has.  "The mortgagee upon [such] default is
entitled to immediate possession merely in the sense
that upon breach of condition he is entitled to recover
possession of the mortgaged premises by an open and
peaceable entry on such premises or by action, or if
the mortgage contains a power of sale, to foreclose by

sale.  Chamberlain v. James, 294 Mass. 1, 8 (1936),

---

3.  Although how the possessor got possession is imma-
terial, since "possession of land may be acquired by
one who is not by law entitled to it, and thus, as
against another, may not be rightful."  Restatement
(Second) of Torts § 157 (Definition of Possession)
comment b (1965).

4.   The Bank has previously cited 2 foreign cases of
trespassing hospital patients as authority for its
position.  Lucy Webb Hayes Nat. Training School v.
Geoghegan, 281 F.Supp. 116 (D.D.C. 1967) and Jersey
City Medical Center v. Halstead, 404 A.2d 44 (N.J.
Super. 1979).  They are completely distinguishable:
hospital patients are not possessors.   Furthermore,
the Bank cites Nautican Realty Co. v. Nantucket Ship-
yard, Inc., 28 Mass. App. Ct. 902, 903 (1989) for the
proposition that injunctions are available to prevent
voluntary waste.  This case is equally irrelevant since
the case at bar does not involve waste.  (Stip. Par.
12).

Krikorian v. Grafton Co-Operative Bank, 313 Mass. 272,
277 (1942).  It is therefore excluded from within the
scope of the tort.

> B.   The Bank Does Not Have Possession to
>      Give it Standing in Trespass.

> 1.   Possession is *actual* possession.

[A] person who is in possession of land in-
cludes only one who
     (a) is in occupancy of land with intent to
control it, or
     (b) has been but no longer is in occupancy
of land with intent to control it, if, after
he has ceased his occupancy without abandoning
the land, no other person has obtained as
stated in Clause (a), or
     (c) has the right as against all persons to
immediate occupancy of land, if no other
person is in possession as stated in Clauses
(a) and (b).

Restatement (Second) of Torts §157 (1965), Nolan § 31
at 37.

The Bank has no control whatsoever over the prem-
ises of which it seeks to recover possession and there-
fore does not "occupy" the premises, Restatement
(Second) of Torts § 157 comment a (1964), as required
in (a).  The Bank never occupied the premises, as
required in (b).  Section (c) is predicated on unoccu-
pied premises, which is not the situation in the case
presented.

Thus, the Bank is not in possession.  To the
contrary, it has stipulated that it must demand posses-
sion from the occupants.  (Stip. Par. 8).  When the

-16-

demand is refused, also as stipulated, (Stip. Par. 9),
the occupant remains in possession -- whether rightful-
ly or not is immaterial to this analysis -- and the
Bank fails to obtain the possession necessary to main-
tain an action in trespass.

>    2.    There is no "constructive" posses-
>          sion in Massachusetts, nor is
>          there constructive possession of
>          another's possession.

This Court has emphatically rejected the theory of
"constructive possession" by a mortgagee. Duquenoy v.
Dorgan, 341 Mass. 28 (1960), Bech v. Cuevas, 404 Mass.
249, 252 (1989).

Bech noted that the early precedents had already
adopted the concept that the plaintiff in a trespass
action had to prove that he had actual possession of
the land. (Citing French, supra, 23 Pick. 104 at 106).
However, "in light of the era's technical and strict
rules of pleading, the Court indulged the fiction that
the landlord was sufficiently 'in possession' as
against a tenant who had committed voluntary waste to
be entitled to sue for damages." Bech, 404 Mass. at
252. (Citing Daniels v. Pond, 21 Pick. 367 (1891) and
Chalmers v. Smith, 152 Mass. 561 (1891)). Bech recog-
nizes that such cases have been "effectively overruled"
by Duquenoy, 341 Mass. 28, which held that "trespass
was not the proper form  of action, because the tenants
'were rightfully in possession of the premises.'" Bech

-17-

at 252.[5]

One <u>cannot</u> "constructively" possess another's <u>actual</u> possession. "[T]his fiction of constructive possession has no application when another is in actual possession." Prosser § 13 at 77 n. 99.

The Bank cannot lay claim to constructive possession of its mortgagors' or tenants' properties.

### 3. The Bank obtains no possession by its claimed "entry" because entry is not effective when it is opposed.

The Bank claims to have made "entry" pursuant to G.L. c. 244 § 1 by recording a memorandum of entry. (Stip. Par. 4). However, the mere recording of the memorandum is not effective to confer possession on the mortgagee if the entry is, as here, opposed.

"Entry" under G.L. c. 244 § 1 is certainly a means

---

5.    Thus it is a significant misperception that "the common law doctrine of trespass must look to statutory law as a source for continuing viability," <u>Boston Rent Equity Board v. Dime Savings Bank</u>, Housing Court 92-CV 00185 (April 7, 1992) at 14, and that "The Supreme Judicial Court *overturned the common law doctrine of trespass quare clausum fregit* in <u>Bech v. Cuevas</u>, 404 Mass. 249 (1980))." <u>Id.</u> at 13.   This Court did not "overturn" an entire tort.   It did exactly the opposite.   <u>Bech</u> *strengthened* trespass quare clausum by eliminating the concept of "constructive" possession.
      Thus, in certifying to the Court of Appeals the question, "1. Does the common law doctrine of trespass due to the actions of the bank in making an entry for the purpose of foreclosure <u>retain its viability</u> . . .?" <u>Boston Rent Equity</u> at 33, the Housing Court assumed the erroneous predicate that something has happened to limit the doctrine of trespass.  In fact, nothing has happened to trespass.

-18-

of foreclosure, <u>Harlow Realty Co. v. Cotter</u>, 284 Mass.
68, 69-70 (1933), although it requires three years to
effect and is therefore usually combined with foreclo-
sure by power of sale.  <u>Id.</u> at 70.  It permits the
mortgagee to bar the equity of redemption by entering
the property <u>"peaceably"</u> and <u>"unopposed"</u>, and occupying
it for three years.  <u>Id.</u>

Under the statute:

> A mortgagee may, after breach of condition
> of a mortgage of land, recover possession
> of the land mortgaged by an open and peace-
> able entry thereon, <u>if not opposed by the</u>
> <u>mortgagor or other person claiming it</u> . . .
> G.L. c. 244 § 1.  (Emphasis added)

It is the plain meaning of the statute that the
entry is ineffective when it is opposed by the posses-
sor.  <u>Araserv v. Bay State Harness</u>, 437 F.Supp. 1083,
1094 (D.Mass. 1977). (Reading G.L. c. 244 § 1, accord-
ing to its plain meaning, as requiring that entry must
be "not opposed by the mortgagor.")

The entry to foreclose "is in its nature an ad-
verse proceeding." <u>Tucker v. Fenno</u>, 110 Mass. 311, 313
(1872) (Citing <u>Erskine v. Townsend</u>, 2 Mass. 493, 496
(1807).  Just as in adverse possession, "[i]t involves
the right to exclude and dispossess the owner of the
equity, and even to treat him as a trespasser."  <u>Id.</u>
Having entered, the mortgagee gains possession and has
standing in trespass.

This makes perfect sense, of course, because one does not take possession of occupied property merely by entering, or recording a memorandum of entry, and declaring himself the new possessor.  The only instance in which this may occur is in the obvious case where the possessor yields possession to the entering party.

This was the case in Northampton Paper Mills v. Ames, 8 Metc. (49 Mass.) 1 (1844).  There, the defendants gave up possession to the entering mortgagee. (The plaintiff's declaration, to the effect that the defendant acceded to the request of the entering mortgagee's agents to "shut up the mill and shut down the gate," Id. at 2-3,  " . . . was proved[.]"  Id. at 7.) The issue in the case was whether, by subsequently objecting to the mortgagee's presence, the defendants rendered his entry ineffective.  The Court correctly ruled that, having given up possession, the defendant could not regain it.  The plaintiffs, having gained possession, had standing in trespass.  And their damages could be assessed from the date of the initial entry because that is when they gained possession and their standing in trespass arose.  Furthermore, the defendants, the former possessors, who stubbornly sought to recover possession after giving it to the entering mortgagee were now adverse possessors.  Id. at 4.  It was open to the plaintiffs to evict them in

-20-

trespass <u>or</u> "consider them as disseizors, and in a writ
of entry evict them." <u>Id</u>. at 7.

Northampton stands squarely for the proposition
that an open and peaceable entry upon the mortgaged
premises will confer a sufficient possession to main-
tain trespass, <u>only if unopposed by the mortgagor or
tenants holding under him</u>: The trial court noted that,
"[I]f said entry was not opposed by the mortgagor or
those acting under or for him; and [that] if the party
in possession knew such entry was about to be made, and
did not oppose it, the entry would be lawful[.]" <u>Id</u>.
at 3. The Court ruled the trial judge's instructions
"in every respect correct." <u>Id.</u> at 7.

The occupiers in the case at bar "have refused to
vacate the premises after receiving the demand for
possession." (Stip. Par. 9.) They have opposed the
entry and the case is therefore opposite to <u>Northamp-
ton</u>. Because the Bank's "entry" is opposed, it is
ineffective. Entry has given the Bank no possession.
Not having possession, it has no standing to bring a
trespass action.

> C. Those Against Whom the Bank Seeks
> Relief Have Committed No Wrongful,
> Intentional Act, Nor Have They Failed
> to Perform a Duty and Are Therefore Not
> Liable in Trespass.

Trespass is an intentional entry upon, a remaining

upon, or a failure to remove things from, the land.[6]
Nolan, § 31 at 40. "Massachusetts cases support this
position." Id. The Restatement similarly recognizes
that there must be an act because "[t]ort liability is
never imposed upon one who has neither done an act nor
failed to perform a duty." Restatement (Second) of
Torts §158 comment f (1965).[7] The act must be an
"intrusion" which invades the exclusive possession of
the possessor's land. Restatement (Second) of Torts
§158 comment c (1965). The actor must enter personal-
ly, Restatement (Second) of Torts § 158 comment h
(1965), or cause the entry of a thing. Id. comment i.
See also, Prosser § 13.

Massachusetts accords. There must be an illegal
entry by the defendant. Inhabitants of Barnstable, 3
Metc. (44 Mass.) 239 at 242, (cited in Nolan § 31 at
36), New England Box, 313 Mass. at 707 (1943). The
entry must be intentional as opposed to negligent.
Titan Holdings v. Keene, 898 F.2d 265, 272 (1st Cir.
1990). (Citing the Restatement (Second) of Torts § 158
(1965) in a construction of New Hampshire trespass

---

6. Under the Restatement and case law, these last two
element have no bearing on the facts of the case at
bar. They deal not with possessors, but with licensees
of possessors.

7. The failure to perform does not enter into this
case because it is not the possessor, but his licensee
who may be under a duty.

law).  "A trespass requires an affirmative, voluntary
act upon the part of a wrongdoer and in that respect
differs from negligence." United Electric Light Co. v.
Deliso Construction Co., 315 Mass. 313, 318 (1943).

Furthermore, it is fundamental Anglo-American
property law, unmodified in Massachusetts, that a
holdover, whether mortgagor or tenant, whose original
entry upon the land was lawful, has not wrongfully
entered, is -- at the very least -- a tenant at suffer-
ance and, therefore, not a trespasser. Lash v. Ames,
171 Mass. 487, 490 (1898).  ("The tenancy at will of
the plaintiff was terminated by the alienation of the
land to the defendant; and he became a mere tenant at
sufferance, and was not entitled to notice to quit."
[Citations omitted]).  Araserv v. Bay State Harness,
437 F.Supp. 1083, 1093 (D.Mass. 1977) (citing Palmer v.
Fowley, 71 Mass. 545, 548-549 (1856)), Bennett v. Co-
nant, 64 Mass. 163, 166 (1852), Ellis v. Drake, 90
Mass. 161 (1864), Cunningham v. Davis, 175 Mass. 213,
222 (1900). An action in trespass cannot be brought
against such a person, Rising v. Stannard, 17 Mass.
282, 288 (1821), because he is not a trespasser, Ever-
ett v. Canton, 303 Mass. 166, 169 (1939).  In fact, he
is a "licensee if only a bare one," King v. G&M Realty,
373 Mass. 658, 664 (1977).

At common law one who enters lawfully upon the

-23-

land cannot trespass, since he was once in lawful
title, and is <u>presumed</u> lawfully in possession, and
therefore a tenant at sufferance, against whom <u>no</u>
<u>action of trespass may lie</u>.

> But if the tenant continueth possession, he is
> tenant at sufferance . . . [the landlord]
> cannot maintain an action of trespass against
> the tenant by sufferance, as he might against
> a stranger; and the reason is, because the
> tenant being once in by a lawful title, the
> law (which presumes no wrong in any man) will
> suppose him to continue upon a title equally
> lawful . . ."

2 W. Blackstone, Commentaries *150.[8]  <u>See</u> Park, Real
Estate Law, 28A Mass Practice § 624 (1991).  Such a
person has disseised no one, 2 Walsh, Commentaries on
the Laws of Real Property § 155, at 179 (1947).[9]

There has been no act on the part of the occupants
whom the Bank seeks to evict in trespass.  In fact, the
Bank has stipulated that at the time of foreclosure the

---

8.   From this presumption springs the equitable doc-
trine that the *status quo* will particularly be protect-
ed where it involves possession.  <u>See</u> <u>infra</u> at 35.

9.  Significantly, where the Legislature <u>has</u> defined
trespass, it accords precisely with traditional common
law:
    "This section shall not apply to tenants or occu-
pants of residential premises who, having rightfully
entered said premises at the commencement of the tenan-
cy or occupancy, remain therein after such tenancy or
occupancy has been or is alleged to have been terminat-
ed.  <u>The owner or landlord of said premises may recover</u>
<u>possession thereof only through appropriate civil pro-</u>
<u>ceedings</u>."  G.L. c. 266 § 120. (Criminal trespass.)
(Emphasis added).

occupying mortgagors and their tenants had made lawful
entry into the property. (Stip. Par. 5). They have
merely attempted, in vain, to hold onto their homes in
the face of the Bank's efforts to remove them. (Stip.
Par. 12). They have done no affirmative act, inten-
tional or otherwise, which is the threshold requisite
for liability in tort. They have committed no trespass
and no action against them under that tort lies.

II.   THE PRELIMINARY INJUNCTIONS WHICH THE BANK HAS
      OBTAINED TO EVICT OCCUPANTS FROM THEIR HOMES AS
      TRESPASSERS ARE IMPROPER.

      A. The Bank Has no Probability of Success
         on the Merits of its Claims at Trial.

A party requesting preliminary injunctive relief
must demonstrate a probability of success on the
merits. Packaging Industries Group v. Cheney, 380
Mass. 609, 617 (1980). The Bank seeks preliminary
injunctive relief in trespass actions against posses-
sors of property. As discussed above, it states no
claim for trespass to land. It has no probability of
succeeding on the merits at trial. Therefore, the Bank
is not entitled to preliminary relief at equity.

      B.   The Bank Has Adequate Remedies at Law Which
           Prevent its Use of Equitable Relief.

Even if it is held that the Bank may bring an
action in trespass against its mortgagors or their

tenants, the preliminary injunctive relief which it seeks and obtains on an interlocutory basis is independently improper under established principles of equity.

"[A] trespass will not be enjoined if there is what is conceived to be an adequate remedy at law." Dobbs, Remedies, § 5.6, at 348 (1973). A party seeking injunctive relief must demonstrate that without such relief "he will suffer irreparable harm, not capable of remediation by a final judgment in law or equity." Commonwealth v. Mass. CRINC., 392 Mass. 79, 87 (1984).

Where an owner brings a bill in equity to obtain possession of an estate, the bill should be dismissed, since summary process offers him "a plain, adequate and complete remedy at law and the case does not come within the equitable jurisdiction of this court." Weiss v. Levy, 166 Mass. 290, 293 (1866).

One seeking to recover possession through summary process has a "speedy remedy." Serezze v. YWCA of Western Mass., Inc., 30 Mass. App. Ct. 639, 644 (1991). (Holding that G.L. § c. 186 § 14 "does not require a classic tenancy," that tenants must be evicted through judicial process as opposed to self, and that "it is not a characteristic feature of summary process law that the landlord who seeks possession is without speedy remedy." Id. at 642-644).

-26-

Owners such as the Bank have legal recourse to specific summary process rights -- including the right to recover for accrued rent and payment for such use and occupancy as has occured prior to and during the proceeding for rent accrued during the proceeding, pursuant to G.L. 239.  Bond requirements are also provided pursuant to G.L. c. 239 § 5 and 6 and final judgment may issue under that statute.

The Commonwealth does not contend that the provisions of G.L. c. 239 are the only means by which an owner may recover possession of its premises.  For example, if, after default, a mortgagor opposes entry by a mortgagee (i.e., refuses to yield possession peaceably), the mortgagee has the option to bring an action pursuant to G.L. c. 244 §§ 1, 4-5 to obtain a writ of entry to recover possession.  Significantly, Section 4 of the statute expressly provides that such a writ proceeding "shall be conducted like an action for possession."  Therefore, an action for possession under G.L. 244 is probably a "proceeding authorized by law" that is a legitimate alternative, under G.L. c. 184 § 18, to summary process actions to recover possession of premises.

In all events, the Bank has not sought writs of entry.  Given the facts stipulated, a trespass action is not a proceeding authorized by law, because a mort-

-27-

gagee seeking to recover possession of foreclosed property has no standing at law to bring a trespass action.  The Bank's only appropriate remedy is pursuant to the provisions of G.L. c. 239.  Its remedy is clear. No equitable relief should be made available to it and it must be prohibited from seeking to recover posses- sion of residential premises through interlocutory injunctions.

The summary process statute, G.L. c. 239, and the Uniform Summary Process Rules, evidence the General Court's clear intent that possession of residential dwellings be recovered through a carefully-constructed procedure which invokes vigilant judicial supervision in situations where fundamental rights to home and shelter are uniquely and commonly susceptible to abuse.[10]

Summary process procedure is a comprehensive framework of fundamental and procedural rights which the General Court has mandated for those threatened with eviction from home and shelter.  It is a balanced statutory remedy, "an almost complete civil proceeding," Shea v. Neponset Marine & Sportfishing

---

10.  Judicial protection of the sanctity of the home is a basic tenet of our law. The home is "at the center of those property interests historically sought to be protected by due process."  O'Bannon v. Town Court Nursing Center, 447 U.S. 773, 792, n. 2 (1980) (Black- mun, J., concurring).

Inc., 14 Mass. App. Ct. 121, 127 (1982), designed to afford occupants often unsophisticated in the law and without resources with reasonable means through which to assert their rights and defenses.

In pursuit of its end, the General Court has applied "the extensive changes through case law in the legal relationship between tenant and landlord and a host of legislative enactments providing tenants with new rights and remedies." Uniform Summary Process Rule 1, comment (1991). The need for the summary process rules has arisen because "[t]hese changes have made the legality of possession an often difficult and complex judicial question." Id. (Emphasis added.)

This "difficult and complex judicial question" -- i.e., who may occupy the residential premises, with nothing less than home and shelter hanging in the balance -- is to be resolved by full, fair adjudication of the rights and defenses of the parties. To secure such adjudication, the General Court has guaranteed to owner and occupier alike a panoply of constitutional, substantive and procedural rights, including: Jury Trial (Uniform Summary Process Rule 8); Discovery (Rule 7), Counterclaim (Rule 5); Pretrial and Other Motions (Rule 6); Equitable Relief (Rule 9); Relief from Judgment (Rule 11); Appeal (Rule 12).

The Commonwealth contends that these rights cannot

be abrogated through equitable relief at a mortgagee's
mere election, and often on an order of short notice.
The Legislature did not intend such a pernicious
choice. To thus interpret G.L. c. 239, permitting its
circumvention at a party's whim, implies a barren act,
which intent this Court should not impute to the Legis-
lature, Insurance Rating Board v. Commissioner of
Insurance, 356 Mass. 184, 189, (1969).

Such an interpretation frustrates the obvious
purpose of the statute, see, Bloom v. City of Worces-
ter, 363 Mass. 136, 155 (1972). The Court should not
conclude an irrational intent, Commonwealth v. Bosquet,
407 Mass. 854, 859 (1990), but apply common sense in
its interpretation, Id.

The summary process statute's purpose is to create
a framework of substantive rights and procedures, not a
mere electable remedy invocable at a mortgagee's or
landlord's whim. This would subvert the General
Court's clear intent "to mitigate hardships to tenants
while protecting adequately the rights of the owner."
Opinion of the Justices, 321 Mass. 772, 774 (1947),
Grace v. Brookline, 379 Mass. 43, 54 (1979).

By its practices, the Bank subjects residential
occupants of its foreclosed properties to the arcane
proceedings of an equity court, often on short notice
necessitating pro se appearances, there to defend their

-30-

fundamental rights to home and shelter, stripped of the
procedural and constitutional guarantees granted them
by the Legislature. This is the opposite of the Gener-
al Court's intent that a complete proceeding determine
a Commonwealth resident's right to possession of his or
her home.

> C. Equity Cannot Deprive A Party of A Jury Trial
> Where Such an Entitlement Has Been Granted by
> the General Court.

This Court has concluded that the legislative
intent of summary process procedures was to provide a
right to trial by jury. Nalbandian v. Patrizzi, 369
Mass. 477, 478 (1976). See, Lawless-Mawhinney v.
Mawhinney, 21 Mass. App. Ct. 738, 742 (1986). "[T]he
power to grant a jury trial reposes in the Legislature
which can confer a right to a jury trial in connection
with a newly recognized cause of action." Nei v.
Burley, 388 Mass. 307, 312 (1983).

Where there is a right to trial by jury, a party
cannot be deprived of that right merely because the
case is cognizable in a court of equity. Stockbridge
v. Mixer, 215 Mass. 415, 418 (1913). Nor may a party
who has not voluntarily selected equity be haled into
an equity court and compelled to surrender its right to
a jury trial where that right exists, Matsushita Elec-
tric Corp. of America v. Sonus Corp., 362 Mass. 246,
252 (1972).

"In all controversies which are within the pur-
view of [Article XV of the Declaration of Rights], the
'method of procedure' of a trial by jury must be held
sacred, whatever the other forms of procedure may be."
Powers v. Raymond, 137 Mass. 483, 486 (1884). (Empha-
sis added). "The essence of that right is that contro-
verted facts shall be decided by the jury. Each party
must have on proper demand at least one fair opportuni-
ty to present to the jury the evidence which raises a
disputed issue of fact." Farnham v. Lenox Motor Car
Co., 229 Mass. 478, 481 (1918), see Commonwealth v.
Belino, 320 Mass. 635, 639 (1947).

A right to jury trial has been conferred upon
landlords, tenants, mortgagees and mortgagors, among
others, through Rule 8 of the Uniform Summary Process
Rules as promulgated through G.L. c. 239.[11]   That
right is determined not by the cause of action, but by
the form of relief sought.  Where a case contains
issues of fact, parties to whom jury trials have been

_____

11.   In pertinent part:
      "Jury trials are available in summary process
actions in the Superior Court Department . . . and in
the Housing Court Department [also on appeal from the
District Court or Boston Municipal Court
Departments] . . ."
      "Determination of the issues in which jury trial
is available and the procedures therefore are governed
by Mass. R. Civ. P. 38, adopted by reference in this
rule."  Uniform Summary Process Rule 8, comment.

granted by the General Court cannot be deprived of a
jury to determine those fact issues.

Because the General Court has exercised its ple-
nary, constitutional power to grant trial by jury to
all residential dwellers, landlords and mortgagees in
the Commonwealth through G.L. c. 239, and because, to
the Attorney General's knowledge, no occupants have
"voluntarily selected" equitable proceedings at which
to vindicate his or her rights, <u>Matsushita</u>, 362 Mass.
at 246, no court of equity -- indeed no exercise of <u>any</u>
power -- may deny such a trial.

Preliminary injunctions which in effect determine
the ultimate issue in these cases on an interlocutory
basis, (i.e., possession of the premises, <u>see</u> discus-
sion, <u>infra</u>, at p. 37) deprive the occupant of the
opportunity to present the "issues of fact" contained
in his "case" to a jury.  Thus, the Bank must be en-
joined from proceeding at equity to deprive occupants
of this basic right as guaranteed by the General Court
through Article XV of the Declaration of Rights.

D.  Injunctions Will Not Transfer Possession.

"[E]quity does not undertake to supply means by
which one who already has the title can dislodge a
wrongful possessor . . . It is not the purpose of
equity to try titles to real estate and put one party
out of possession and another in." <u>Glickman v. Kastel</u>,

-33-

323 Mass. 148, 149-150 (1948) (Qua, C.J.).

"It is axiomatic in equity jurisprudence that
[an injunction] cannot be pursued merely to try title
or merely to transfer possession of real property from
the defendant to the plaintiff."  Annotation, <u>Remedy of
Tenant Against Stranger Wrongfully Interfering With His
Possession</u>, 12 A.L.R. 2d 1192, 1201 (1949), (citing,
<u>inter alia</u>, <u>Weiss v. Levy</u>, 166 Mass. 290, 293 (1896),
"For a court of equity to disturb the <u>status quo</u> by
dispossessing before trial would have been impermissi-
ble 'meddling with freehold.'"  Leubsdorf, <u>The Standard
for Preliminary Injunctions</u>, 91 Harv. L. Rev. 525, 534
(1978). (Hereafter, "Injunctions").

"There is not and has never been any equity in a
bill requesting an injunction to recover possession of
land," <u>Glickman</u>, 323 Mass. 150, "[P]laintiffs in such
cases must resort to the ordinary remedies for the
recovery of the possession of land." <u>Id</u>.  "[E]quity
will not transfer land by preliminary injunction."
Dobbs, Remedies, § 5.6, at 352 (1973).  Furthermore,
there is no equity for a foreclosing mortgagee to
regain possession because right to present possession
"is the peculiar function of the summary remedy provid-
ed by" the statute.  <u>Edwards v. Columbia
Amusement Company</u>, 215 Mass. 125, 128 (1913).

Because equity is unavailable in such cases, a

-34-

bill in equity should be dismissed where a landlord
attempts recovery of possession, since the appropriate
remedy is summary process. Weiss, 166 Mass. at 293.  A
bill in equity should similarly be dismissed where a
mortgagor attempts to recover possession against a
tenant.  Holman v. Bailey, 44 Mass. 55, 57 (1841).

The Bank seeks possession from occupiers and the
same rule applies to the same facts.  Thus, in  Massa-
chusetts, there is no equitable relief available to the
Bank to recover possession of homes to which it pur-
portedly has rightful title, but no actual possession.

> E. A Preliminary Injunction Must Protect the
> *Status Quo Ante Litem*, Particularly of a
> Possessor.

The purpose of the preliminary injunction is to
preserve the *status quo.* The *status quo* is the "last
uncontested status which preceded the pending contro-
versy."  Westinghouse Electric Corp. v. Free Sewing
Machine Co., 256 F.2d 806, 808 (7th Cir. 1958), Note,
Developments in the Law, Injunctions, 78 Harv. L. Rev.
994, 1058 (1965).

The "last uncontested status" here was the Bank as
mortgagee and the occupant as possessor of the prem-
ises.  It is that status which must be preserved pend-
ing determination of the rights of the parties.  The
Bank makes no showing that it is entitled to prelimi-
nary relief which summarily alters the relationship of

-35-

the parties.

Furthermore, the root of the status quo doctrine
is "the protected status of possession under the common
law" irrespective of title or other right to the
property.  Injunctions, 534.  Thus, the law, "which
presumes no wrong in any man," 2 Blackstone, Commen-
taries *150, presumptively protects a possessor until
his or her rights are determined at law in a full and
fair hearing -- not a preliminary injunction proceed-
ing.  See, n.9, supra.

Before issuing relief, it is first and foremost
the judge's charge to preserve "a state of affairs such
that after the full trial, a meaningful decision may be
rendered for either party."  Packaging Industries, 380
Mass. at 609.  "Since preliminary injunctions issue on
the basis of rudimentary hearings, the preliminary
injunction standard should aim to minimize the probable
irreparable loss of rights caused by errors incident to
hasty decisions."  Injunctions, 540.

The Bank's preliminary injunctions do not preserve
the status quo.  They reverse it.  They put the posses-
sor -- whose conduct is presumed rightful at law -- out
of possession.  The preliminary relief they obtain is
therefore obnoxious to the ancient virtue of possession
and an inappropriate use of equity.

-36-

F.   A Preliminary Injunction Cannot Grant Final
     Relief.

Of course, the interlocutory relief the Bank will
continue to seek and obtain if not enjoined is anything
but "preliminary."  It results in permanent eviction.
A single blow of the Bank's "equity" (i) vitiates
occupants' rights, (ii) evicts the resident and (iii)
obviates trial by jury.

But a preliminary injunction must be "prelimi-
nary." It cannot go so far as to relieve a party of its
"burden of proving anything at trial." In the Matter of
McKnight, 406 Mass. 787, 792-793 (1990).  A court which
grants such relief "effectively render[s] a final
determination of rights based on the evidence presented
at the expedited preliminary injunction hearing." Id.

The Bank commences an action at law, in tort, for
trespass.  (Stip. Par. 10).  Within that legal action
it seeks and obtains interlocutory, equitable relief
which disposes of the possessory aspects of the case
before tort damages may be determined.

Its use of "preliminary" injunctions to obtain
final relief, i.e., eviction of the occupant, is an
invidiously cynical use of equity jurisprudence and an
impermissible method of recovering possession of resi-
dential property from those who live in it.

-37-

G.   Because the Balance of Harms Overwhelmingly
     Favors the Occupant in Peril of His Home, He
     May Not Be Preliminarily Enjoined Out of
     That Home and the Bank is Not Entitled to
     Such Equitable Relief.

Although the Commonwealth need not discuss the
balance of harms when its Attorney General requests
injunctive relief, Commonwealth v. Mass. CRINC., 392
Mass. 79, 88 (1984), that balance so decidedly favors
occupants in this case as to require mention.[12]

The Bank's ongoing practice, if not permanently
enjoined, will result in the certain continued eviction
of residents from their homes before full determination
of their rights.  On the other hand, if enjoined, the
Bank will lose nothing.  It is entitled to recovery of
any reasonable payments for use and occupancy which
accrues during the pendency of the action and appeal.
G.L. c. 239 § 2, Kargman v. Dustin, 5 Mass. App. Ct.
101, 109, 112 (1977), Jinwala v. Bizzaro, 24 Mass. App.
Ct. 1, 7 n.4 (1987).  The Bank's alleged injuries are
pecuniary, and in many instances self-generated because

---

12.   The Commonwealth asserts that such harms as may
inhere in disputes over possession of property have
been legislatively balanced in the summary process
statute.  This Court has already found such balance in
G.L. 239, which "mitigates hardships to tenants and
protects adequately the rights of the owner."  Grace,
379 Mass. at 54, Opinion of the Justices, 321 Mass. at
774.  The balance of harms, therefore, cannot favor the
Bank because its interests are adequately protected in
summary process.  It is threatened with no greater harm
than any owner seeking recovery of possession from any
occupier.

it uniformly refuses to accept any tender of payment.
(Stip. Par. 4).  Its remedies are monetary judgments.
It will therefore suffer no irreparable harm if stayed
from its conduct.

The Commonwealth is aware of the proposition that
"land is unique and [that] money is an inadequate
substitute."  Were it land the Bank seeks, this venera-
ble tenet might apply.  But the Bank wants money, not
land. It does not wish to be a landlord.  This is
precisely why it refuses the tenders of payment from
its tenants.  The Bank can hardly assert the uniqueness
of land of which it is attempting to rid itself.  Land
is indeed unique to one whose pleas for the right to
continue living in his own home fall on deaf ears; it
is hardly unique to a bank-mortgagee for whom space is
an entirely fungible commodity, more valuable empty
than occupied.  Its "uniqueness" claim is disingenuous.

Because the balance of harms cuts decidedly in
favor of the occupants, the Bank is not entitled to
preliminary injunctions to recover the premises.
Because of the public harm the Bank does to citizens of
the Commonwealth through this misuse of equity, it must
be permanently enjoined from its mischief.

III.   THE BANK'S PRACTICE OF EVICTING OCCUPANTS FROM
       THEIR HOMES BY PRELIMINARY INJUNCTIONS OBTAINED
       IN TRESPASS ACTIONS SHOULD BE DECLARED UNLAWFUL
       AND ENJOINED.

The Commonwealth, in Prayers 1 and 3 of its Com-
plaint, seeks declaratory and injunctive relief which
would prohibit the Bank from engaging in practices that
are inappropriate means of recovering possession under
the circumstances presented.  Rather, when the Bank
forecloses on property and the occupant opposes entry,
the Commonwealth asserts that the necessary and appro-
priate forum in which possession, and the retention or
recovery thereof, must be determined is through summary
process procedures as set forth in G.L. c. 239.

The Bank contends, however, that this result is
pyrrhic and creates costly and undue delays against its
"undeniable" right to possession.  However, the Bank
confuses the issue of _right_ to possession and the
process by which such that right is vindicated.  Even
assuming the Bank has a right to possession,[13] no one
would contend that it has unlimited means through which
to exercise that right.  Self-help, for example, would
clearly be impermissible.  There are rules for the
manner in which one proceeds to evict another from his

---

13.  A fact the Commonwealth need not and does not
concede.  This case does not involve the right to
possession, but only the manner, forum and procedure
through which that right, where such right exists,
should be determined.

-40-

home.  These legislatively created procedures cannot be
ignored, and a more convenient, though impermissible,
alternative elected, at the "option" of the indisputa-
bly more powerful party.

The procedures required are far from meaningless,
even under these circumstances.  The Bank accepts that
after foreclosure for sale the mortgagor and those
holding under him are at least tenants at
sufferance.[14]  As such they are entitled to minimum,
yet significant, rights that might be lost without
access to summary process.  These include but are not
limited to claims and defenses against the Bank based
on the condition of the premises as provided in G.L.
239 § 8A and stays of proceedings at the court's dis-
cretion pursuant to G.L. c. 239 § 9.  It is clear why
the Bank wishes to avoid such implications.  It is
equally clear, though, that affected residents would be
loathe to give up these rights.

Similarly, it is far from certain that there are

---

14.  They arguably may be more, however, as a result of
contractual or statutory rights conferred.  For the
purposes of this case, the Commonwealth is satisfied
that, even as tenants at sufferance, they are entitled
to summary process procedures, just as any other tenant
whose tenancy allegedly has been terminated.  By not
arguing for such higher status or greater rights as may
exist for such persons, the Commonwealth does not
intend to foreclose its or any others' ability to make
such arguments at other times in appropriate cases.

no legal or factual matters to be determined here, even
when the only rights at issue are limited to those
conferred upon occupants by virtue of their pre-fore-
closure status as mortgagors or post-mortgage status of
mortgagors.  There may be challenges to the underlying
loan transactions or the Bank's lending practices that
survive the foreclosure.  The tenants or occupants may
have rent subsidy or rent control rights that statuto-
rily supersede those of the mortgagee.  Certain tenan-
cies or tenant rights may be extended as a matter of
law by G.L. c. 186 § 13 or other legislative provi-
sions.

Such issues need not be determined here.  But
neither should they be decided on an interlocutory
basis in a trespass action.  Instead they should be
fully aired in a summary process proceeding where all
legal rights can be protected and a complete factual
record may be created and preserved.

Furthermore, the Bank contends that the fact that
the Superior Court has, in most of the cases thus far,
granted injunctive relief for trespass confirms and
legitimizes its activities.  This is mere bootstrapping
of an argument.  First, this Court is obviously not
bound by the decisions of the trial court, but rather
may independently determine the law based on the facts
presented.

-42-

Second, it is not clear from the available records
how many of these cases were opposed with benefit of
competent counsel.  This is precisely the hazard which
arises from the Bank's tactics.  Unsophisticated,
inexperienced occupants, faced with short orders of
notice which give them little time to find and engage
an attorney, are ill-prepared to defend their homes at
preliminary injunction hearings.

Third, the bases for the Superior Court's deci-
sions are not known in most cases.  Very few written
orders or opinions have been issued and most are curso-
ry.  The Commonwealth obviously believes that those
written orders and opinions premised upon erroneous
conclusions of law are of little or no precedential
value.

Finally, the Bank argues that the relief the
Commonwealth seeks is improper because it enjoins
litigation or otherwise interferes with the appeals
procedure in other extant cases.  The Commonwealth
seeks not to enjoin litigation but to obtain a ruling
on the proper manner in which it should proceed.  In
all events, this Court certainly has the jurisdiction
and power to hear the Commonwealth's complaint and
grant relief under its superintendence power, G.L. c.
211 § 3, under the Declaratory Judgment Act, G.L. c.
231A and under its equitable jurisdiction, G.L. c. 214

-43-

§ 1.  The injunctive relief requested is directed only at the Bank's future actions and not those of the trial courts themselves, whether past or future.  The orders are also intended to provide effective notice of the Court's rulings to those mortgagors and tenants currently subjects of the Bank's trespass eviction procedures so that they may be informed of their rights and afforded the opportunity to mount an adequate defense.

Both the mortgagors and their tenants are entitled to this relief.  Although their interests differ in many respects, their rights herein stem from the same source.  Each lawfully occupied the premises prior to foreclosure and retained possession after the Bank attempted to foreclose by entry.  Having thus retained possession, neither group can be construed as trespassers.  Nor is preliminary injunctive relief available in trespass actions to dispossess them.

The tenants present a compelling situation.  They did not default on a mortgage loan or create any just cause for their evictions.  They are the innocent victims of their landlords' legal and financial problems.  Yet the Bank would want this Court to hold that these people have the additional burden of losing the rights virtually all other tenants possess.

Tenants under a foreclosed mortgagor should receive no different treatment than other tenants.

-44-

Whether a lease expires by its terms, or a tenancy at will is terminated upon notice, or a tenant is arguably affected by a foreclosure, at the least they all become tenants at sufferance. Such sufferance is extinguished when the owner recovers possession from the holdover by appropriate legal means as established in G.L. c. 184 § 18.

No plausible or acceptable reason exists to distinguish the tenant of the foreclosed mortgagor. His expectations are the same as any other tenant. Similarly, the Bank knows what it is getting into when it lends money secured by residential leasehold property. The law should apply equally. The tenant of the foreclosed mortgagor is entitled to summary process proceedings under these circumstances in order that the possessory rights to the premises he occupies are fully and fairly determined.

Conversely, if this Court determines that an action in trespass lies against mortgagors' tenants, it could conceivably be argued that such an action lies against all tenants at sufferance. Since, by definition, virtually all tenants whom landlords seek to evict by summary process have had their tenancy rights terminated and therefore are tenants at sufferance, the very procedure could then be avoided to the point of extinction. All of the common and statutory rights pro-

-45-

tected by the Legislature in summary process would be
undercut if not entirely vitiated. The very privileges
which the occupants in the case at bar have been denied
-- jury trial, counterclaim, defenses, extensions, etc.
-- would be eliminated in favor of speedy preliminary
injunctions against occupants for purportedly trespass-
ing in their own homes.  The extensive, recent develop-
ment of modern landlord-tenant law would be wiped out
in one mighty, and unfortunate, blow.

Similarly, to allow the Bank standing in common
law trespass opens the tort to all those similarly
situated, i.e., _any_ non-possessor claiming a possessory
right in property held by another.  Trespass would no
longer be an invasion of possession, but a new and
undefined battle over undefined rights in land and
chattels.  The virtue of possession would be extin-
guished.

The extraordinary difficulty that would befall
Massachusetts jurisprudence is not to be contemplated
and could never have been intended.  The Court should
not take the drastic view of the common law urged upon
it by the Bank when it asserts standing in trespass
against those who have not invaded its possession.  The
relief sought by the Commonwealth can and must be
granted.

## V.   CONCLUSION

Under historic and existing Massachusetts law, neither the Bank's mortgagors or tenants of such mortgagors can be deemed trespassers if they oppose the Bank's entry on the property in their possession.  If, as these occupants have, they refuse to surrender possession of the homes they lawfully occupy, they retain that possession.  Nonetheless, the Bank persists in its attempts to have these occupants treated as trespassers.  It continues to seek preliminary injunctive relief which wrongfully disposseses these occupants, driving them from their homes before their rights are properly adjudicated, indeed before anything even approximating a trial on the merits can occur.

The hubris which animates the Bank's "express lane" eviction strategy is perfectly clear.  It believes that its novel approach to tort will accelerate recovery of possession and that it is somehow entitled to this special, expedited status.  All this despite the fact that their result is ultimately obtained by depriving occupants of the rights and privileges afforded them by summary process and other recognized civil eviction procedures intended to protect residents, and at the expense of the very safeguards built into such procedures.

In pursuit of its aims, the Bank has adopted and

-47-

relied upon extraordinary tactics, exacerbated by
unnecessary time constraints, that place individual
occupants at a distinct and unfair disadvantage in
attempting to defend their homes. Yet, when it comes
to determining the fundamental issues involved in such
matters, speed and expedience should be secondary
concerns only. When such speed is achieved, as here,
by means unrecognized at law or equity, those means
must be prohibited.

The Commonwealth does not seek to create an undue
advantage for one side or the other in these disputes.
Both owners and occupiers-in-possession are entitled to
full and fair determinations of the factual and sub-
stantive legal issues presented. A level playing field
exists through summary process, and other appropriate
eviction remedies, through which matters of possession
can, and should, be promptly and efficiently resolved
without jeopardizing the Bank's legitimate financial
interests or chilling the rights of its occupants.

Conversely, the Bank's scheme is an unjustified
and unwarranted intrusion into the constitutional and
common-law rights of Commonwealth citizens. Its ac-
tions should not be abetted, recognized, allowed or
enforced.

-48-

Therefore, the Court should declare the Bank's practice invalid, permanently enjoin its future use and take whatever further steps are necessary and appropriate to reaffirm common law rights to possession of Massachusetts homes.  Only in this way can the Court insure that issues arising from such possession are decided in the fair and proper forum.

THE COMMONWEALTH OF MASSACHUSETTS

SCOTT HARSHBARGER,
ATTORNEY GENERAL

By: _____

STUART T. ROSSMAN
Assistant Attorney General
Chief, Real Estate Section
BBO# 430640
Stephen Dick
131 Tremont Street
Boston MA 02111
(617) 727-3420

April 24, 1992

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Date: 4/24/92 _____

-49-

APPENDIX "A"

Stipulation of Agreed Facts

# Supreme Judicial Court
# for Suffolk County

Civil Action No. 92-121

```
———————————————————————    )
                           )
COMMONWEALTH OF MASSACHUSETTS,  )
                           )
        Plaintiff,         )
                           )
   v.                      )
                           )
DIME SAVINGS BANK OF NEW YORK, FSB, et al.,  )
                           )
        Defendant.         )
———————————————————————    )
```

## STIPULATIONS OF FACT

The parties to this action hereby stipulate that, solely for purposes of determining the legal issues in controversy between them in this action, the following facts may be taken as true and represent all of the facts material to the controversy.

1. The plaintiff is the Commonwealth of Massachusetts, acting by and through the Attorney General of the Commonwealth.

2. The defendant Dime Savings Bank of New York, FSB is a federally chartered savings bank. The defendants Garden Management Co., Inc. and Dime Real Estate Services—Massachusetts, Inc. are wholly-owned subsidiaries of Dime Savings Bank which have, on occasion, held title to mortgages and properties for and on its behalf. As used herein, the defendants are referred to collectively as the "Bank" or "Dime." Dime has previously granted loans secured by mortgages of real property located in the Commonwealth.

3. In all of the cases upon which the present controversy is founded, the mortgagors defaulted in their obligations and the statutory condition was therefore unfulfilled.

4. In all of the cases upon which the present controversy is founded, the Bank recorded memoranda of entry under G. L. (1990 ed.) ch. 244, §§ 1, 2 and

conducted a mortgage foreclosure sale and obtained perfected title to the subject real properties by being the high bidder at the foreclosure sale.

5. At the time of such foreclosures, some of these properties were occupied by the mortgagors, or by tenants of the mortgagors, all of whose entry into the property was lawful at the time it was made.

6. In the case of tenants of the mortgagor, in all of the cases upon which the present controversy is founded, all such tenancies were created after the grant by the mortgagor of the mortgage to the Bank (hereinafter referred to as "post-mortgage" tenants or tenancies). The Bank makes no claim to a right of possession paramount to the right of a *bona fide* tenant of a former mortgagor whose tenancy was created prior to the grant of the mortgage and to which the grant of the mortgage is subject.

7. In all of the cases upon which the present controversy is founded, no provision contained in the mortgage documentation or otherwise, and no other event, conferred any right of continued possession upon the occupants beyond whatever right (if any) they have to continued possession by virtue of their pre-foreclosure status as mortgagors or post-mortgage tenants of mortgagors.

8. After the Bank obtained title to the property by virtue of the foreclosure deed, it sent notices to the occupying former mortgagors and post-mortgage tenants demanding possession of the property.

9. In all of the cases that are the subject of this action, the former mortgagor and/or post-mortgage tenants of the former mortgagor have refused to vacate the premises after receiving the demand for possession.

10. As a result of the continued occupation of the properties by the former mortgagor and/or post-mortgage tenants of the former mortgagor, actions for common law trespass have been commenced by the Bank in the Superior Court. (For reasons not presently material, a couple of these other actions have been brought in other divisions of the Trial Court, but all are hereinafter referred to as the Superior Court actions.)

11. In the Superior Court actions, the Bank has sought preliminary and permanent injunctions against a continuing trespass, and in some of the cases the prayer for preliminary injunctive relief has come on for hearing on so-called "short orders of notice" ordered by the Court. In all of the cases that are

the subject of this action, more than 30 days has passed between the giving of the demand for and the commencement of the legal action.

12. In the Superior Court actions brought against post-mortgage tenants of the former mortgagor, the Bank has not asserted as grounds for recovering possession any wrongdoing by the tenant, but only a claim that, by virtue of the default, entry (as recorded on the memorandum described in ¶ 4), foreclosure and demand for possession, such occupants have become trespassers as against the Bank.

13. The Superior Court has, in most of those cases that have been heard thus far, determined the occupants to be trespassers and granted preliminary or permanent injunctive relief to the Bank.

14. In all of the cases that are the subject of this action, at no time has the Bank sought or accepted (in those cases where it has been tendered) any payments as rent or for use and occupation by the occupants, or taken any other step that might have created a new post-foreclosure tenancy between it and the occupant.

15. The plaintiff contends that the legal procedure by which the defendant must recover possession of residential property from individuals whose original entry upon the premises was lawful is the summary process proceeding, mandated by G. L. (1990 ed.) ch. 239. The Bank contends that it may proceed under ch. 239 or by "such other proceedings authorized by law," which includes suit for an injunction against a continuing trespass, at its option.


Stuart T. Rossman (BBO #430640)
Assistant Attorney General
Chief, Real Estate Section
Office of the Attorney General
131 Tremont Street
Boston, Massachusetts 02111
Telephone: 727-3420

*Attorney for the Plaintiff*

R. K. Gad III (BBO #182160)
Colin J. Zick (BBO #556538)
Ropes & Gray
One International Place
Boston, Massachusetts 0
Telephone: 617-951-7000

*Attorneys for the Defendant*

- 3 -

No. 05928.

COMMONWEALTH OF MASSACHUSETTS,
                Plaintiff,
                    v.
DIME SAVINGS BANK OF NEW YORK, FSB, et al.,
                Defendant.

ON RESERVATION AND REPORT FROM THE
SINGLE JUSTICE OF THE SUPREME
JUDICIAL COURT.

*Brief for the Plaintiffs.*

SUFFOLK COUNTY.

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

In re:  )
)
)     Chapter 7
    R. SUSAN WOODS,     )     Case No. 18-30549-EDK
)
         Debtor     )
)

## ORDER RE:
## EMERGENCY MOTION FOR ORDER FINDING R. SUSAN WOODS IN CONTEMPT OF COURT AND FOR FURTHER RELIEF [DOCKET #284]

WHEREAS, on July 10, 2018, R. Susan Woods (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code"); and

WHEREAS, Joseph B. Collins was appointed as the Chapter 7 trustee (the "Trustee"); and

WHEREAS, on February 14, 2019, the Court issued an Order approving the Trustee's sale of real property located at 70 Russell Street, Hadley, Massachusetts [Docket #260] (the "Sale Order"; the "Russell Street Property"); and

WHEREAS, pursuant to the Sale Order, the Court found that the Russell Street Property is property of the Debtor's bankruptcy estate; and

WHEREAS, the Sale Order permanently enjoined "all persons and entities including, but not limited to, R. Susan Woods . . . asserting against the Russell Street Property . . . such persons' or entities' liens, claims, encumbrances or interests in and to the Russell Street Property"; and

WHEREAS, at a hearing held on February 14, 2019, the Debtor represented that she had taken possession of the Russell Street Property; and

WHEREAS, in his "Emergency Motion to Compel" filed on February 15, 2019 [Docket #266] (the "Motion to Compel"), the Trustee provided copies of electronic mail he had received from the Debtor stating that (i) the Debtor had changed the locks to the Russell Street Property on February 12, 2019 and (ii) the Debtor would continue to occupy the Russell Street Property; and

1

WHEREAS, on February 15, 2019, the Court granted the Motion to Compel by order stating:

> GRANTED. PURSUANT TO 11 U.S.C. 521(a)(3) AND 521(a)(4), THE DEBTOR IS ORDERED TO IMMEDIATELY SURRENDER 70 RUSSELL STREET, HADLEY, MASSACHUSETTS TO THE TRUSTEE AND TO IMMEDIATELY DELIVER ALL KEYS TO 70 RUSSELL STREET, HADLEY, MASSACHUSETTS TO THE TRUSTEE.

[Docket #267] (the "Order to Surrender"); and

WHEREAS, on February 22, 2019, the Trustee filed an "Emergency Motion for Order Finding R. Susan Woods in Contempt of Court and for Further Relief" [Docket #284] (the "Contempt Motion") in which the Trustee represented that the Debtor had failed to deliver working keys to the Russell Street Property and had failed to vacate the Russell Street Property; and

WHEREAS, the Court scheduled an evidentiary hearing on the Contempt Motion for February 26, 2019 at 11:00 a.m. (the "February 26 Contempt Hearing"); and

WHEREAS, based on the Debtor's testimony at the February 26 Contempt Hearing, the Court FINDS that the Debtor continues to occupy the Russell Street Property; and

WHEREAS, based on the Debtor's testimony at the February 26 Contempt Hearing, the Court FINDS that the Debtor changed the locks to the Russell Street Property again on February 15, 2019 and willfully failed and refused to provide working keys to the Russell Street Property to the Trustee; and

WHEREAS, the Debtor's occupation of the Russell Street Property and refusal to provide the Trustee with the current working keys to the property violate (i) the terms of the Sale Order enjoining the Debtor from asserting any interest in the Russell Street Property and (ii) the Order to Surrender requiring the Debtor to immediately surrender the Russell Street Property and all of the keys to all of the locks to the Russell Street Property to the Trustee;[1] and

WHEREAS, the Debtor has appealed both the Sale Order and the Order to Surrender to the United States District Court for the District of Massachusetts, but has not received a stay pending appeal of those Orders; and

WHEREAS, "[a]bsent a stay pending appeal, parties are obligated to comply with court orders . . . whether or not they agree with them. *See Maness v. Meyers*, 419 U.S. 449, 458–59,

---

[1] In addition, the Debtor's continued occupation of the Russell Street Property, as well as the changing of the locks and refusal to provide current working keys to the Trustee, violate 11 U.S.C. § 362(a)(3) (providing that the filing of the petition "operates as a stay, *applicable to all entities*, of -- ... any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate") (emphasis supplied), and run afoul of the Debtor's obligations under 11 U.S.C. § 521(a)(3) to "cooperate with the trustee as necessary to enable to the trustee to perform the trustee's duties under this title" and under 11 U.S.C. § 521(a)(4) to "surrender to the trustee all property of the estate."

2

95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *Acevedo–Garcia v. Vera–Monroig*, 368 F.3d 49, 58 (1st Cir.2004) ('It is well-settled that a party is not free to violate a court order simply because it believes (correctly or not) that the order is invalid.')." *Efron v. Candelario (In re Efron)*, 529 B.R. 396, 412 (B.A.P. 1st Cir. 2015).

WHEREAS, pursuant to 28 U.S.C. § 157(b)(1), this Court has the authority to "enter appropriate orders and judgments" and, pursuant to 11 U.S.C. § 105(a), may "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title"; and

WHEREAS, this Court may issue an order of civil contempt to ensure compliance with its previous Orders and to compensate a harmed party for losses sustained on account of such contempt, *see Eck v. Dodge Chem. Co. (In re Power Recovery Sys., Inc.)*, 950 F.2d 798, 802 (1st Cir. 1991), including an order instructing the United States Marshal Service to evict the Debtor from the Russell Street Property,[2]

NOW, THEREFORE,

(1) the Debtor is ORDERED to appear at a continued hearing on the Contempt Motion on February 28, 2019 at 11:00 a.m. in the Federal Courthouse, Berkshire Courtroom, 300 State Street, Springfield, MA;

(2) the Debtor is ORDERED to vacate the Russell Street Property on or before 4:00 p.m. on February 27, 2019;

(3) the Debtor is ORDERED to deliver to the Trustee, by 4:00 p.m. on February 27, 2019, all of the keys to all of the locks to the Russell Street Property.

Should the Debtor fail to comply with the terms of this Order, the Court will find the Debtor in **civil contempt** of the Sale Order, the Order to Surrender, and this Order and may issue further orders and sanctions including, but not limited to: (1) issuing monetary sanctions, (2) issuing a capias to the United States Marshal Service seeking to secure the Debtor's attendance at the hearing; (3) issuing an order instructing the United States Marshal Service to evict the Debtor from the Russell Street Property; and (4) ordering the Debtor incarcerated until she complies with the terms of this Order and/or any future award for monetary sanctions.

DATED: February 26, 2019                By the Court,

*Elizabeth D. Katz*

Elizabeth D. Katz
United States Bankruptcy Judge

---

[2] *See In re Hardy*, 2017 WL 2491497, *6-7 (Bankr. D.C. June 8, 2017); *Scarver v. Ellis (In re McKeever)*, 567 B.R. 652, 664-65 (Bankr. N.D. Ga. 2017); *Jensen-Carter v. Hedback (In re Stephens)*, 2012 WL 1899716, *3-4 (D. Minn. May 24, 2012); *In re Searles*, 70 B.R. 266, 272-273 (D.R.I. 1987).

3

Case 19-03010   Doc 2   Filed 03/08/19   Entered 03/08/19 13:32:40   Desc Main
Case 3:19-cv-30029-MGM   Document 2   Filed 03/29/19   Page 149 of 156
Document   Page 149 of 156

*EXHIBIT 9*

## Affidavit of R. Susan Woods
### Property Address:  70 Russell Street Hadley, Massachusetts

I, R. Susan Woods, being duly sworn, do hereby depose and swear of my own personal knowledge as follows:

1. On May 4, 2005, I purchased my property located at 70 Russell Street in Hadley, MA, 01035.
2. On or around April 1, 2017, my tenants Carlos, Jose, and Jonathan Murphy-Martinez moved into the premises.
3. The lease to them was made on January 15, 2017, while the building was still occupied by other tenants.
4. I leased possession of the premises to the aforementioned tenants, only to them, and not to any others.
5. The tenants agreed to move out of the premises on or before March 1, 2019 by way of contract dated December 28, 2018, made between them and Joseph Collins.
6. At no time did I execute any power of attorney to the tenants, and the tenants had no grant of authority of any kind over my possession.
7. On the afternoon of Tuesday, February 12, 2019, the tenants vacated the premises, left in a broom clean condition, free of any and all furnishings, food stuffs, and personal possessions of theirs.
8. As the tenants exited the building, I entered the building, and changed the locks.
9. I have continued to possess the premises since Tuesday, February 12, 2019.
10. My possession of the premises has been continuous since I purchased it on May 4, 2005, by myself and/or by way of lease to tenants, various and several over the years.
11. I have slept at the 70 Russell Street premises in the evenings since Tuesday, February 12, 2019.
12. No Summary Process case has commenced against me concerning the 70 Russell Street property since the tenants relinquished it in a broom clean condition on the afternoon of Tuesday, February 12, 2019.
13. I have complied with the court orders I could comply with without relinquishing my possessory interests.

Signed: _____

Printed Name: R. Susan Woods

February 26, 2019

**Property Address: 70 Russell Street, Hadley, MA 01035**

## COMMONWEALTH OF MASSACHUSETTS

Hampshire, ss.

On this 26th day of February, 2019, before me, the undersigned notary public, personally appeared R. Susan Woods who proved to me through ___X___ (mark an X) satisfactory evidence of identification, which was a Massachusetts Driver's License or State ID, who signed the preceding document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of her knowledge and belief.

Notary Public

Printed Name: John C. Miller

My Commission Expires: 11/23/2023

EXHIBIT 10

Bk: 8247 Pg: 238 Page: 1 of 3
Recorded: 05/04/2005 02:37 PM

**KNOW ALL MEN BY THESE PRESENTS, THAT**

We, STEPHEN H. ARMSTRONG, JEANNE H. ARMSTRONG, JOHN R. MULLIN and

JUDITH A. MULLIN, d/b/a ARMSTRONG MULLIN REALTY PARTNERSHIP

of P.O. Box 317, Hadley, Hampshire County, Massachusetts

for consideration paid, and in full consideration of

ONE HUNDRED SEVENTY THOUSAND AND 00/100 ($170,000.00) DOLLARS

grant to R. SUSAN WOODS

of P.O. Box 160, Hadley, Hampshire County, Massachusetts

with **WARRANTY COVENANTS**

**THE PREMISES KNOWN AS 70 RUSSELL STREET, HADLEY, HAMPSHIRE COUNTY, MASSACHUSETTS, THE LEGAL DESCRIPTION FOR WHICH APPEARS ON THE ATTACHED EXHIBIT A.**

Being the same premises conveyed to Jeanne H. Armstrong, Stephen H. Armstrong, John R. Mullin and Judith A. Mullin d/b/a Armstrong Mullin Realty Partnership by deed of Tacy A. Malandrinos and Daniel H. Stearns dated December 19, 1986 and recorded with the Hampshire Registry of Deeds in Book 2872, Page 184.

WITNESS our hands and seals this **2** day of March, 2005. *April*

_____
STEPHEN H. ARMSTRONG

_____
JEANNE H. ARMSTRONG

_____
JOHN R. MULLIN

_____
JUDITH A. MULLIN

70 Russell Street
Hadley, Mass. 01035

The Commonwealth of Massachusetts
FRANKLIN ss.
(county)
Date 4/5/05
Then personally appeared the above named
Judith A. and John R. Mullin
and acknowledged the foregoing instrument
to be his/her free act and deed, before me.

Martha J. Martin
MARTHA J. MARTIN Notary Public
My Commission Expires Aug. 14, 2011

**COMMONWEALTH OF MASSACHUSETTS**
**COUNTY OF HAMPSHIRE**

On this **30** day of March, 2005, before me, the undersigned notary public, personally appeared JEANNE H. ARMSTRONG, proved to me through satisfactory evidence of identification, being personal knowledge of identity, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

RICHARD F. MANNING
NOTARY PUBLIC, MASSACHUSETTS
MY COMMISSION EXPIRES NOVEMBER 27, 2009

_____
Alfred J. Albano, Jr., Notary Public
My Commission Expires: October 6, 2006

GRAHAM & ALBANO, P.C.
100 RUSSELL STREET
P.O. BOX 377
HADLEY, MA 01035-0377
AREA CODE 413
586-5055
532-3387
FAX: 532-0836

RETURN TO:
ATTORNEY JOHN B. HOWARD
4 MARKET ST.
NORTHAMPTON, MASSACHUSETTS 01060
413-584-3805

MASSACHUSETTS EXCISE TAX
Hampshire District ROD #13 001
Date: 05/04/2005 02:37 PM
ctrl# 012193 20801 Doc# 00010480
Fee: $775.20 Cons: $170,000.00

## COMMONWEALTH OF MASSACHUSETTS
## COUNTY OF HAMPSHIRE

On this  2  day of  April  , 2005, before me, the undersigned notary public, personally appeared STEPHEN H. ARMSTRONG, proved to me through satisfactory evidence of identification, being driver's license - personal knowledge of identity, to be the person whose name IS signed on the preceding or attached document, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

Notary Public

My Commission Expires:

RICHARD F. MANNING
NOTARY PUBLIC, MASSACHUSETTS
MY COMMISSION EXPIRES NOVEMBER 27, 2009

## Exhibit A

The land in Hadley, Hampshire County, Massachusetts, with the buildings thereon, situated on the northerly side of Russell Street, also known as Route 9, in the Town of Hadley, Massachusetts, more particularly bounded and described as follows:

Beginning at the southwesterly corner of the premises herein described which is the southeasterly corner of Lot 10 shown on a Plan of Lots entitled "Plan of Building Lots in Hadley, Massachusetts Belonging to Messers, Crosby & Coolidge" recorded in the Hampshire County Registry of Deeds in Book 531, Page 310 and thence running northerly along the easterly line of Ryan's land 275.1 feet to land of the Boston & Maine Railroad; thence easterly 75.2 feet to a corner now established; thence southerly 278.5 feet to a corner which is 75 feet from the first mentioned corner; thence westerly along said Russell Street 75 feet to the point of beginning.

SUBJECT TO an easement to the Town of Hadley to lay and maintain sewer pipes dated November 18, 1974, and recorded with the Hampshire County Registry of Deeds in Book 1808, Page 103.

SUBJECT TO an easement to construct a sidewalk dated May 24, 1949, recorded with the Hampshire County Registry of Deeds in Book 1066, Page 429.

SUBJECT TO an easement to Amherst Gas Co. to maintain gas lines dated May 24, 1915, and recorded with the Hampshire County Registry of Deeds in Book 712, Page 533.

SUBJECT TO a taking by the Department of Highways, acting on behalf of the Commonwealth of Massachusetts dated June 12, 2002 and recorded in the Hampshire County Registry of Deeds Book 6685, Page 52.

ATTEST: HAMPSHIRE, _Marianne L. Donohue_ , REGISTER

MARIANNE L. DONOHUE

EXHIBIT 11

**True Value.**

Foster Farrar
145 King St.
Northampton, Ma 01060
(413) 584-8811

Transaction#: C161124
Associate: KEVIN
Date: 02/12/2019      Time: 03:57:11 PM

*** SALE ***

Bill To:
Our Valued Customer

RE-KEYING

    3.00 EACH @  $12.00 T          $36.00
SINGLE CUT KEY

    3.00 EACH @   $2.29 T           $6.87

                Subtotal: $42.87
        6.25% - State Tax: $2.68
                    TOTAL: $45.55

                    DEBIT: $45.55
                    CHANGE: $0.00

BUYER AGREES TO PAY TOTAL AMOUNT ABOVE
ACCORDING TO CARDHOLDER'S AGREEMENT
WITH ISSUER

US DEBIT ***********2705 0
APPROVAL: 00
EXP: **/**
AID: A0000000980840
TC 6E59BC3E22675EBC 40
TERMINAL: 88820577 8000048000
VALIDATION: ONLINE PIN
PAYMENT SERVICE: 05
PIN VERIFIED
NAME:
AMT: $45.55
--------------------------------

  Refunds require original reciept
  Must be in original pkg,resalable
  No refunds-spec orders,clearance



C 161124

**True Value.**

Foster Farrar
145 King St.
Northampton, Ma 01060
(413) 584-8811

Transaction#: AA127631
Associate: Lon
Date: 02/15/2019      Time: 05:58:18 PM

*** SALE ***

Bill To:
Our Valued Customer

RE-KEYING -
    3.00 EACH @  $12.00 T          $36.00

                Subtotal: $36.00
        6.25% - State Tax: $2.25
                    TOTAL: $38.25

                    DEBIT: $38.25
                    CHANGE: $0.00

BUYER AGREES TO PAY TOTAL AMOUNT ABOVE
ACCORDING TO CARDHOLDER'S AGREEMENT
WITH ISSUER

US DEBIT ***********2705 0
APPROVAL:331219
EXP: **/**
AID: A0000000980840
TC 7FEBD5F85BCB7978 40
TERMINAL: 88820579 8000048000
VALIDATION: ONLINE PIN
PAYMENT SERVICE: 05
PIN VERIFIED
NAME: WOODS/R S
AMT: $38.25
--------------------------------

  Refunds require original reciept
  Must be in original pkg,resalable
  No refunds-spec orders,clearance



A A 1 2 7 6 3 1

Case 19-03010 Doc 2 Filed 03/08/19 Entered 03/08/19 13:32:40 Desc Main
Case 3:19-cv-30029-MGM Document 2 Filed 03/04/19 Page 155 of 156
Document Page 155 of 156

Exhibit "A" 12



**Hilltown** Community
**Health Center**

Worthington Health Center • 58 Old North Road • Worthington, MA 01098 • (413) 238-5511 • Fax (413) 238-5570
Huntington Health Center • 73 Russell Road • Huntington, MA 01050 • (413) 667-3009 • Fax (413) 667-8746    Hilltown Social Services • 9 Russell
Road • Huntington, MA 01050 (413) 667-2203 • Fax (413) 667-2225    Gateway School-Based Health Center • 12 Littleville Road • Huntington,
MA 01050 • (413) 667-0142 • Fax (413) 667-0145   "This institution is an equal opportunity provider."

February 16, '2018

Hon. Robert G. Fields
Housing Court of Massachusetts, Western Division

Re: REBECCA SUSAN WOODS          DOB:
PO BOX 160
HADLEY MA 01035

Dear Sir,

I am the primary care provider for Ms. R. Susan Woods. She suffers from infiltrating ductal carcinoma of the right breast. She has been tentatively diagnosed with limbic encephalitis, a paraneoplastic syndrome that causes mood changes, memory and cognitive impairments, and focal seizures.

As a solo homeowner, Ms. Woods has been forced to put definitive cancer care on hold while she fights her foreclosure and eviction. These delays in treatment could potentially be fatal, but homelessness would also be extremely detrimental to her health.

Your consideration in postponing eviction and any court appearances or paperwork would be greatly appreciated

Regards,

MIRANDA BALKIN, MD

Hilltown Community Health Centers



**Hilltown** Community
**Health Center**
HCHC

"This institution is an equal opportunity provider."

January 29, 2019

To: Honorable Judge Elizabeth Katz

Re: R. SUSAN WOODS          DOB:
PO BOX 160
HADLEY MA 01035

Dear Judge  Katz,

I am the primary care physician for Ms. R. Susan Woods.  She is currently ill with presumptive pertussis and too sick to attend court hearings this week.  Her health would greatly benefit from a stable living situation.

Regards,

MIRANDA BALKIN, MD

Hilltown Community Health Centers

| **Worthington Health Center** | **Huntington Health Center** | **John P. Musante Health Center** | **School-Based Health Programs** | **Hilltown Community Center** |
|---|---|---|---|---|
| 58 Old North Road | 73 Russell Road | Bangs Community Center | 12 Littleville Road | 9 Russell Road |
| Worthington, MA 01098 | Huntington, MA 01050 | 70 Boltwood Walk | Huntington, MA 01050 | Huntington, MA 01050 |
| 413-238-5511 | 413-667-3009 | Amherst, MA 01002 | 413-667-0142 | 413-667-2203 |
| | | 413-835-4980 | | |